| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| DARLENE C. VIGIL<br>CA NO. 223442<br>BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP<br>3990 E. CONCOURS STREET, SUITE 350<br>ONTARIO, CA 91764<br>Phone: (626) 371-7000, Fax: (972) 661-7726<br>E-mail: CDCAECF@BDFGROUP.COM<br>FILE NO. 10382869 | |
| ☐ *Movant appearing without an attorney*<br>☒ *Attorney for Movant* | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| In re:<br><br>Coast Highway Ramfared Trust,<br>*dba Ramin Monfared*<br><br><br><br><br><br>Debtor(s). | CASE NO.: 8:25-bk-10282-SC<br><br>CHAPTER: 7 |
|---|---|
| | **NOTICE OF MOTION AND MOTION<br>FOR RELIEF FROM THE AUTOMATIC<br>STAY UNDER 11 U.S.C. § 362<br>(with supporting declarations)<br>(REAL PROPERTY)** |
| | DATE:   March 5, 2025<br>TIME:    11:00 a.m.<br>COURTROOM:  5C |

**MOVANT :** U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE ON BEHALF OF GCAT 2022-NQM5 TRUST

1. **Hearing Location**:

   ☐ 255 East Temple Street, Los Angeles, CA 90012    ☒ 411 West Fourth Street, Santa Ana, CA 92701

   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367    ☐ 1415 State Street, Santa Barbara, CA 93101

   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                     Page 1                     **F 4001-1.RFS.RP.MOTION**

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  ☒  This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7.  ☐  This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

    a.  ☐  An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

    b.  ☐  An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

    c.  ☐  An application for order setting hearing on shortened notice was filed and remains pending.  After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date:  02/10/2025

BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP
Printed name of law firm (*if applicable*)


Darlene C. Vigil
Printed name of individual Movant or attorney for Movant


/s/    *Darlene C. Vigil*
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                                           Page 2                                              **F 4001-1.RFS.RP.MOTION**

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the: \*\*PRIOR TO FEBRUARY 3, 2025, MOVANT HELD THE FOLLOWING INTEREST:**

   ☐ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

   ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

   ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

   ☒ Other (*specify*): Movant directly or through an agent has possession of the promissory note which has been duly endorsed. Pursuant to the attached Deed of Trust, all obligations under and with respect to the Note and Deed of Trust are secured by the property referenced in the Motion.

2. **The Property at Issue (Property):**

   a. Address:

      *Street address:* 31423 COAST HIGHWAY #22
      *Unit/suite no.:*
      *City, state, zip code:* LAGUNA BEACH, CA 92651

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit _1_): 2022000067136 Orange County and corrected pursuant to Corrective Deed of Trust  2022000187953 Orange County

3. **Bankruptcy Case History:**

   a. A ☐ voluntary ☒ involuntary  bankruptcy petition under chapter ☒ 7 ☐ 11 ☐ 12 ☐ 13 was filed on (*date*) _1/31/2025._

   b. ☐ An order to convert this case to chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13 was entered on (*date*) _____

   c. ☐ A plan, if any, was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

      (1) ☐ Movant's interest in the Property is not adequately protected.

         (A) ☐ Movant's interest in the Property is not protected by an adequate equity cushion.

         (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

         (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

      (2) ☒ The bankruptcy case was filed in bad faith.

         (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

         (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

         (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

         (D) ☒ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

         (E) ☒ The Debtor filed only a few case commencement documents with the bankruptcy petition.  Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

         (F) ☒ Other (*see attached continuation page*).

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                        Page 3                                        **F 4001-1.RFS.RP.MOTION**

(3) ☐ (*Chapter 12 or 13 cases only*)

    (A) ☐ All payments on account of the Property are being made through the plan.
        ☐ Preconfirmation ☐ Postconfirmation  plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

    (B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on (*date*) _____,
    which is ☐ prepetition ☐ postpetition.

(6) ☒ For other cause for relief from stay, see attached continuation page.

b. ☐ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☒ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

(1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

(2) ☒ Multiple bankruptcy cases affecting the Property.

5. ☒ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

  a. ☒ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

  b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

  c. ☒ Other (*specify*): For other facts justifying annulment, see attached continuation page.

6. **Evidence in Support of Motion: (D***eclaration(s) MUST be signed under penalty of perjury and attached to this motion*)

  a. The REAL PROPERTY DECLARATION on page 6 of this motion.

  b. ☒ Supplemental declaration(s).

  c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit _____.

  d. ☒ Other: Movant has incurred attorney fees and costs totaling $1,424.00 to prosecute this relief from stay motion. These legal expenses are recoverable as additional obligations payable under the Note and Deed of Trust.
    Request for Judicial Notice in Support of Motion filed concurrently herewith.  See attached Continuation Page.

7.   ☐ **An optional Memorandum of Points and Authorities is attached to this Motion.**

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                    Page 4                **F 4001-1.RFS.RP.MOTION**

**Movant requests the following relief:**

1. Relief from the stay is granted under: ☒ 11 U.S.C. § 362(d)(1)  ☐ 11 U.S.C. § 362(d)(2)  ☐ 11 U.S.C. § 362(d)(3).

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☐ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4. ☐ Confirmation that there is no stay in effect.

5. ☒ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6. ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
   ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9. ☒ Relief from the stay is granted under 11 U.S.C. § 362(d)(4): If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
   ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:

   ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☐ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☐ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date:       02/10/2025

BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP
Printed name of law firm (*if applicable*)

Darlene C. Vigil
Printed name of individual Movant or attorney for Movant

/s/    *Darlene C. Vigil*
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                      Page 5                      **F 4001-1.RFS.RP.MOTION**

# DECLARATION OF ERICA D. JONES

# REAL PROPERTY DECLARATION

I, (*print name of Declarant*) _____Erica D. Jones_____, declare:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age.  I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

    a.  ☐ I am the Movant and owner of the Property.

    b.  ☐ I am employed by Movant as (*state title and capacity*): _____.

    c.  ☒ Other (*specify*): See Attachment Page

2.  a.  ☐ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property.  I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant.  These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the court if required.

    b.  ☒ Other (*see attached*):  See Attachment Page

3.  The Movant is:  **\*\*PRIOR TO FEBRUARY 3, 2025, MOVANT HELD THE FOLLOWING INTEREST:**

    a.  ☐ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.  A true and correct copy of the note, with affixed alonges/indorsements, is attached as Exhibit __.

    b.  ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary.  True and correct copies of the recorded security instrument and assignments are attached as Exhibit **1 & 3** .

    c.  ☐ Servicing agent authorized to act on behalf of the:
        ☐ Holder.
        ☐ Beneficiary.

    d.  ☒ Other (*specify*): Movant directly or through an agent has possession of the promissory note which has been duly endorsed.  Pursuant to the attached Deed of Trust, all obligations under and with respect to the Note and Deed of Trust are secured by the property referenced in the Motion.

4.  a.  The address of the Property is:

        *Street address:* 31423 COAST HIGHWAY #22
        *Unit/suite no.:*
        *City, state, zip code:* LAGUNA BEACH, CA 92651

    b.  The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:

        2022000067136 Orange County and corrected pursuant to Corrective Deed of Trust  2022000187953 Orange County

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 6                          **F 4001-1.RFS.RP.MOTION**

5. Type of property (*check all applicable boxes*):
   a. ☐ Debtor's principal residence    b. ☐ Other single family residence
   c. ☐ Multi-unit residential    d. ☐ Commercial
   e. ☐ Industrial    f. ☐ Vacant land
   g. ☒ Other (*specify*): Investment property used
      for short term rentals.

6. Nature of Debtor's interest in the Property:  *Debtor is a trust.  The interest of the trust in the Property is at issue
   a. ☐ Sole owner                    in ongoing state court litigation.  Please see Exhibits 7-11 which reflect post-
   b. ☐ Co-owner(s) (*specify*):    origination transfers affecting the property.
   c. ☐ Lien holder (*specify*):
   d. ☒ Other (*specify*): Interest of Trust is at issue in ongoing state court litigation. See Exhibits 7-11
   e. ☒ Debtor    ☐ did ☐ did not list the Property in the schedules filed in this case. *SCHEDULES NOT FILED
   f. ☒ Debtor acquired the interest in the Property by    ☐ grant deed    ☐ quitclaim deed    ☐ trust deed
      **Please see Exhibits 7-11

   **PRIOR TO FEBRUARY 3, 2025, MOVANT HELD THE FOLLOWING INTEREST:**

7. Movant holds a   ☒  deed of trust ☐  judgment lien ☐  other (*specify*) _____
   that encumbers the Property.

   a. ☒  A true and correct copy of the document as recorded is attached as Exhibit __1__.
   b. ☒  A true and correct copy of the promissory note or other document that evidences the Movant's claim is
         attached as Exhibit __2__.
   c. ☒  A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
         trust to Movant is attached as Exhibit __3__.

8. Amount of Movant's claim with respect to the Property: ***On February 3, 2025, Movant foreclosed on its secured
lien obligation.  Movant maintains that no amounts are due and owing as a result.**

|   | | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ | $ | $*** |
| b. | Accrued interest: | $ | $ | $*** |
| c. | Late charges | $ | $ | $*** |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ | $*** |
| e. | Advances (property taxes, insurance): | $ | $ | $*** |
| f. | Less suspense account or partial balance paid: | $[ | $[              ] | $[***] |
| g. | TOTAL CLAIM as of (*date*) : *** | $ | $ | $*** |

   h. ☐ Loan is all due and payable because it matured on (*date*): _____

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action
   has occurred*):
   a. Notice of default recorded on (*date*) _5/7/2024_ or ☐ none recorded.
   b. Notice of sale recorded on (*date*) _11/20/2024_ or ☐ none recorded.
   c. Foreclosure sale originally scheduled for (*date*) __1/6/2025__ or ☐ none scheduled.
   d. Foreclosure sale currently scheduled for (*date*) _2/3/2025_ or ☐  none scheduled.
   e. Foreclosure sale already held on (*date*) __2/3/2025__ or ☐ none held.
   f. Trustee's deed upon sale already recorded on (*date*) _____ or ☒ none recorded.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                  Page 7                        **F 4001-1.RFS.RP.MOTION**

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☒ (*chapter 7 and 11 cases only*) Status of Movant's loan: **\*\*On February 3, 2025, Movant foreclosed on its secured lien obligation.  Movant maintains that no amounts are due and owing as a result.**

    a.   Amount of current monthly payment as of the date of this declaration: $____for the month of ____ 20__.

    b.   Number of payments that have come due and were not made: _____. Total amount: $_____.

    c.   Future payments due by time of anticipated hearing date (*if applicable*):

       An additional payment of $_____ will come due on (*date*) _____, and on the _____ day of each month thereafter. If the payment is not received within _____ days of said due date, a late charge of $_____ will be charged to the loan.

    d.   The fair market value of the entire Property is $_____, established by:

       (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____.

       (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

       (3) ☐ A true and correct copy of relevant portion(s) of Debtor's schedules is attached as Exhibit _____.

       (4) ☐ Other (*specify*):

    e.   **Calculation of equity/equity cushion in Property:**

       Based upon ☐ preliminary title report ☐ Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor *(if any)* | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | | $ | $ |
| 2nd deed of trust: | | $ | $ |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other | | $ | $ |
| **TOTAL DEBT:$** | | | |

    f.   Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit _____ and consists of:

       (1) ☐ Preliminary title report

       (2) ☐ Relevant portions of Debtor's schedules as filed in this case

       (3) ☐ Other (*specify*): _____

    g.  ☐ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
       I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $_____ and is _____% of the fair market value of the Property.

    h.  ☐ **11 U.S.C. § 362(d)(2)(A) - Equity:**
       By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $_____.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                Page 8                **F 4001-1.RFS.RP.MOTION**

i.    ☐ Estimated costs of sale: $_____ (estimate based upon ____% of estimated gross sales price)

j.    ☐ The fair market value of the Property is declining because:

12. ☐ (*Chapter 12 and 13 cases only*) Status of Movant's loan and other bankruptcy case information:

a.   A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date:  N/A.
     A plan confirmation hearing currently scheduled for (or concluded on) the following date: N/A.
     A plan was confirmed on the following date (*if applicable*):  N/A.

b.   Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit ____.)

c.   Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d.   Postpetition advances or other charges due but unpaid:                    $
     (*For details of type and amount, see Exhibit _____*)

e.   Attorneys' fees and costs                                                 $
     (*For details of type and amount, see Exhibit _____*)

f.   Less suspense account or partial paid balance                            $[                    ]
                           TOTAL POSTPETITION DELINQUENCY:                     $

g.   Future payments due by time of anticipated hearing date (*if applicable*): _____.
     An additional payment of $ ***    will come due on  *** , and on
     the  ***  day of each month thereafter. If the payment is not received by the  ***  day of the month, a late
     charge of $***  will be charged to the loan.

h.   Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how
     applied (if applicable):

     $ ***_____ received on (date) ***_____
     $ ***_____ received on (date) ***_____
     $ ***_____ received on (date) ***_____

i.   ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
        A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or
        13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                        Page 9                          **F 4001-1.RFS.RP.MOTION**

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (*date*)_____, which is ☐ prepetition ☐ postpetition.

17. ☒ The bankruptcy case was filed in bad faith:

    a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

    b. ☒ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

    c. ☒ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

    d. ☒ Other (*specify*): (see attached continuation page).

18. ☒ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

    b. ☒ Multiple bankruptcy cases affecting the Property include:

        1. Case name:   In re Coast Highway Ramfared Trust dba Ramin Monfared_____
           Chapter:_7_____    Case number:_25-10013_____
           Date dismissed:_1/14/2025_____    Date discharged:_____    Date filed:_1/3/2025____
           Relief from stay regarding the Property ☐ was ☒ was not granted.

        2. Case name:   In re Coast Highway Ramfared Trust dba Ramin Monfared – Current Case
           Chapter:_7_____    Case number:_25-10282_____
           Date dismissed:_____    Date discharged:_____    Date filed:_1/31/25_____
           Relief from stay regarding the Property ☐ was ☐ was not granted.

        3. Case name:_____
           Chapter:_____    Case number:_____
           Date dismissed:_____    Date discharged:_____    Date filed:_____
           Relief from stay regarding the Property ☐ was ☐ was not granted.

    ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

    ☒ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*    Page 10    **F 4001-1.RFS.RP.MOTION**

19. ☒  Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental
       declaration(s).

    a. ☒  These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would
          have been entitled to relief from stay to proceed with these actions.

    b. ☐  Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed
          with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

    c. ☒  For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


| 02/10/2025 | Erica D. Jones | |
| Date | Printed name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                    Page 11                          F 4001-1.RFS.RP.MOTION

## CONTINUATION PAGE TO REAL PROPERTY DECLARATION

I, _____Erica D. Jones_____, declare as follows:

1.      I am an attorney at law, licensed to practice in California, and a Partner at Barrett Daffin Frappier Treder & Weiss, LLP ("BDFTW"), a Texas-based law firm that provides default and foreclosure-related legal services to mortgage servicers and lenders with residential mortgage loans in California.  Among other things, the firm handles nonjudicial foreclosure actions for its clients, acting as substitute trustee under deeds of trust securing residential mortgage loans.  BDFTW is the duly appointed foreclosure trustee for Movant U.S. Bank National Association, Not in Its Individual Capacity but Solely as Trustee on Behalf of GCAT 2022-NQM5 Trust ("U.S. Bank").

2.      I am familiar with the policies, procedures, and foreclosure operations for BDFTW and have access to the proprietary case management system that BDFTW uses to process nonjudicial foreclosure actions.  That system is a repository for all of the records, document images and electronic information created and stored by authorized users in the regular course and scope of their business operations.  The information stored in those records are updated at or near the time that BDFTW receives information and documents from its clients, vendors, borrowers and interested third parties.

3.      I have reviewed the business records for a nonjudicial foreclosure action that is kept by employees of BDFTW involving real property located at **31423 Coast Highway #22, Laguna Beach, CA 92651** ("Property"), which is identified in the case management system as Trustee's Sale No. 00000010110781  (Monfared).  My statements in this declaration are based upon my personal review of those business records.

4.      On or about April 1, 2024, U.S. Bank hired BDFTW to pursue a nonjudicial foreclosure action against the Property under a first priority Deed of Trust recorded on February 17, 2022, as Instrument No. 2022000067136 and corrected pursuant to Corrective Deed of Trust recorded on May 20, 2022 as Instrument No. 2022000187953, Official Records of Orange County ("Deed of Trust"), which secured a loan of $1,837,500.00 that Borrower Ramin Monfared obtained from Loan America, a California Corporation ("Note").  According to the foreclosure referral, Mr. Monfared had defaulted on the loan by failing to pay monthly installments due November 1, 2023 and all subsequent installments plus late charges and other sums.  *See* **Exhibits 1 and 2.**

5.      BDFTW was appointed as substitute trustee under the Deed of Trust by a Substitution of Trustee recorded on April 22, 2024, as Instrument No. 2024000099744, Official Records of Orange County.  *See* **Exhibit 4.**

6.      BDFTW recorded a Notice of Default and Election to Sell Under Deed of Trust ("NOD"), and sent all legally-required mailings of the NOD to interested parties. *See* **Exhibit 5.**

7.      More than three months later, BDFTW recorded a Notice of Trustee's Sale with a sale date of January 6, 2025 at 9:00 a.m. and caused copies to be posted, published and mailed in compliance with statutory requirements. *See* **Exhibit 6.**

8.      On January 3, 2025, three days before the scheduled sale date, an involuntary chapter 7 bankruptcy petition was filed against Coast Highway Ramfared Trust *dba Ramin Monfared* by Greg Tonkinson, petitioning creditor, commencing United States Bankruptcy Court for the Central District of California, Case No. 8:25-bk-10013-SC.  The case was eventually dismissed, but the sale was postponed to February 3, 2025 at 9:00 a.m. while the bankruptcy stay was in effect.

9.      On February 3, 2025, at 9:13 a.m. BDFTW sent sale instructions to the sale agent.  On February 3, 2025, BFTW conducted a non-judicial foreclosure sale of the Property.  The sale was scheduled for 9:00 a.m. and was cried at 10:44 a.m. U.S. Bank submitted the prevailing bid and acquired the Property for $1,930,743.21.

1

10.    After the sale was cried BDFTW reviewed an email received on February 3, 2025 at 9:13 a.m. from an anonymous source which referenced an incorrect trustee sale number and failed to provide a property address.  The email attached a copy of the two-page Notice of Bankruptcy Filing for United States Bankruptcy Court, Central District of California, Case No. 8:35-bk-10282-SC, an involuntary petition filed on January 31, 2025 by Andy Andalibian against Coast Highway Ramfared Trust dba Ramin Monfared.  Although the email was received prior to the sale BDFTW was not able to make the connection of the bankruptcy notice to the Property until after the sale.

11.    I have personal knowledge of the foregoing facts, and if called as a witness, I would testify competently thereto.

I declare under penalty of perjury under the laws of the State of California that the foregoing facts are true and correct.

Executed this 10th day of February, 2025  at Addison, Texas

ERICA D. JONES

2

**CONTINUATION PAGE TO MOTION FOR RELIEF FROM AUTOMATIC STAY**

Continued from page 3, Paragraph 4.a.(2)(F), page 4, Paragraphs 4.a.(6), 5.c. and 6, page 10, Paragraphs 17(d) and 18, and page 19, Paragraph 19.a, c.:

Cause exists under 11 U.S.C. § 362(d)(1) to annul the automatic stay nunc pro tunc to the petition filing date, or in the alternative, to terminate the automatic stay under 11 U.S.C. § 362(d)(4) of the Bankruptcy Code. This is the second skeletal involuntary petition filed against Debtor since January 3, 2025 and followed an order by the Orange County Superior Court denying a temporary restraining order to stop the foreclosure sale. The current involuntary case was filed in bad faith to hinder, delay, hinder, defraud or otherwise impede Movant from enforcing its contractual default remedies against the Property in compliance with state law. The Motion should be granted.

**The Loan**

Borrower RAMIN MONFARED (the "Borrower") executed a promissory Note ("Note") dated February 14, 2022 in the original sum of $1,837,500.00 in favor of Movant's predecessor LOAN AMERICA, A CALIFORNIA CORPORATION. The Note is secured by a first priority Deed of Trust ("Deed of Trust") executed by the Borrower and recorded on February 17, 2022 as Instrument No. 2022000067136 re- recorded on May 20, 2022 as Instrument No. 2022000187953, Official Records of Orange County, CA against the real property generally known as **31423 COAST HIGHWAY #22, LAGUNA BEACH, CA 92651** ("Property"). The Property is held for investment purposes and is not owner-occupied. The Deed of Trust was assigned to Movant by Corporate Assignment of Deed of Trust recorded on January 16, 2024 as Instrument No.2024000008965, Official Records of Orange County, CA.  *See* **Exhibits 1, 2** and **3.**

**The Borrower's Default and the Non-Judicial Foreclosure Process**

Prior to the bankruptcy filing, the Borrower failed to pay as agreed under the terms of the Note and Deed of Trust. As a result, non-judicial foreclosure proceedings were commenced against the Property by Movant's foreclosure trustee Barrett Daffin Frappier Treder & Weiss, LLP ("BDFTW"). BDFTW was duly appointed as Substitute Trustee under the Deed of Trust by a Substitution of Trustee recorded on April 22, 2024, as Instrument No. 2024000099744, Official Records of Orange County, CA. *See* **Exhibit 4.**

A Notice of Default was recorded on May 7, 2024. *See* **Exhibit 5**. A Notice of Trustee's Sale was recorded on November 20, 2024 with a sale date of January 6, 2025. The sale was postponed to February 3, 2025 at 9:00 a.m. in compliance with state law as a result of an earlier-filed involuntary bankruptcy case. *See* **Exhibit 6.**

On February 3, 2025, BDFTW conducted a non-judicial foreclosure sale of the Property. The sale was scheduled for 9:00 a.m. and was cried at 10:44 a.m. ("Trustee's Sale). Movant submitted the prevailing full credit bid and acquired the Property for the sum of $1,930,743.21.

**Multiple Transfers of Interest**

After the loan originated, multiple transfers of interest were recorded in connection with  the Property, including:

1.      Trust Transfer Deed executed by Borrower on December 13, 2022 and recorded on  December 21, 2022 as Instrument No. 2022000414807, Official Records of Orange County, CA.  The Trust Transfer Deed reflects Borrower transferred the Property to Ramin Monfared, Trustee of the Coast Highway Ramfared Trust, dated November 28, 2022.  *See* **Exhibit 7.**

2.      Affidavit of Change of Trustee executed by Greg M. Tonkinson, Trustee on August 8, 2023 and recorded on August 8, 2023 as Instrument No. 2023000191208, Official Records of Orange County, CA. The Affidavit reflects Greg Tonkinson ("Tonkinson") is the  Successor Trustee of Coast Highway Ramfared Trust. *See* **Exhibit 8.**

3.      Grant Deed executed by Ramin Monfared, Trustee on December 14, 2023 and recorded on December 18, 2023 as Instrument No. 2023000310414, Official Records of Orange County, CA. The Grant Deed reflects Ramin Monfared, Trustee of the Coast Highway Ramfared Trust dated November 28, 2022 transferred the Property to Ramin Monfared, a single man.  *See* **Exhibit 9.**

1

4.      Grant Deed executed by Ramin Monfared on December 14, 2023 and recorded on December 18, 2023 as Instrument No. 2023000310415, Official Records of Orange County, CA. The Grant Deed reflects Ramin Monfared transferred the Property to Ramin Monfared, as Trustee of the Ramin Monfared Trust dated December 9, 2021. *See* **Exhibit 10.**

**State Court Litigation Contesting Transfers of Title**

On September 8, 2023 Borrower Ramin Monfared filed a civil lawsuit against Greg Tonkinson disputing the first two recorded instruments (**Exhibits 7 and 8**). The Borrower's Complaint was filed in the Orange County Superior Court, Case No. 23-01345894 entitled Ramin Monfared v. Greg Tonkinson, Andy Andalibian, et al. (the "First State Court Action"). Borrower alleges in his verified Complaint that Andalibian conspired with Tonkinson to defraud Borrower out of his interest in the Property. *See* **Exhibit 11**. On August 13, 2024, the First State Court Action was consolidated with Orange County Superior Court, Case No. 30-2023-01341707-CU-OR-NJC, entitled Zara Rezai v. Ramin Monfared (the "Consolidated Action.") *See,* **Exhibit 12**. As of the present date, the First State Action is still pending.

**The current case is the 2nd bankruptcy affecting the Property since January 3, 2025 filed shortly after the State Court denied Greg Tonkinson's TRO request to stop the sale**

**First TRO Denied by the State Court**
On December 26, 2024, Tonkinson filed in the Consolidated Action an ex parte application for an order shortening time on a motion for a preliminary injunction to stop the foreclosure sale of the Property, which was then scheduled for January 6, 2025. On December 27, 2024 the Orange County Superior Court denied Tonkinson's ex parte application. *See,* **Exhibit 13.**

**First Involuntary Petition Filed Against Debtor**

(1) *In re* Coast Highway Ramfared Trust *dba Ramin Monfared* (Case No. 8:25-bk-10013-SC)
On January 3, 2025, three days before the January 6, 2025 foreclosure sale, Greg Tonkinson, as petitioning creditor, filed an involuntary Chapter 7 bankruptcy petition against Coast Highway Ramin Monfared *dba Ramin Monfared* by commencing United States Bankruptcy Court for the Central District of California, Case No. 8:25-bk-10013-SC (the "First Bankruptcy"). The First Case was a skeletal filing. *See* **Exhibit 14**.

On January 3, 2025, this Court ordered Tonkinson to appear and show cause why the involuntary case should not be dismissed as the alleged debtor, which the involuntary petition indicates is a "trust," does not appear to be eligible to be a debtor (the "First OSC"). *See* **Exhibit 15**. Tonkinson failed to file any response to the OSC. On January 14, 2025, the First Bankruptcy was dismissed. *See* **Exhibit 16**.

The foreclosure sale was postponed to February 3, 2025 at 9:00 a.m. as a result of the First Bankruptcy.

**Second TRO Denied by the State Court**

Two days after the First Bankruptcy was dismissed, on January 16, 2025, Greg Tonkinson filed a civil action against BDFTW and NewRez, LLC dba Shellpoint Mortgage Servicing, in the Superior Court of California, County of Orange, Case No. 30-2025-01454216-CU-OR-CJC, entitled Greg M. Tonkinson, Trustee of the Coast Highway Ramfared Trust dated November 28, 2022 v. BDFTW, NewRez LLC (the "Second State Court Action").

On January 27, 2025, the Orange County Superior Court denied Tonkinson's ex parte application for a temporary restraining order to stop the foreclosure sale of the Property. *See* **Exhibit 17**.

**Second Involuntary Petition Filed Against the Debtor**

(2) *In re* Coast Highway Ramrafed Trust *dba Ramin Monfared* (Case No. 8:25-bk-10282-SC) (Current Case)

On February 3, 2025, BDFTW conducted a non-judicial foreclosure sale of the Property. The sale was scheduled at 9:00 a.m. and was cried at 10:44 a.m. (the "Trustee's Sale"). Movant submitted the prevailing full credit bid and acquired the Property for the sum of $1,930,743.21.

After the sale was cried BDFTW reviewed an email received on February 3, 2025 at 9:13 a.m. from an anonymous source, which referenced an incorrect trustee sale number and failed to provide a property address. The email attached a copy of the two-page Notice of Bankruptcy Filing for an involuntary petition filed on January 31, 2025 by Andy Andalibian, as petitioning creditor, against Coast Highway Ramrafed Trust dba Ramin Monfared as United States Bankruptcy Court, Central District of California, Case No. 8:35-bk-10282-SC. The email was received before the sale, but BDFTW was unable to connect the bankruptcy filing to the Property until after the sale.

The current involuntary case is a skeletal petition filed by Andy Andalibian, a co-defendant with Tonkinson in the Borrower's pending Consolidated Action for fraud. *See* **Exhibit 18**. Andalibian filed the current bankruptcy case four days after the Orange County Superior Court denied Tonkinson's second TRO request to stop the sale and three days prior to the sale was held.

On February 3, 2025 this Court entered an Order directing Andalibian to appear and show cause why the involuntary case should not be dismissed as the alleged debtor, which the involuntary petition indicates is a "trust" does not appear to be eligible to be a debtor. *See* **Exhibit 19**. Andalibian has not filed a response. The Current Case was filed in bad faith to delay, hinder, defraud or otherwise impede Movant from enforcing its contractual default remedies against the Property in compliance with state law.

**Request for Retroactive Annulment and In Rem Relief**

Movant respectfully submits that cause exists to annul the automatic stay retroactively as of the date of the bankruptcy petition filing, so that the bankruptcy filing does not affect the February 3, 2025, trustee's sale, which was conducted in good faith.

Movant also submits that cause exists to terminate the automatic stay under 11 U.S.C. §362(d)(4) in that: (1) the Debtor's bankruptcy case filing is being used as part of a scheme, and (2) the object of that scheme is to delay, hinder or defraud this Movant. *See* In re Dorsey, 476 B.R. 261, 265-266 (Bkrtcy.C.D.Cal.2012) The scheme involves multiple bad faith filings of skeletal involuntary bankruptcy petitions affecting the Property by individuals whose alleged interest in the Property is disputed by the borrower in a pending state court lawsuit. Both bankruptcy cases were filed on the eve of a pending foreclosure sale to impede Movant from enforcing its contractual default remedies in compliance with state law. Based on the foregoing, Movant respectfully requests relief under 11 U.S.C. § 362(d)(4).

This Court has exclusive jurisdiction of this matter under 11 U.S.C. § 362(d). This is a core proceeding under 28 U.S.C. § 157(b)(2)(G). If this case is dismissed before the scheduled hearing, Movant requests that the Court hear this annulment motion and grant in rem relief. *In re Aheong*, 276 B.R. 233 (9th Cir. BAP. 2002) (court retains jurisdiction over core proceeding after dismissal).

3

# REQUEST FOR JUDICIAL NOTICE

1

DARLENE C. VIGIL
State Bar No. 223442

2

BARRETT DAFFIN FRAPPIER

3

TREDER & WEISS, LLP
3990 E. CONCOURS STREET, SUITE 350

4

ONTARIO, CA 91764
(626) 371-7000 – Phone

5

(972) 661-7726 - Fax
E-mail: cdcaecf@bdfgroup.com

6

File No. 10382869

7

Attorneys for Movant

8

U.S. BANK NATIONAL ASSOCIATION,
NOT IN ITS INDIVIDUAL CAPACITY

9

BUT SOLELY AS TRUSTEE ON BEHALF
OF GCAT 2022-NQM5 TRUST

10

UNITED STATES BANKRUPTCY COURT

11

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

12

13

| In re: | CASE NO.:  8:25-bk-10282-SC |
|---|---|

14

| COAST HIGHWAY RAMFARED TRUST | CHAPTER:    7 |

15

*dba Ramin Monfared,*

16

REQUEST FOR JUDICIAL NOTICE IN
SUPPORT OF MOTION FOR ANNULMENT

17

OF THE AUTOMATIC STAY NUNC PRO
TUNC TO THE PETITION FILING DATE

18

19

Debtor.

20

21

22

23

24

        Pursuant to Federal Rule of Evidence 201, Movant U.S. Bank National Association, Not in Its

25

Individual Capacity but Solely as Trustee on Behalf of GCAT 2022-NQM5 Trust ("U.S. Bank") by and

26

through its undersigned counsel, Barrett Daffin Frappier Treder & Weiss, LLP hereby requests that

27

the Court take judicial notice of the following exhibits:

28

1.     Deed of Trust recorded on February 17, 2022, as Instrument No. 2022000067136 and corrected pursuant to Corrective Deed of Trust recorded on May 20, 2022 as Instrument No. 2022000187953, Official Records of Orange County, CA, a true and correct copy of which is attached hereto as **Exhibit 1** and incorporated herein by reference.

2.     Corporate Assignment of Deed of Trust recorded on January 16, 2024 as Instrument No. 2024000008965, Official Records of Orange County, CA, a true and correct copy of which is attached hereto as **Exhibit 3** and incorporated herein by reference.

3.     Substitution of Trustee recorded on April 22, 2024 as Instrument No. 2024000099744, Official Records of Orange County, CA, a true and correct copy of which is attached hereto as **Exhibit 4** and incorporated herein by reference.

4.     Notice of Default and Election to Sell Under Deed of Trust recorded on May 7, 2024 as Instrument No. 2024000113945, Official Records of Orange County, CA, a true and correct copy of which is attached hereto as **Exhibit 5** and incorporated herein by reference.

5.     Notice of Trustee's Sale recorded on November 20, 2024 as Instrument No. 2024000304000, Official Records of Orange County, CA, a true and correct copy of which is attached hereto as **Exhibit 6** and incorporated herein by reference.

6.     Trust Transfer Deed executed by Ramin Monfared on December 13, 2022 and recorded on December 21, 2022 as Instrument No. 2022000414807, Official Records of Orange County, CA, a true and correct copy of which is attached hereto as **Exhibit 7** and incorporated herein by reference.

7.     Affidavit of Change of Trustee executed by Greg M. Tonkinson, Trustee on August 8, 2023 and recorded on August 8, 2023 as Instrument No. 2023000191208, Official Records of Orange County, CA, a copy of which is attached hereto as **Exhibit 8** and incorporated herein by reference.

8.      Grant Deed executed by Ramin Monfared, Trustee on December 14, 2023 and recorded on December 18, 2023 as Instrument No. 2023000310414, Official Records of Orange County, CA, a copy of which is attached hereto as **Exhibit 9** and incorporated herein by reference.

9.      Grant Deed executed by Ramin Monfared on December 14, 2023 and recorded on December 18, 2023 as No. 2023000310415, Official Records of Orange County, CA, a copy of which is attached hereto as **Exhibit 10** and incorporated herein by reference.

10.      On August 28, 2023, Ramin Monfared filed a civil complaint against Andy Andalibian ("Andalibian") and Greg M. Tonkinson ("Tonkinson") in the Superior Court of California, County of Orange, Central Justice Center, Case No. 30-2023-01345894-CU-OR-CJC, entitled <u>Ramin Monfared and Negin Almassi v. Andy Andalibian and Greg M. Tonkinson, et al.,</u> (the "First State Court Action"). A copy of the verified Complaint filed in the First State Court Action is attached hereto as **Exhibit 11** and incorporated herein by reference.

11.      On  August 13, 2024, the First State Court Action was consolidated with Orange County Superior Court, Case No. 30-2023-01341707-CU-OR-NJC, entitled <u>Zara Rezai v. Ramin Monfared</u> (the "Consolidated Action").  A copy of the Register of Actions for the First State Court Action reflecting the consolidation on August 13, 2024 as ROA #194, is attached hereto and incorporated as **Exhibit 12** and incorporated herein by reference.

12.      On December 27, 2024, Greg Tonkinson's  ex parte application for an order shortening time on motion for preliminary injunction to stop the foreclosure sale of the real property **31423 Coast Hwy #22, Laguna Beach, CA 92651** (the "Property") was denied by the Orange County Superior Court in the Consolidated Action.  A copy of the Minute Order denying Tonkiinson's ex parte application is attached hereto as **Exhibit 13** and incorporated herein by reference**.**

13.      On January 3, 2025, an involuntary petition under Chapter 7 of the United States Bankruptcy Code was filed by Greg Tonkinson against Coast Highway Ramfared Trust *dba Ramin Monfared* commencing United States Bankruptcy Court, Central District of California, Case No. 8:25-bk-10013-SC (the "First Bankruptcy").  A copy of the involuntary petition is attached hereto as **Exhibit 14** and incorporated herein by reference.

14.      On January 3, 2025, the Court entered an Order directing petitioning creditor Tonkinson to appear and show cause why the involuntary case should not be dismissed as the alleged debtor, which the involuntary petition indicates is a "trust," does not appear to be eligible to be a debtor (Dkt. #3) ("First OSC"), a copy of which is attached hereto and incorporated herein by reference as **Exhibit 15**. The First OSC also ordered Tonkinson to file a response supported by admissible evidence by no later than January 13, 2025 demonstrating why the alleged debtor is eligible to be a debtor in a chapter 7 proceeding.

15.      On January 14, 2025 the First Bankruptcy was dismissed.  A copy of the Order Dismissing Involuntary Petition filed and entered on January 14, 2025 (Dkt. #8) is attached hereto as **Exhibit 15** and incorporated herein by reference.

16.      On January 16, 2025, Greg Tonkinson filed a civil complaint against duly appointed foreclosure trustee Barrett Daffin Frappier Treder & Weiss, LLP and NewRez LLC in the Superior Court of California, County of Orange, Central Justice Center, Case No. 30-2025-01454216-CU-OR-CJC, entitled <u>Greg Tonkinson, Trustee of the Coast Highway Ramfared Trust dated November 28, 2022 v. Barrett Daffin Frappier Treder & Weiss, LLP, NewRez LLC, et al.,</u> (the "Second State Court Action").  On  January 27, 2025, Tonkinson's ex parte application for issuance of a temporary restraining order to stop the foreclosure sale of the Property was denied by the Orange County Superior Court in the Second State Court Action.  A copy of the Minute Order filed on January 27, 2025 in the

Second State Court Action Court Action is attached hereto as **Exhibit 17** and incorporated herein by reference.

17.     On January 31, 2025, an involuntary petition under Chapter 7 of the United States Bankruptcy Code was filed by Andy Andalibian against Coast Highway Ramfared Trust *dba Ramin Monfared* commencing United States Bankruptcy Court, Central District of California, Case No. 8:25-bk-10282-SC (the "Second Bankruptcy"). A copy of the involuntary petition filed on January 31, 2025 (Dkt. #1) in the Second Bankruptcy is attached hereto as **Exhibit 18** and incorporated herein by reference.

18.     On February 3, 2025, the Court entered an Order directing petitioning creditor Andalibian to appear and show cause why the involuntary case should not be dismissed as the alleged debtor, which the involuntary petition indicates is a "trust," does not appear to be eligible to be a debtor (Dkt. #4) ("Second OSC"), a copy of which is attached hereto as **Exhibit 19** and incorporated herein by reference. The Second OSC also ordered  Andalibian to file a response supported by admissible evidence by no later than February 10, 2025 demonstrating why the alleged debtor is eligible to be a debtor in a chapter 7 proceeding.

BARRETT DAFFIN FRAPPIER
TREDER & WEISS, LLP

Dated:  February 10, 2025          by:     /s/ Darlene C. Vigil
                                            DARLENE C. VIGIL
                                            Attorneys for Movant
                                            U.S. BANK NATIONAL ASSOCIATION,
                                            NOT IN ITS INDIVIDUAL CAPACITY
                                            BUT SOLELY AS TRUSTEE ON BEHALF
                                            OF GCAT 2022-NQM5 TRUST

# EXHIBIT 1

RECORDING REQUESTED BY

NAME: PACIFIC COAST TITLE

WHEN RECORDED MAIL TO:

NAME: loan america

ADDRESS: 23293 ventura blvd

CITY / STATE / ZIP: woodland hills, ca 92603

(DOCUMENT WILL ONLY BE RETURNED TO NAME & ADDRESS IDENTIFIED ABOVE)

Recorded in Official Records, Orange County
Hugh Nauven. Clerk-Recorder

70.00

**2022000067136 3:20 pm 02/17/22**
227 RW9A D11   21
0.00 0.00 0.00 0.00 60.00 0.00 0.000.000.00 3.00

(SPACE ABOVE FOR RECORDER'S USE)

DEED OF TRUST
(DOCUMENT TITLE)

Recorded concurrently and in connection
with a transfer of real property that is a
residential dwelling to an owner-occupier
GC 27388.1(a)(2)

SEPARATE PAGE, PURSUANT TO CA. GOV'T. CODE 27361.6

EXHIBIT 1

# PACIFIC COAST TITLE COMPANY

Recording Requested By:
LOAN AMERICA

And After Recording Return To:
LOAN AMERICA
23293 VENTURA BLVD.
WOODLAND HILLS, CALIFORNIA 92603
Loan Number: ▮▮▮▮▮▮▮▮



— [Space Above This Line For Recording Data] —————————

# DEED OF TRUST

MIN ▮▮▮▮▮▮▮▮▮▮                                        MERS Phone: 888-679-6377

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 10, 12, 17, 19 and 20.  Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A)** "Security Instrument" means this document, which is dated     FEBRUARY 14, 2022        , together with all Riders to this document.
**(B)** "Borrower" is RAMIN MONFARED, A SINGLE MAN
BORROWER'S ADDRESS IS 1519 EAST CHAPMAN #220, FULLERTON, CALIFORNIA 92831.

Borrower is the trustor under this Security Instrument.
**(C)** "Lender" is  LOAN AMERICA

Lender is a              CALIFORNIA  CORPORATION                       organized
and existing under the laws of                           CALIFORNIA
Lender's address is  23293 VENTURA BLVD., WOODLAND HILLS, CALIFORNIA 91364

**(D)** "Trustee" is  PACIFIC COAST TITLE COMPANY
516 BURCHETT ST, GLENDALE, CALIFORNIA 91203

CALIFORNIA SECOND LIEN DEED OF TRUST - MERS
© 2008 DOCMAGIC, INC.                      Page 1 of 13                      ☆DocMagic
CASEC.MZD  12/05/17

(E)  **"MERS"** is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the beneficiary under this Security Instrument.**  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI  48501-2026, tel. (888) 679-MERS.

(F)  **"Note"** means the promissory note signed by Borrower and dated          FEBRUARY 14, 2022          .
The Note states that Borrower owes Lender  ONE MILLION EIGHT HUNDRED THIRTY-SEVEN
THOUSAND FIVE HUNDRED AND 00/100          Dollars (U.S. $ 1,837,500.00          ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
MARCH 1, 2052          .

(G)  **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H)  **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)  **"Riders"** means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☒ Condominium Rider | ☒ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ 1 - 4 Family Rider | ☐ Home Improvement Rider | ☐ Revocable Trust Rider |
| ☐ Other(s) [Specify] | | |

(J)  **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)  **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)  **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)  **Reserved.**

(N)  **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for:  (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)  **Reserved.**

(P)  **"Periodic Payment"** means the regularly scheduled amount due for principal and interest under the Note.

(Q)  **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)  **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

EXHIBIT 1

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                                 of                              ORANGE                              :
[Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: ███████████

which currently has the address of  31423 COAST HIGHWAY #22
[Street]

LAGUNA BEACH                              , California            92651          ("Property Address"):
[City]                                                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:
    **1.   Payment of Principal, Interest, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c)

---

**EXHIBIT 1**

certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; and (b) principal due under the Note. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Reserved.**

**4. Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust, or other security instrument that is a lien having priority over this Security Instrument. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.

Except for a lien Borrower disclosed to Lender in Borrower's application or in any title report Lender obtained, Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards

CALIFORNIA SECOND LIEN DEED OF TRUST - MERS
© 2008 DOCMAGIC, INC.                    Page 4 of 13
CASEC.MZD  12/05/17
☆DocMagic

**EXHIBIT 1**

including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights

---

CALIFORNIA SECOND LIEN DEED OF TRUST - MERS
© 2008 DOCMAGIC, INC.                    Page 5 of 13
CASEC.MZD  12/05/17

☆ DocMagic

are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**7. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**8. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 8, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 8.

Any amounts disbursed by Lender under this Section 8 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**9. Reserved.**

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender, subject to the terms of any mortgage, deed of trust, or other security instrument with a lien which has priority over this Security Instrument.

**EXHIBIT 1**

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of

**EXHIBIT 1**

payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

**EXHIBIT 1**

As used in this Security Instrument:  (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16.  Borrower's Copy.**  Borrower shall be given one copy of the Note and of this Security Instrument.

**17.  Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18.  Borrower's Right to Reinstate After Acceleration.**  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of:  (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument.  Those conditions are that Borrower:  (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.  Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19.  Sale of Note; Change of Loan Servicer; Notice of Grievance.**  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements

**EXHIBIT 1**

of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20. Hazardous Substances.** As used in this Section 20: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee

shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**22. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**23. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**24. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

_____ (Seal)
RAMIN MONFARED                        -Borrower

*RAMIN MONFARED*

_____    _____
Witness                                      Witness

CALIFORNIA SECOND LIEN DEED OF TRUST - MERS
© 2008 DOCMAGIC, INC.                                    Page 12 of 13
CASEC.MZD  12/05/17                    ☆ DocMagic

———————————————— [Space Below This Line For Acknowledgment] ————————————————

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of   CALIFORNIA   )

County of   ORANGE   )

On _February 16, 2022_ before me, _Bernadette Lazzara, Notary Public_

Here Insert Name and Title of the Notarizing Officer

personally appeared   RAMIN MONFARED

_____ ,

Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

BERNADETTE LAZZARA
Notary Public - California
Orange County
Commission # 2367092
My Comm. Expires Aug 17, 2025

Signature of Notary Public

Notary Seal

Loan Originator: KAYVAN KOROUNI, NMLSR ID ▮▮▮▮▮
Loan Originator Organization: LOAN AMERICA, NMLSR IL ▮▮▮▮▮

CALIFORNIA SECOND LIEN DEED OF TRUST - MERS
© 2008 DOCMAGIC, INC.
CASEC.MZD  12/05/17                    Page 13 of 13                    ☆ DocMagic

Loan Number: ██████████

Date: FEBRUARY 14, 2022

Property Address: 31423 COAST HIGHWAY #22
LAGUNA BEACH, CALIFORNIA 92651

## EXHIBIT "A"

## LEGAL DESCRIPTION

A.P.N. # : ████████

☆DocMagic

EXHIBIT 1

**PRELIMINARY REPORT**                                          **PACIFIC COAST TITLE COMPANY**
**ESCROW NO.:**                                                          **TITLE NO.:** ███████

## LEGAL DESCRIPTION

## EXHIBIT A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LAGUNA BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

UNIT NO. 22, CONSISTING OF CERTAIN AIRSPACE AND SURFACE ELEMENTS, AS SHOWN AND DESCRIBED IN THE CONDOMINIUM PLAN ("PLAN"), FOR LAGUNA ROYALE, WHICH PLAN WAS RECORDED OF ORANGE COUNTY, CALIFORNIA ("OFFICIAL RECORDS")

PARCEL 2:

AN UNDIVIDED ONE SEVENTY-EIGHTH (1/78TH) FEE SIMPLE INTEREST AS A TENANT IN COMMON IN AND TO ALL OF THE REAL PROPERTY, INCLUDING, WITHOUT LIMITATIONS, THE COMMON AREA DEFINED IN THE DECLARATION REFFEREC TO BELOW, IN THE REAL PROPERTY ("PROJECT") LOCATED IN THE CITY OF LAGUNA BEACH, ORANGE COUNTY, WHICH IS SPECIFICALLY DESCRIBED AS FOLLOWS:

LOTS D, E, F, G AND H OF TRACT 831 IN THE COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 25, PAGE 15 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, TOGETHER WITH THAT CERTAIN WALKWAY 10 FEET IN WIDTH ADJOINING SAID LOTS E AND F AS SHOWN ON THE MAP OF SAID TRACT 831, SAID WALKWAY HAVING BEING VACATED EXCEPT AS TO THE NORTHEASTERLY 14 FEET THEREOF, BY A RESOLUTION OF THE BOARD OF SUPERVISORS OF ORANGE COUNTY, ENTER FEBRUARY 14, 1956, A CERTIFIED COPY OF SAME BEING RECORDED MARCH 2, 1956 IN BOOK 3423, PAGE 477, OFFICIAL RECORDS.

EXCEPT ANY PORTION OF SAID LAND WHICH LIES BELOW THE LINE OF THE MEAN HIGH TIDE LINES OF THE PACIFIC OCEAN.

PARCEL 3:

NONEXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, USE, ENJOYMENT, DRAINAGE, ENCROACHMENT, SUPPORT, MAINTENANCE, REPAIRS, AND FOR OTHER PURPOSES, ALL AS MAY BE SHOWN IN THE PLAN, AND AS ARE DESCRIBED IN THE DECLARATION.

PARCEL 4:

EXCLUSIVE EASEMENTS APPURTENANT TO PARCELS NO. 1 AND NO. 2 DESCRIBED ABOVE FOR PARKING PURPOSES OVER THE AREA DESIGNATED NO. 54 ON EXHIBIT "G" TO THE DECLARATION AND DESCRIBED AS AN EXCLUSIVE USE COMMON AREA IN THE DECLARATION.

PARCEL 5:

EXCLUSIVE EASEMENTS APPURTENANT TO PARCELS NO. 1 AND NO. 2 DESCRIBED ABOVE FOR DECK PURPOSES AS SHOWN AND ASSIGNED IN THE CONDOMINIUM PLAN AND AS DESCRIBED AS AN EXCLUSIVE USE COMMON AREA IN THE DECLARATION

APN: ██████████

---

## EXHIBIT 1

Loan Number: ███████████

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this    14th  day of        FEBRUARY, 2022        ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to LOAN AMERICA, A CALIFORNIA CORPORATION

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

31423 COAST HIGHWAY #22, LAGUNA BEACH, CALIFORNIA 92651
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a
condominium project known as:

LAGUNA ROYAL CONDOMINIUM ASSOCIATION
[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium
Project (the "Owners Association") holds title to property for the benefit or use of its members or
shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds
and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the
Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or
any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv)
other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed
pursuant to the Constituent Documents.

**B. Hazard Insurance.** So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender
and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender
requires, including fire and hazards included within the term "extended coverage," then:

    (i)  Lender waives the provision in Uniform Covenant 2 for the monthly payment to Lender of
       one-twelfth of the yearly premium installments for hazard insurance on the Property; and

    (ii) Borrower's obligation under Uniform Covenant 5 to maintain hazard insurance coverage on
       the Property is deemed satisfied to the extent that the required coverage is provided by the
       Owners Association policy.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage.

# EXHIBIT 1

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, with any excess paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.   Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 10.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

    (i)    the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

    (ii)    any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender;

    (iii)    termination of professional management and assumption of self-management of the Owners Association; or

    (iv)    any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

MULTISTATE CONDOMINIUM RIDER
SECOND MORTGAGE
USC.RDR  10/15/19          Page 2 of 3          ✫ DocMagic

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_____(Seal)
RAMIN MONFARED                    -Borrower

*RAMIN MONFARED*

MULTISTATE CONDOMINIUM RIDER
SECOND MORTGAGE
USC.RDR  10/15/19                Page 3 of 3                ☆DocMagic

EXHIBIT 1

Loan Number: ▮▮▮▮▮▮▮

# SECOND HOME RIDER

THIS SECOND HOME RIDER is made on this     14th     day of     FEBRUARY     ,
2022     , and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the
"Borrower"), whether there are one or more persons undersigned) to secure Borrower's Note to
LOAN AMERICA, A CALIFORNIA CORPORATION                    (the "Lender")
of the same date and covering the property described in the Security Instrument (the "Property"), which is
located at

31423 COAST HIGHWAY #22, LAGUNA BEACH, CALIFORNIA 92651
[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender
further covenant and agree that Uniform Covenant 6 of the Security Instrument is deleted and is replaced by
the following:

**6. Occupancy and Use; Preservation, Maintenance and Protection of the Property; Borrower's Loan
Application; Leaseholds.** Borrower shall occupy, and shall only use, the property as Borrower's second
home. Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at all times,
and shall not subject the Property to any timesharing or other shared ownership arrangement or to any rental
pool or agreement that requires Borrower either to rent the Property or give a management firm or any other
person any control over the occupancy or use of the Property. Borrower shall not destroy, damage or impair
the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in
default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith
judgement could result in forfeiture of the Property or otherwise materially impair the lien created by this
Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as
provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's
good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material
impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also
be in default if Borrower, during the loan application process, gave materially false or inaccurate information
or statements to Lender (or failed to provide Lender with any material information) in connection with the
loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy
and use of the Property as a second home. If this Security Instrument is on a leasehold, Borrower shall
comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and
the fee title shall not merge unless Lender agrees to the merger in writing.

MULTISTATE SECOND HOME RIDER
SECOND MORTGAGE
USSH.RDR  10/15/19                    Page 1 of 2                    ☆DocMagic

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Second Home Rider.

_____(Seal)
RAMIN MONFARED                    -Borrower

*Ramin Monfared*

MULTISTATE SECOND HOME RIDER
SECOND MORTGAGE
USSH.RDR  10/15/19                  Page 2 of 2                      ☆ DocMagic

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

154.00

**2022000187953 9:25 am 05/20/22**

340 NC-5 D11   24

0.00 0.00 0.00 0.00 69.00 0.00 0.000.0075.00 3.00

**RECORDING REQUESTED BY:**
Pacific Coast Title Company

**When Recorded Mail Document
and Tax Statement To:**
LOAN AMERICA
23293 VENTURA BLVD
WOODLAND HILLS, CA 92603
LOAN#

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN

# CORRECTIVE DEED OF TRUST

This Deed of Trust is being recorded to **CORRECT** a Deed of Trust previously recorded on
February 17, 2022, as Instrument No. 2022-000067136, which was incorrect by using a
**"California Second Lien Deed of Trust"** From.

Recording Requested By:
LOAN AMERICA

And After Recording Return To:
LOAN AMERICA
23293 VENTURA BLVD.
WOODLAND HILLS. CALIFORNIA 92603
Loan Number: ███████████

———————————— [Space Above This Line For Recording Data] ————————————

# CORRECTIVE
# DEED OF TRUST

**MIN:** ████████████████          MERS Phone: 888-679-6377

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)  "Security Instrument"** means this document, which is dated          February 14, 2022          , together with all Riders to this document.
**(B)  "Borrower"** is  RAMIN MONFARED, A SINGLE MAN
BORROWER'S ADDRESS IS 1519 EAST CHAPMAN #220, FULLERTON, CALIFORNIA 92831.


Borrower is the trustor under this Security Instrument.
**(C)  "Lender"** is  LOAN AMERICA

Lender is a                    CALIFORNIA  CORPORATION                    organized
and existing under the laws of                    CALIFORNIA
Lender's address is   23293 VENTURA BLVD., WOODLAND HILLS, CALIFORNIA 91364


**(D)  "Trustee"** is PACIFIC COAST TITLE COMPANY
516 BURCHETT STREET, GLENDALE, CALIFORNIA 91203

**(E)  "MERS"** is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the beneficiary under this Security**

---

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005  01/01                    Page 1 of 15                    ☆DocMagic

# EXHIBIT 1

Recording Requested By:
LOAN AMERICA

And After Recording Return To:
LOAN AMERICA
23293 VENTURA BLVD.
WOODLAND HILLS. CALIFORNIA 92603
Loan Number: ███████████

———————————————— [Space Above This Line For Recording Data] ————————————————

# DEED OF TRUST

MIN: ███████████                                    **MERS Phone: 888-679-6377**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** **"Security Instrument"** means this document, which is dated        February 14, 2022        , together with all Riders to this document.
**(B)** **"Borrower"** is  RAMIN MONFARED, A SINGLE MAN
BORROWER'S ADDRESS IS 1519 EAST CHAPMAN #220, FULLERTON, CALIFORNIA 92831.

Borrower is the trustor under this Security Instrument.
**(C)** **"Lender"** is LOAN AMERICA

Lender is a                        CALIFORNIA  CORPORATION                        organized
and existing under the laws of                        CALIFORNIA                        .
Lender's address is   23293 VENTURA BLVD., WOODLAND HILLS, CALIFORNIA 91364

**(D)** **"Trustee"** is PACIFIC COAST TITLE COMPANY
516 BURCHETT STREET, GLENDALE, CALIFORNIA 91203

**(E)** **"MERS"** is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the beneficiary under this Security**

---

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005  01/01                                    Page 1 of 15                                    ✰DocMagic

**Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F)  **"Note"** means the promissory note signed by Borrower and dated  February 14, 2022
The Note states that Borrower owes Lender  ONE MILLION EIGHT HUNDRED THIRTY-SEVEN
THOUSAND FIVE HUNDRED AND 00/100          Dollars (U.S. $  1,837,500.00          ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
March 1, 2052

(G)  **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H)  **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)  **"Riders"** means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

| | | | |
|---|---|---|---|
| ☐ | Adjustable Rate Rider | ☐ | Planned Unit Development Rider |
| ☐ | Balloon Rider | ☐ | Biweekly Payment Rider |
| ☐ | 1-4 Family Rider | ☒ | Second Home Rider |
| ☒ | Condominium Rider | ☐ | Other(s) [specify] |

(J)  **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)  **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)  **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)  **"Escrow Items"** means those items that are described in Section 3.

(N)  **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for:  (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)  **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)  **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)  **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)  **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

---

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005  01/01                              Page 2 of 15                              ☆DocMagic

EXHIBIT 1

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| COUNTY | of | ORANGE | : |

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: ▓▓▓▓▓▓▓

which currently has the address of              31423 COAST HIGHWAY #22
                                                [Street]

        LAGUNA BEACH              , California     92651       ("Property Address"):
        [City]                              [Zip Code]

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

     THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

     **UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

     **1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,

EXHIBIT 1

treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005  01/01                              Page 4 of 15                              ☆ DocMagic

# EXHIBIT 1

15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.   Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.   Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of

---

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005  01/01                                   Page 5 of 15                                   ☆DocMagic

# EXHIBIT 1

any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

   6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005  01/01                          Page 6 of 15                          ☆DocMagic

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage

---

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005  01/01                            Page 7 of 15                            ☆ DocMagic

**EXHIBIT 1**

Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

---

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005  01/01                                         Page 8 of 15                                         ☆DocMagic

# EXHIBIT 1

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability

---

# EXHIBIT 1

under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005  01/01                                       Page 10 of 15                                 ☆ DocMagic

**EXHIBIT 1**

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in

Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005  01/01                                   Page 12 of 15                                   ☆DocMagic

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

EXHIBIT 1

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

_____ (Seal)
RAMIN MONFARED                    -Borrower

_____          _____
Witness                                   Witness

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005  01/01                    Page 14 of 15                    ☆DocMagic

EXHIBIT 1

———————————— [Space Below This Line For Acknowledgment] ————————————

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of __CALIFORNIA__ )

County of __ORANGE__ )

On __05, 09, 2022__ before me, _Arvin Alamshahi , Notary Public_
      Date                            Here Insert Name and Title of the Notarizing Officer

personally appeared __RAMIN MONFARED__ _____

_____

_____ ,

Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

ARVIN ALAMSHAHI
COMM. # 2355010
NOTARY PUBLIC · CALIFORNIA
LOS ANGELES COUNTY
COMM. EXPIRES APR. 20, 2025

                                              Signature of Notary Public

Notary Seal

Loan Originator: KAYVAN KOROUNI, NMLSR ID ▮▮▮▮▮▮
Loan Originator Organization: LOAN AMERICA, NMLSR ID ▮▮▮▮▮

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS              ☆DocMagic
Form 3005  01/01
Page 15 of 15

EXHIBIT 1

Loan Number: █████████

Date: February 14, 2022

Property Address:    31423 COAST HIGHWAY #22
                     LAGUNA BEACH, CALIFORNIA 92651


## EXHIBIT "A"

## LEGAL DESCRIPTION


A.P.N. #  █████████

☆ DocMagic

Escrow No 
Title No.:

# EXHIBIT A

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LAGUNA BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

UNIT NO. 22, CONSISTING OF CERTAIN AIRSPACE AND SURFACE ELEMENTS, AS SHOWN AND DESCRIBED IN THE CONDOMINIUM PLAN ("PLAN"), FOR LAGUNA ROYALE, WHICH PLAN WAS RECORDED OF ORANGE COUNTY, CALIFORNIA ("OFFICIAL RECORDS")

PARCEL 2:

AN UNDIVIDED ONE SEVENTY-EIGHTH (1/78TH) FEE SIMPLE INTEREST AS A TENANT IN COMMON IN AND TO ALL OF THE REAL PROPERTY, INCLUDING, WITHOUT LIMITATIONS, THE COMMON AREA DEFINED IN THE DECLARATION REFFEREC TO BELOW, IN THE REAL PROPERTY ("PROJECT") LOCATED IN THE CITY OF LAGUNA BEACH, ORANGE COUNTY, WHICH IS SPECIFICALLY DESCRIBED AS FOLLOWS:

LOTS D, E, F, G AND H OF TRACT 831 IN THE COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 25, PAGE 15 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, TOGETHER WITH THAT CERTAIN WALKWAY 10 FEET IN WIDTH ADJOINING SAID LOTS E AND F AS SHOWN ON THE MAP OF SAID TRACT 831, SAID WALKWAY HAVING BEING VACATED EXCEPT AS TO THE NORTHEASTERLY 14 FEET THEREOF, BY A RESOLUTION OF THE BOARD OF SUPERVISORS OF ORANGE COUNTY, ENTER FEBRUARY 14, 1956, A CERTIFIED COPY OF SAME BEING RECORDED MARCH 2, 1956 IN BOOK 3423, PAGE 477, OFFICIAL RECORDS.

EXCEPT ANY PORTION OF SAID LAND WHICH LIES BELOW THE LINE OF THE MEAN HIGH TIDE LINES OF THE PACIFIC OCEAN.

PARCEL 3:

NONEXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, USE, ENJOYMENT, DRAINAGE, ENCROACHMENT, SUPPORT, MAINTENANCE, REPAIRS, AND FOR OTHER PURPOSES, ALL AS MAY BE SHOWN IN THE PLAN, AND AS ARE DESCRIBED IN THE DECLARATION.

PARCEL 4:

EXCLUSIVE EASEMENTS APPURTENANT TO PARCELS NO. 1 AND NO. 2 DESCRIBED ABOVE FOR PARKING PURPOSES OVER THE AREA DESIGNATED NO. 54 ON EXHIBIT "G" TO THE DECLARATION AND DESCRIBED AS AN EXCLUSIVE USE COMMON AREA IN THE DECLARATION.

PARCEL 5:

EXCLUSIVE EASEMENTS APPURTENANT TO PARCELS NO. 1 AND NO. 2 DESCRIBED ABOVE FOR DECK PURPOSES AS SHOWN AND ASSIGNED IN THE CONDOMINIUM PLAN AND AS DESCRIBED AS AN EXCLUSIVE USE COMMON AREA IN THE DECLARATION

APN:

EXHIBITA

Loan Number: █████████

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 14th  day of          February, 2022          ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to  LOAN AMERICA, A CALIFORNIA CORPORATION

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

31423 COAST HIGHWAY #22, LAGUNA BEACH, CALIFORNIA 92651
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a
condominium project known as:

LAGUNA ROYAL CONDOMINIUM ASSOCIATION
[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium
Project (the "Owners Association") holds title to property for the benefit or use of its members or
shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds
and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A.  Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the
Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or
any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv)
other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed
pursuant to the Constituent Documents.

**B.  Property Insurance.** So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender
and which provides insurance coverage in the amounts (including deductible levels), for the periods, and
against loss by fire, hazards included within the term "extended coverage," and any other hazards, including,
but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives
the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for
property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property
insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided
by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

MULTISTATE CONDOMINIUM RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3140 1/01                                     Page 1 of 3
☆DocMagic

# EXHIBIT 1

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C.   Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D.   Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11

**E.   Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F.   Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**EXHIBIT 1**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Condominium Rider.

_____ (Seal)
RAMIN MONFARED                 -Borrower

MULTISTATE CONDOMINIUM RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3140 1/01                              Page 3 of 3                      ☆DocMagic

EXHIBIT 1

Loan Number: ████████

# SECOND HOME RIDER

THIS SECOND HOME RIDER is made this 14th day of February 2022 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower," whether there are one or more persons undersigned) to secure Borrower's Note to LOAN AMERICA, A CALIFORNIA CORPORATION
(the "Lender") of the same date and covering the Property described in the Security Instrument (the "Property"), which is located at:

31423 COAST HIGHWAY #22, LAGUNA BEACH, CALIFORNIA 92651
[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and are replaced by the following:

**6. Occupancy.** Borrower will occupy and use the Property as Borrower's second home. Borrower will maintain exclusive control over the occupancy of the Property, including short-term rentals, and will not subject the Property to any timesharing or other shared ownership arrangement or to any rental pool or agreement that requires Borrower either to rent the Property or give a management firm or any other person or entity any control over the occupancy or use of the Property. Borrower will keep the Property available primarily as a residence for Borrower's personal use and enjoyment for at least one year after the date of this Second Home Rider, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's second home.

MULTISTATE SECOND HOME RIDER - Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3890  1/01 (rev. 4/19)                Page 1 of 2                      ☆DocMagic

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Second Home Rider.

_____(Seal)
RAMIN MONFARED                              -Borrower

MULTISTATE SECOND HOME RIDER - Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    ☆DocMagic
Form 3890  1/01 (rev. 4/19)                    Page 2 of 2

EXHIBIT 1

# EXHIBIT 2

# NOTE

MIN: ███████████████    Loan Number ████████████

February 14, 2022          WOODLAND HILLS          CALIFORNIA
    [Date]                            [City]                          [State]

31423 COAST HIGHWAY #22, LAGUNA BEACH, CALIFORNIA 92651

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 1,837,500.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is LOAN AMERICA, A CALIFORNIA CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 4.687 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on      April 1 , 2022 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on March 1, 2052 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 23293 VENTURA BLVD., WOODLAND HILLS, CALIFORNIA 91364

                         or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 9,515.62

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;

---

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01                  Page 1 of 3              ☆DocMagic

**EXHIBIT 2**

and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep

EXHIBIT 2

the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
RAMIN MONFARED                    -Borrower

Loan Originator: KAYVAN KOROUNI, NMLSR ID ▮▮▮▮▮▮
Loan Originator Organization: LOAN AMERICA, NMLSR ID ▮▮▮▮

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01                    Page 3 of 3                    ☆DocMagic

**EXHIBIT 2**

# ALLONGE TO NOTE

LOAN #: ███████████

PROPERTY ADDRESS: **31423 COAST HIGHWAY #22, LAGUNA BEACH, CALIFORNIA 92651**

PRINCIPAL BALANCE: **$1,837,500.00**

ALLONGE TO NOTE DATED: **FEBRUARY 14, 2022**

IN FAVOR OF: **Loan America**

AND EXECUTED BY: **RAMIN MONFARED**

PAY TO THE ORDER OF: **Arc Home LLC**

WITHOUT RECOURSE **Loan America**

BY: _____

NAME: REZA RAHIMZADEH

TITLE: PRESIDENT

ALLONGE TO NOTE
ATN.LSR  08/27/20

**DocMagic** *eXpress*
20220210150125-1522008908-ED



EXHIBIT 2

# ALLONGE

LOAN NUMBER: ███████████

BORROWER: RAMIN MONFARED

CO-BORROWER(S):


PROPERTY ADDRESS: 31423 COAST HWY #22
LAGUNA BEACH, CA 92651

NOTE AMOUNT: $1,837,500.00

NOTE DATE: 02/14/2022


*PAY TO THE ORDER OF:*

---

WITHOUT RECOURSE


Arc Home LLC


BY: *[signature]*


NAME: Massimo Monaco
TITLE: Chief Financial Officer


**EXHIBIT 2**

Loan Number ███████

# SIGNATURE AFFIDAVIT AND AKA STATEMENT

## SIGNATURE AFFIDAVIT

I, RAMIN MONFARED
certify that this is my true and correct signature:

_____
RAMIN MONFARED
Borrower

Sample Signature

## AKA STATEMENT

I, RAMIN MONFARED
further certify that I am also known as:

_____
MONFARED, RAMIN
Name Variation (Print)

Sample Signature (Variation)

_____
RAYMOND MONFARED
Name Variation (Print)

Sample Signature (Variation)

_____
RAY MONFARED
Name Variation (Print)

Sample Signature (Variation)

_____
MONFARED,RAYMOND
Name Variation (Print)

Sample Signature (Variation)

_____
Name Variation (Print)

Sample Signature (Variation)

_____
Name Variation (Print)

Sample Signature (Variation)

_____
Name Variation (Print)

Sample Signature (Variation)

SIGNATURE AFFIDAVIT AND AKA STATEMENT
AKA.LSR 01/21/20

☆DocMagic

Page 1 of 2

**EXHIBIT 2**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of   CALIFORNIA

County of   ORANGE

Subscribed and sworn to (or affirmed) before me on this ___16th___ day of _February 2022_.

by   RAMIN MONFARED

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

BERNADETTE LAZZARA
Notary Public · California
Orange County
Commission # 2367092
My Comm. Expires Aug 17, 2025

(Seal)

Signature

SIGNATURE AFFIDAVIT AND AKA STATEMENT
AKA.LSR 01/21/20                                            ☆DocMagic

Page 2 of 2

**EXHIBIT 2**

# EXHIBIT 3

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING, LLC

**Recorded in Official Records, Orange County**
**Hugh Nguyen. Clerk-Recorder**

[AND WHEN RECORDED MAIL TO]
Shellpoint Mortgage Servicing
C/O Nationwide Title Clearing, LLC
2100 Alt. 19 North
Palm Harbor, FL 34683

**38.00**

Loan Number

\* �...ᴜ ᴜ ɪ ᴐ ᴜ ᴜ ɪ ᴐ ᴢ ᴢ ᴢ ᴢ ᴜ ᴜ ᴜ ᴐ \*
**2024000008965 11:20 am 01/16/24**
9 419A A32   2
0.00 0.00 0.00 0.00 3.00 0.00 0.000.0075.00 3.00

## CORPORATE ASSIGNMENT OF DEED OF TRUST

SEND ALL OTHER BORROWER OR LOAN RELATED CORRESPONDENCE TO: Shellpoint Mortgage Servicing, P.O. Box 10826, Greenville, SC 29603-0826, Toll-free Phone: (800) 365-7107

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR LOAN AMERICA, ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026) by these presents does convey, grant, assign, transfer, and set over all of its rights, title, and interest in the described Deed of Trust, representation or warranty, including all liens and any rights due or to become due thereon to U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE ON BEHALF OF GCAT 2022-NQM5 TRUST, WHOSE ADDRESS IS 1 FEDERAL STREET EP-MN-FED, BOSTON, MA 02110, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Deed of Trust made by **RAMIN MONFARED** and recorded on 02/17/2022 as **Instrument # 2022000067136** in the office of the **ORANGE** County Recorder, **CA**.

IN WITNESS WHEREOF, this Assignment is executed **this 16th day of January in the year 2024**

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR LOAN AMERICA, ITS SUCCESSORS AND ASSIGNS

_____
**SUSAN HICKS**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

SPTRA            MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)   PRE-REFERRAL   MIN
                 MERS PHONE 1-888-679-6377 MERS Mailing Address: P.O. Box 2026, Flint, MI 48501-2026   DOCR
ɪ ɪᴅ/4ᴜɪ-ɪᴜᴇ ᴠ ᴢ/ᴜ ᴜ -2ɪ EERMCA1

**EXHIBIT 3**

**Loan Number**

# ACKNOWLEDGEMENT

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization on this 16th day of January in the year 2024, by Susan Hicks as VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (``MERS``), AS BENEFICIARY, AS NOMINEE FOR LOAN AMERICA, ITS SUCCESSORS AND ASSIGNS, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.


VICKY MCCOY
COMM EXPIRES: 12/18/2026

> VICKY MCCOY
> Notary Public - State of Florida
> Commission # HH 328470
> My Comm. Expires Dec 18, 2026
> Bonded through National Notary Assn.

SPTDA  440156053   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)   PRE-REFERRAL    MIN
         MERS PHONE 1-888-679-6377 MERS Mailing Address: P.O. Box 2026, Flint, MI 48501-2026   DOCR
T162401-10:35:29 [C-2] EFRMCA1

# EXHIBIT 3

# EXHIBIT 4

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

85.00

Recording Requested By:
**SERVICELINK**

\* $ R U U 1 4 9 0 5 7 5 5 $ \*
**2024000099744 1:25 pm 04/22/24**
371 NC-5 S15   1
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.0075.00 3.00

When Recorded Mail To:
**Barrett Daffin Frappier Treder & Weiss, LLP**
**4004 Belt Line Road, Suite 100**
**Addison, Texas 75001-4320**

Property Address:
**31423 COAST HIGHWAY #22**
**LAGUNA BEACH, CA  92651**
APN #: **931-68-231**

Space above this line for Recorder's use only
Trustee Sale No. : **00000010110781**      Title Order No. : **240183835**

## SUBSTITUTION OF TRUSTEE

WHEREAS, **RAMIN MONFARED, A SINGLE MAN** was the original Trustor, **PACIFIC COAST TITLE COMPANY** was the original Trustee, and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR LOAN AMERICA, ITS SUCCESSORS AND ASSIGNS** was the original Beneficiary under that certain Deed of Trust dated **February 14, 2022** and Recorded on **February 17, 2022 as Instrument No. 2022000067136 , And pursuant to Corrective Deed of Trust recorded 05/20/2022 as instrument no 2022000187953** of official records of **ORANGE** county, state of **California**, as more fully described on said Deed of Trust; and WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said prior Trustee.

NOW, THEREFORE, the undersigned hereby substitutes, **BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP,** whose address is: **4004 Belt Line Road, Suite 100, Addison, Texas 75001-4320** as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE ON BEHALF OF GCAT 2022-NQM5 TRUST By: NewRez LLC F/K/A New Penn Financial, LLC d/b/a Shellpoint Mortgage as Attorney in Fact

DATED: _4.15.24_

NAME: Kenneth Wigley
TITLE : Document Verification Specialist

STATE OF _Arizona_

COUNTY OF _Maricopa_

On _4|15|2024_ before me, _Sofia Pacheco_ , notary public, personally appeared _Kenneth Wigley_ , who proved to me on the basis of satisfactory evidence (identified by state DL) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____
My commission expires: _9/23/27_

SOFIA PACHECO
Notary Public - Arizona
Maricopa County
Commission # 655911
My Comm. Expires Sep 23, 2027

Page 1 of 1

Property Address:
31423 COAST HIGHWAY #22
LAGUNA BEACH, CA  92651

## EXHIBIT 4

# EXHIBIT 5

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

)4.00

* ₹ R U U I 4 9 ⊃ ⊂ ℓ θ ⊃ ϑ *

**2024000113945 3:50 pm 05/07/24**

440 CR-SC05 N15  4

0.00 0.00 0.00 0.00 9.00 0.00 0.00.0075.00 3.00

Recording requested by:

When Recorded Mail To:
**BARRETT DAFFIN FRAPPIER TREDER &
WEISS, LLP
4004 Belt Line Road, Suite 100
Addison, Texas 75001-4320**

APN #: 931-68-231
Property Address:
**31423 COAST HIGHWAY #22
LAGUNA BEACH, CALIFORNIA 92651**

DFF00000010110781

_Space above this line for Recorder's use only_

Trustee Sale No. : 00000010110781          Title Order No.: 240183835

# IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
## DEED OF TRUST

**ATTENTION RECORDER**: THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY APPLIES
ONLY TO COPIES PROVIDED TO THE TRUSTOR, NOT TO THIS RECORDED ORIGINAL NOTICE.

**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED**

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

**NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI
LIỆU NÀY**

**THE ABOVE STATEMENT IS MADE PURSUANT TO CA CIVIL CODE §§2923.3(c)(1)and(2).**

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN
YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may
have the legal right to bring your account in good standing by paying all of your past due payments
plus permitted costs and expenses within the time permitted by law for reinstatement of your account,
which is normally five business days prior to the date set for the sale of your property. No sale date may
be set until approximately 90 days from the date this Notice of Default may be recorded (which date of
recordation appears on this notice).

This amount is $84,322.49 as of 05/06/2024 and will increase until your account becomes current.   While
your property is in foreclosure, you still must pay other obligations (such as insurance and taxes)
required by your note and deed of trust or mortgage.   If you fail to make future payments on the loan,
pay taxes on the property, provide insurance on the property, or pay other obligations as required in
the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order

**EXHIBIT 5**

**IMPORTANT NOTICE**
**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**

Trustee Sale No. : 00000010110781          Title Order No.: 240183835

to reinstate your account in good standing.   In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**NEWREZ LLC  d/b/a SHELLPOINT MORTGAGE SERVICING**
**c/o BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP**
**4004 Belt Line Road, Suite 100**
**Addison, Texas 75001-4320**
**(866) 795-1852**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.
Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

## EXHIBIT 5

**IMPORTANT NOTICE**
NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

Trustee Sale No. : 00000010110781          Title Order No.: 240183835

NOTICE IS HEREBY GIVEN THAT: BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated 02/14/2022, executed by RAMIN MONFARED, A SINGLE MAN, as Trustor, to secure obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR LOAN AMERICA, ITS SUCCESSORS AND ASSIGNS, as Beneficiary Recorded on 02/17/2022 as Instrument No. 2022000067136, And pursuant to Corrective Deed of Trust recorded 05/20/2022 as instrument no 2022000187953 of official records in the Office of the Recorder of ORANGE County, California, as more fully described on said Deed of Trust.   Including a Note(s)/ Unconditional Guaranty which had a principal amount of $1,837,500.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 11/1/2023 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES, AND/OR TRUSTEE FEES, IF ANY.

NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.

That by reason thereof, the present beneficiary under said Deed of Trust and/or its loan servicer hereby declare(s) all obligations secured thereby immediately due and payable, invoke(s) the power of sale under said Deed of Trust, and elect(s) to sell the property described therein in satisfaction of those obligations without prejudice to any other default remedies permitted by applicable law.

DATED:  05/06/2024

BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP as Trustee or agent for beneficiary

By:
Erica Jones, Authorized Agent

**EXHIBIT 5**

# DECLARATION OF COMPLIANCE
(California Civil Code Section 2923.55(c))

Borrower(s):          RAMIN MONFARED
Property Address:     31423 COAST HIGHWAY #22, LAGUNA BEACH, CA 92651
Trustee's Sale No.:   00000010110781

The undersigned, as authorized agent or employee of the mortgage servicer, declares as follows:

## Homeowner Bill of Rights Pre-Foreclosure Contact (California Civil Code Section 2923.55)

☒ The mortgage servicer has contacted the borrower to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure as required by California Civil Code Section 2923.55(b)(2). Thirty days or more have passed since the initial contact was made.

☐ The mortgage servicer has tried with due diligence to contact the borrower as required by California Civil Code Section 2923.55(f), but has not made contact despite such due diligence. Thirty days or more have passed since these due diligence efforts were satisfied.

☐ No contact was required because ☐ the individual did not meet the definition of a "borrower" under California Civil Code Section 2920.5(c).

☐ California Civil Code Section 2923.55 does not apply because the loan is not secured by a first lien mortgage or deed of trust on residential real property that meets the criteria in California Civil Code Section 2924.15(a)(1) ("owner-occupied") or Section 2924.15(a)(2) ("occupied by tenant").

## COVID-19 Forbearance Relief (California Civil Code Section 3273.10)

☐ The mortgage servicer is exempt from the requirements of California Civil Code Section 3273.10. The borrower's loan is a federally-backed mortgage, and the mortgage servicer has complied with the forbearance provisions in Section 4022 of the federal Coronavirus Aid, Relief and Economic Security Act ("the CARES Act").

☐ The mortgage servicer is exempt from the requirements of California Civil Code Section 3273.10. The borrower's loan is not a federally-backed mortgage, but the mortgage servicer provides forbearance consistent with the requirements of the CARES Act for federally-backed mortgages.

☒ The mortgage servicer ☐ approved ☐ denied ☒ did not receive a forbearance request made during the effective time period that satisfied the conditions of California Civil Code Section 3273.10(a).

I certify that this declaration is accurate, complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

**NEWREZ LLC  d/b/a SHELLPOINT
MORTGAGE SERVICING**

Dated:  __4-17-2024__          By: _____

Alfonso Ramirez - Loss Mitigation Specialist
[AUTHORIZED SIGNER]

Large Servicer Compliance Declaration (AB 3088 revised 11/13/2020)

# EXHIBIT 5

# EXHIBIT 6

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

91.00

*$R00152620/8$*

**2024000304000** 12:53 pm 11/20/24

490 507A N34 3

0.00 0.00 0.00 0.00 6.00 0.00 0.000.0075.00 3.00

Recording requested by:
**ServiceLink**

When Recorded Mail To:
**BARRETT DAFFIN FRAPPIER TREDER &
WEISS, LLP
4004 Belt Line Road, Suite 100
Addison, Texas 75001-4320
(866) 795-1852**
APN #: 931-68-231
Property Address:
**31423 COAST HIGHWAY #22
LAGUNA BEACH, CALIFORNIA 92651**

NOTSU0000010110781

Space above this line for Recorder's use only

Trustee Sale No. : 00000010110781        Title Order No.: 240183835        FHA/VA/PMI No.:

## NOTICE OF TRUSTEE'S SALE

**ATTENTION RECORDER:** THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY APPLIES
ONLY TO COPIES PROVIDED TO THE TRUSTOR, NOT TO THIS RECORDED ORIGINAL NOTICE.

### NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI
LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 02/14/2022. UNLESS YOU TAKE ACTION
TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A
LAWYER.**

**BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP,** as duly appointed Trustee under and pursuant to Deed
of Trust **Recorded on 02/17/2022 as Instrument No. 2022000067136 , And pursuant to Corrective Deed of Trust
recorded 05/20/2022 as instrument no 2022000187953** of official records in the office of the County Recorder of
**ORANGE** County, State of CALIFORNIA.
**EXECUTED BY:       RAMIN MONFARED, A SINGLE MAN,**
WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH
EQUIVALENT or other form of payment authorized by California Civil Code 2924h(b), (payable at time of sale in
lawful money of the United States).
**DATE OF SALE:       01/06/2025       TIME OF SALE:       9:00 AM**
**PLACE OF SALE:       Doubletree by Hilton Hotel Anaheim – Orange County, 100 The City Drive, Orange, CA
92868, Auction.com Room.**

## EXHIBIT 6

| Trustee Sale No. : **00000010110781** | Title Order No.: **240183835** | FHA/VA/PMI No.: |

**STREET ADDRESS** and other common designation, if any, of the real property described above is purported to be:

**31423 COAST HIGHWAY #22, LAGUNA BEACH, CALIFORNIA 92651**

APN#:                **931-68-231**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is **$1,896,258.94**. The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 833-561-0243 for information regarding the trustee's sale or visit this Internet Web site WWW.SALES.BDFGROUP.COM for information regarding the sale of this property, using the file number assigned to this case 00000010110781. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

**EXHIBIT 6**

| Trustee Sale No. : 00000010110781 | Title Order No.: 240183835 | FHA/VA/PMI No.: |

**NOTICE TO TENANT:** You may have a right to purchase this property after the trustee auction pursuant to Section 2924m of the California Civil Code. If you are an "eligible tenant buyer," you can purchase the property if you match the last and highest bid placed at the trustee auction. If you are an "eligible bidder", you may be able to purchase the property if you exceed the last and highest bid placed at the trustee auction. There are three steps to exercising this right of purchase. First, 48 hours after the date of the trustee sale, you can call 833-561-0243, or visit this internet website WWW.SALES.BDFGROUP.COM using the file number assigned to this case 00000010110781 to find the date on which the trustee's sale was held, the amount of the last and highest bid, and the address of the trustee. Second, you must send a written notice of intent to place a bid so that the trustee receives it no more than 15 days after the trustee's sale. Third, you must submit a bid so that the trustee receives it no more than 45 days after the trustee's sale. If you think you may qualify as an "eligible tenant buyer" or "eligible bidder," you should consider contacting an attorney or appropriate real estate professional immediately for advice regarding this potential right to purchase.

FOR TRUSTEE SALE INFORMATION PLEASE CALL:
**833-561-0243**
**WWW.SALES.BDFGROUP.COM**

**BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP IS ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP as Trustee**
**3990 E. Concours Street, Suite 350**
**Ontario, CA 91764**
**(866) 795-1852**

_____    Dated: **11/19/2024**
BY: Benjamin Kelley, AUTHORIZED AGENT

EXHIBIT 6

# EXHIBIT 7

RECORDING REQUESTED BY
Laguna Legal, Inc.

AND WHEN RECORDED MAIL THIS DEED AND,
UNLESS OTHERWISE SHOWN BELOW, MAIL TAX
STATEMENT TO:

Name: **Ramin Monfared, Trustee**
Address: **31423 Coast Highway #22**
City, State Zip: **Laguna Beach, CA 92651**
Title Order No.                Escrow No.

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

10.00

**2022000414807 1:36 pm 12/21/22**
376 419A D10   2
0.00 0.00 0.00 0.00 3.00 0.00 0.000.000.00 0.00

Exempt from fee per GC 27388.1: This document is a transfer of real property that is a
residential dwelling in an owner/occupier.

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## TRUST TRANSFER DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s)     This conveyance is a gift and the grantor received nothing in return. R&T 11930

This conveyance transfers an interest into or out of a Living Trust. R&T 11930

DOCUMENTARY TRANSFER TAX IS $    **Zero**
☐ unincorporated area                ☒ City of  **Laguna Beach**
Parcel No.  **931-682-31**
☐ computed on full value of property conveyed, or
☐ computed on full value less value of liens or encumbrances remaining at time of sale, and
FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Ramin Monfared, a single man**

hereby REMISE, RELEASE AND FOREVER GRANTS to

**Ramin Monfared, Trustee of the Coast Highway Ramfared Trust dated November 28th, 2022**

the following described real property in the city of    **Laguna Beach**

county of    **Orange**              State of    **California**              Commonly known as:

**31423 Coast Highway #22, Laguna Beach, CA 92651;** Legally described as:

**Complete Legal Description attached herein and made a part hereof as Exhibit A**

Dated:   *DEC 13th 2022*

*[signature]*

**Ramin Monfared**

### ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California            )
County of *Orange*            )
On the *13th* day of *December* 2022, before me, *PJ Kehoe*, a Notary Public,
personally appeared RAMIN MONFARED, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s)
on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

PJ KEHOE
Notary Public - California
Orange County
Commission # 2410788
My Comm. Expires Aug 12, 2026

Signature   *PJ Kehoe*
                              (This area for official notarial seal)
MAIL TAX STATEMENTS TO PARTY SHOWN ON FOLLOWING LINE; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE
                    Same as above
NAME                STREET ADDRESS                CITY & STATE
**TRUST TRANSFER DEED**

## EXHIBIT 7

## LEGAL DESCRIPTION

## EXHIBIT A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LAGUNA BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

UNIT NO. 22, CONSISTING OF CERTAIN AIRSPACE AND SURFACE ELEMENTS, AS SHOWN AND DESCRIBED IN THE CONDOMINIUM PLAN ("PLAN"), FOR LAGUNA ROYALE, WHICH PLAN WAS RECORDED OF ORANGE COUNTY, CALIFORNIA ("OFFICIAL RECORDS")

PARCEL 2:

AN UNDIVIDED ONE SEVENTY-EIGHTH (1/78TH) FEE SIMPLE INTEREST AS A TENANT IN COMMON IN AND TO ALL OF THE REAL PROPERTY, INCLUDING, WITHOUT LIMITATIONS, THE COMMON AREA DEFINED IN THE DECLARATION REFFEREC TO BELOW, IN THE REAL PROPERTY ("PROJECT") LOCATED IN THE CITY OF LAGUNA BEACH, ORANGE COUNTY, WHICH IS SPECIFICALLY DESCRIBED AS FOLLOWS:

LOTS D, E, F, G AND H OF TRACT 831 IN THE COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 25, PAGE 15 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, TOGETHER WITH THAT CERTAIN WALKWAY 10 FEET IN WIDTH ADJOINING SAID LOTS E AND F AS SHOWN ON THE MAP OF SAID TRACT 831, SAID WALKWAY HAVING BEING VACATED EXCEPT AS TO THE NORTHEASTERLY 14 FEET THEREOF, BY A RESOLUTION OF THE BOARD OF SUPERVISORS OF ORANGE COUNTY, ENTER FEBRUARY 14, 1956, A CERTIFIED COPY OF SAME BEING RECORDED MARCH 2, 1956 IN BOOK 3423, PAGE 477, OFFICIAL RECORDS.

EXCEPT ANY PORTION OF SAID LAND WHICH LIES BELOW THE LINE OF THE MEAN HIGH TIDE LINES OF THE PACIFIC OCEAN.

PARCEL 3:

NONEXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, USE, ENJOYMENT, DRAINAGE, ENCROACHMENT, SUPPORT, MAINTENANCE, REPAIRS, AND FOR OTHER PURPOSES, ALL AS MAY BE SHOWN IN THE PLAN, AND AS ARE DESCRIBED IN THE DECLARATION.

PARCEL 4:

EXCLUSIVE EASEMENTS APPURTENANT TO PARCELS NO. 1 AND NO. 2 DESCRIBED ABOVE FOR PARKING PURPOSES OVER THE AREA DESIGNATED NO. 54 ON EXHIBIT "G" TO THE DECLARATION AND DESCRIBED AS AN EXCLUSIVE USE COMMON AREA IN THE DECLARATION.

PARCEL 5:

EXCLUSIVE EASEMENTS APPURTENANT TO PARCELS NO. 1 AND NO. 2 DESCRIBED ABOVE FOR DECK PURPOSES AS SHOWN AND ASSIGNED IN THE CONDOMINIUM PLAN AND AS DESCRIBED AS AN EXCLUSIVE USE COMMON AREA IN THE DECLARATION

APN: 931-68-231

## EXHIBIT 7

# EXHIBIT 8

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

94.00

**RECORDING REQUESTED BY:**
Greg M. Tonkinson, Trustee

* 3 R U U I 4 4 y 5 8 5 2 3 *
**2023000191208 2:27 pm 08/08/23**
434 Sec4A A08   4
0.00 0.00 0.00 0.00 9.00 0.00 0.000.0075.00 3.00

**WHEN RECORDED MAIL TO**

Name    Greg M. Tonkinson, Trustee

Address   260 Newport Center Dr. Suite 100

City    Newport Beach, CA  92660

State, Zip

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN: 931-682-31

**AFFIDAVIT OF CHANGE OF TRUSTEE**
**California Probate Code Section 18105**

STATE OF CALIFORNIA,                )
                                    ) S.S.
County of Orange                    )

Greg M. Tonkinson, Trustee , of legal age, being first duly sworn, deposes and says:

1.  The Trust known as   Coast Highway Ramfared Trust
    executed on   November 28, 2022                          , is a valid and existing trust.
2.  The name(s) of the settlor(s) of the Trust is (are):  Ramin Monfared

3.  The name(s) of the previous trustee(s) of the Trust is (are):   Ramin Monfared

4.  I (we) am (are) all of the currently acting successor trustees.

5.  The Trust has not been revoked, modified or amended in any manner which would cause the representations contained
    herein to be incorrect.

6.  The legal description of real property in the Trust is attached hereto as **Exhibit "A"**.

7.  I (we) became the successor trustee(s) by reason of  [X] resignation,  [ ] incompetency,  [ ] guardianship,
    [ ] death of the prior trustee(s). If death is checked, attach a certified copy of the Death Certificate.

8.  Attached as **Exhibit "B"** are copies of excerpts from the original Trust documents, amendments, and other
    documents pertaining to the succession of the undersigned as successor trustee(s).

Dated: 08/08/2023

                                              Greg M. Tonkinson, Trustee

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to
which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                 )
COUNTY OF  ORANGE                   )
Subscribed and sworn to (or affirmed) before me on
this 8th         day of August 2023
by  Greg M. Tonkinson                      ,
*proved to me on the basis of satisfactory evidence*
*to be the person(s) who appeared before me.*

ELLIE E. ORTIZ
COMM. # 2308788
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Comm. Exp. Oct. 14, 2023

            SIGNATURE                                    (SEAL)

NON-JC-063 Rev. 07/01/2016

CEB Essential Forms
ceb.com

**AFFIDAVIT OF CHANGE OF TRUSTEE**
**California Probate Code Section 18105**

**EXHIBIT 8**

## LEGAL DESCRIPTION

## EXHIBIT A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LAGUNA BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

UNIT NO. 22, CONSISTING OF CERTAIN AIRSPACE AND SURFACE ELEMENTS, AS SHOWN AND DESCRIBED IN THE CONDOMINIUM PLAN ("PLAN"), FOR LAGUNA ROYALE, WHICH PLAN WAS RECORDED OF ORANGE COUNTY, CALIFORNIA ("OFFICIAL RECORDS")

PARCEL 2:

AN UNDIVIDED ONE SEVENTY-EIGHTH (1/78TH) FEE SIMPLE INTEREST AS A TENANT IN COMMON IN AND TO ALL OF THE REAL PROPERTY, INCLUDING, WITHOUT LIMITATIONS, THE COMMON AREA DEFINED IN THE DECLARATION REFFEREC TO BELOW, IN THE REAL PROPERTY ("PROJECT") LOCATED IN THE CITY OF LAGUNA BEACH, ORANGE COUNTY, WHICH IS SPECIFICALLY DESCRIBED AS FOLLOWS:

LOTS D, E, F, G AND H OF TRACT 831 IN THE COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 25, PAGE 15 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, TOGETHER WITH THAT CERTAIN WALKWAY 10 FEET IN WIDTH ADJOINING SAID LOTS E AND F AS SHOWN ON THE MAP OF SAID TRACT 831, SAID WALKWAY HAVING BEING VACATED EXCEPT AS TO THE NORTHEASTERLY 14 FEET THEREOF, BY A RESOLUTION OF THE BOARD OF SUPERVISORS OF ORANGE COUNTY, ENTER FEBRUARY 14, 1956, A CERTIFIED COPY OF SAME BEING RECORDED MARCH 2, 1956 IN BOOK 3423, PAGE 477, OFFICIAL RECORDS.

EXCEPT ANY PORTION OF SAID LAND WHICH LIES BELOW THE LINE OF THE MEAN HIGH TIDE LINES OF THE PACIFIC OCEAN.

PARCEL 3:

NONEXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, USE, ENJOYMENT, DRAINAGE, ENCROACHMENT, SUPPORT, MAINTENANCE, REPAIRS, AND FOR OTHER PURPOSES, ALL AS MAY BE SHOWN IN THE PLAN, AND AS ARE DESCRIBED IN THE DECLARATION.

PARCEL 4:

EXCLUSIVE EASEMENTS APPURTENANT TO PARCELS NO. 1 AND NO. 2 DESCRIBED ABOVE FOR PARKING PURPOSES OVER THE AREA DESIGNATED NO. 54 ON EXHIBIT "G" TO THE DECLARATION AND DESCRIBED AS AN EXCLUSIVE USE COMMON AREA IN THE DECLARATION.

PARCEL 5:

EXCLUSIVE EASEMENTS APPURTENANT TO PARCELS NO. 1 AND NO. 2 DESCRIBED ABOVE FOR DECK PURPOSES AS SHOWN AND ASSIGNED IN THE CONDOMINIUM PLAN AND AS DESCRIBED AS AN EXCLUSIVE USE COMMON AREA IN THE DECLARATION

APN: 931-68-231

# Exhibit "A"

## EXHIBIT 8

Re: *Resignation as Trustee of Coast Highway Ramfared Trust*

Dear Greg M. Tonkinson; Coast Highway Ramfared LLC.

This letter serves as official notice of my resignation as Trustee under the Coast Highway Ramfared Trust, dated November 29th, 2022.

Pursuant to Section 3.03 of said Trust Agreement, my resignation will be effective immediately from the date of this notice. Under said Trust Agreement Greg M. Tonkinson is the Successor Trustee. If Greg M. Tonkinson is unwilling or unable to serve you as the current Beneficiaries may appoint an individual or corporate fiduciary as successor Trustee. Such action must be taken with the majority consent of all of the Beneficiaries named in Schedule B of said Trust Agreement.

Consistent with my resignation, I as Trustee will convey to such successor trustee, so appointed, all the rights, title and interests in and to all of the real estate held by me as Trustee under said Trust Agreement.

Should a successor trustee not be appointed within 30 days, I as Trustee will convey to you personally as current beneficiaries hereunder, the title to all real estate held by me as Trustee under the said Trust Agreement, and will forthwith record such deed or deeds in the applicable county recorder's office.

Sincerely,

Ramin Monfared, Trustee

**Notary Certificate Attached**

**Exhibit "B"**

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    CIVIL CODE § 1189

┌─────────────────────────────────────────────────────────────────┐
│ A notary public or other officer completing this certificate verifies only the identity of the individual who signed the │
│ document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. │
└─────────────────────────────────────────────────────────────────┘

State of California                    )
County of ___*ORANGE*___               )

On ___*Nov 29, 2022*___ before me, ___*PJ KEHOE, NOTARY PUBLIC*___,
    *Date*                    *Here Insert Name and Title of the Officer*
personally appeared ___*Ramin Monfared*___
                       *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws
of the State of California that the foregoing paragraph
is true and correct.

WITNESS my hand and official seal.

PJ KEHOE
Notary Public - California
Orange County
Commission # 2410788
My Comm. Expires Aug 12, 2026

Signature ___*PJ Kehoe*___
             *Signature of Notary Public*

    *Place Notary Seal Above*
──────────────────────────── **OPTIONAL** ────────────────────────────
*Though this section is optional, completing this information can deter alteration of the document or
fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: ___*Resignation as Trustee*___
Document Date: _____    Number of Pages: _____
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: _____    Signer's Name: _____
☐ Corporate Officer — Title(s): _____    ☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General          ☐ Partner — ☐ Limited ☐ General
☐ Individual      ☐ Attorney in Fact       ☐ Individual      ☐ Attorney in Fact
☐ Trustee         ☐ Guardian or Conservator ☐ Trustee        ☐ Guardian or Conservator
☐ Other: _____          ☐ Other: _____
Signer Is Representing: _____    Signer Is Representing: _____

©2016 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)    Item #5907

# Exhibit "B"

# EXHIBIT 9

90

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL
THIS DEED TO:

Timothy A. Balog, Esq.
The Balog Law Firm
29122 Rancho Viejo Rd., Suite N207
Sam Juan Capistrano, CA 92675

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

5.00

* $ R U U I 4 / U 4 Y O / * *
2023000310414 9:15 am 12/18/23
90 CR-SC06 G02   2
0.00 0.00 0.00 0.00 3.00 0.00 0.000075.00 0.00

APN: 931-682-31

SPACE ABOVE THIS LINE FOR RECORDER'S USE
THIS CONVEYANCE TRANSFERS AN INTEREST INTO OR OUT OF
A LIVING TRUST, R & T 11930

# GRANT DEED

DOCUMENTARY TRANSFER TAX $ _____NONE_____
[ ] computed on full value of property conveyed, or
[ ] computed on full value less value of liens and encumbrances
      remaining at the time of sale.
      Undersigned Grantor
Signature of Declarant or Agent Determining Tax          Firm Name

**FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,**
**Ramin Monfared, Trustee of the Coast Highway Ramfared Trust dated November 28th, 2022**

**hereby grants to Ramin Monfared, a single man**

the following described real property in the City of Laguna Beach, County of Orange, State of California
Commonly known as: 31423 Coast Highway #22, Laguna Beach, CA 92651
Legally described as:

**COMPLETE LEGAL DESCRIPTION ATTACHED HEREIN AND MADE A PART HEREOF AS**
**EXHIBIT A**
Dated: December _14th_, 2023

                                                          **Ramin Monfared, Trustee**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed
the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA          )
COUNTY OF ORANGE            )

      On December _14_, 2023, before me, _Nicki R. Walsh_____, Notary Public,
personally appeared RAMIN MONFARED, who proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

      I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Nicki R. Walsh_____ (Seal)

NICKI R. WALSH
Notary Public - California
Orange County
Commission # 2326689
My Comm. Expires May 14, 2024

**MAIL TAX STATEMENTS TO: Ramin Monfared, 1061 South Melrose St., Placentia, CA 92870**

## LEGAL DESCRIPTION

## EXHIBIT A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LAGUNA BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

UNIT NO. 22, CONSISTING OF CERTAIN AIRSPACE AND SURFACE ELEMENTS, AS SHOWN AND DESCRIBED IN THE CONDOMINIUM PLAN ("PLAN"), FOR LAGUNA ROYALE, WHICH PLAN WAS RECORDED OF ORANGE COUNTY, CALIFORNIA ("OFFICIAL RECORDS")

PARCEL 2:

AN UNDIVIDED ONE SEVENTY-EIGHTH (1/78TH) FEE SIMPLE INTEREST AS A TENANT IN COMMON IN AND TO ALL OF THE REAL PROPERTY, INCLUDING, WITHOUT LIMITATIONS, THE COMMON AREA DEFINED IN THE DECLARATION REFFEREC TO BELOW, IN THE REAL PROPERTY ("PROJECT") LOCATED IN THE CITY OF LAGUNA BEACH, ORANGE COUNTY, WHICH IS SPECIFICALLY DESCRIBED AS FOLLOWS:

LOTS D, E, F, G AND H OF TRACT 831 IN THE COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 25, PAGE 15 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, TOGETHER WITH THAT CERTAIN WALKWAY 10 FEET IN WIDTH ADJOINING SAID LOTS E AND F AS SHOWN ON THE MAP OF SAID TRACT 831, SAID WALKWAY HAVING BEING VACATED EXCEPT AS TO THE NORTHEASTERLY 14 FEET THEREOF, BY A RESOLUTION OF THE BOARD OF SUPERVISORS OF ORANGE COUNTY, ENTER FEBRUARY 14, 1956, A CERTIFIED COPY OF SAME BEING RECORDED MARCH 2, 1956 IN BOOK 3423, PAGE 477, OFFICIAL RECORDS.

EXCEPT ANY PORTION OF SAID LAND WHICH LIES BELOW THE LINE OF THE MEAN HIGH TIDE LINES OF THE PACIFIC OCEAN.

PARCEL 3:

NONEXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, USE, ENJOYMENT, DRAINAGE, ENCROACHMENT, SUPPORT, MAINTENANCE, REPAIRS, AND FOR OTHER PURPOSES, ALL AS MAY BE SHOWN IN THE PLAN, AND AS ARE DESCRIBED IN THE DECLARATION.

PARCEL 4:

EXCLUSIVE EASEMENTS APPURTENANT TO PARCELS NO. 1 AND NO. 2 DESCRIBED ABOVE FOR PARKING PURPOSES OVER THE AREA DESIGNATED NO. 54 ON EXHIBIT "G" TO THE DECLARATION AND DESCRIBED AS AN EXCLUSIVE USE COMMON AREA IN THE DECLARATION.

PARCEL 5:

EXCLUSIVE EASEMENTS APPURTENANT TO PARCELS NO. 1 AND NO. 2 DESCRIBED ABOVE FOR DECK PURPOSES AS SHOWN AND ASSIGNED IN THE CONDOMINIUM PLAN AND AS DESCRIBED AS AN EXCLUSIVE USE COMMON AREA IN THE DECLARATION

APN: 931-68-231

EXHIBIT 9

EXHIBIT 10

90

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL
THIS DEED TO:

Timothy A. Balog, Esq.
The Balog Law Firm
29122 Rancho Viejo Rd., Suite N207
Sam Juan Capistrano, CA 92675

**Recorded in Official Records, Orange County
Hugh Nguyen. Clerk-Recorder**

5.00

2023000310415 9:15 am 12/18/23
90 CR-SC06 G02   2
0.00 0.00 0.00 0.00 3.00 0.00 0.000075.00 0.00

APN: 931-682-31

SPACE ABOVE THIS LINE FOR RECORDER'S USE
THIS CONVEYANCE TRANSFERS AN INTEREST INTO OR OUT OF
A LIVING TRUST, R & T 11930

# GRANT DEED

DOCUMENTARY TRANSFER TAX $____NONE____
[  ] computed on full value of property conveyed, or
[  ] computed on full value less value of liens and encumbrances
    remaining at the time of sale.
    Undersigned Grantor
Signature of Declarant or Agent Determining Tax          Firm Name

Π
2p
NFF
3ß

**FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
Ramin Monfared, a single man**

**hereby grants to Ramin Monfared, as Trustee of the Ramin Monfared Trust dated December 9, 2021**

the following described real property in the City of Laguna Beach, County of Orange, State of California
Commonly known as: 31423 Coast Highway #22, Laguna Beach, CA 92651
Legally described as:

COMPLETE LEGAL DESCRIPTION ATTACHED HEREIN AND MADE A PART HEREOF AS
EXHIBIT A

Dated: December _14th_, 2023

_____
**Ramin Monfared**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed
the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA        )
COUNTY OF ORANGE          )

On December _14_, 2023, before me, _Nicki R. Walsh_____, Notary Public,
personally appeared RAMIN MONFARED, who proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Nicki R. Walsh_____ (Seal)

NICKI R. WALSH
Notary Public - California
Orange County
Commission # 2326689
My Comm. Expires May 14, 2024

**MAIL TAX STATEMENTS TO: Ramin Monfared, 1061 South Melrose St., Placentia, CA 92870**

# EXHIBIT 10

## LEGAL DESCRIPTION

## EXHIBIT A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LAGUNA BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

UNIT NO. 22, CONSISTING OF CERTAIN AIRSPACE AND SURFACE ELEMENTS, AS SHOWN AND DESCRIBED IN THE CONDOMINIUM PLAN ("PLAN"), FOR LAGUNA ROYALE, WHICH PLAN WAS RECORDED OF ORANGE COUNTY, CALIFORNIA ("OFFICIAL RECORDS")

PARCEL 2:

AN UNDIVIDED ONE SEVENTY-EIGHTH (1/78TH) FEE SIMPLE INTEREST AS A TENANT IN COMMON IN AND TO ALL OF THE REAL PROPERTY, INCLUDING, WITHOUT LIMITATIONS, THE COMMON AREA DEFINED IN THE DECLARATION REFEREC TO BELOW, IN THE REAL PROPERTY ("PROJECT") LOCATED IN THE CITY OF LAGUNA BEACH, ORANGE COUNTY, WHICH IS SPECIFICALLY DESCRIBED AS FOLLOWS:

LOTS D, E, F, G AND H OF TRACT 831 IN THE COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 25, PAGE 15 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, TOGETHER WITH THAT CERTAIN WALKWAY 10 FEET IN WIDTH ADJOINING SAID LOTS E AND F AS SHOWN ON THE MAP OF SAID TRACT 831, SAID WALKWAY HAVING BEING VACATED EXCEPT AS TO THE NORTHEASTERLY 14 FEET THEREOF, BY A RESOLUTION OF THE BOARD OF SUPERVISORS OF ORANGE COUNTY, ENTER FEBRUARY 14, 1956, A CERTIFIED COPY OF SAME BEING RECORDED MARCH 2, 1956 IN BOOK 3423, PAGE 477, OFFICIAL RECORDS.

EXCEPT ANY PORTION OF SAID LAND WHICH LIES BELOW THE LINE OF THE MEAN HIGH TIDE LINES OF THE PACIFIC OCEAN.

PARCEL 3:

NONEXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, USE, ENJOYMENT, DRAINAGE, ENCROACHMENT, SUPPORT, MAINTENANCE, REPAIRS, AND FOR OTHER PURPOSES, ALL AS MAY BE SHOWN IN THE PLAN, AND AS ARE DESCRIBED IN THE DECLARATION.

PARCEL 4:

EXCLUSIVE EASEMENTS APPURTENANT TO PARCELS NO. 1 AND NO. 2 DESCRIBED ABOVE FOR PARKING PURPOSES OVER THE AREA DESIGNATED NO. 54 ON EXHIBIT "G" TO THE DECLARATION AND DESCRIBED AS AN EXCLUSIVE USE COMMON AREA IN THE DECLARATION.

PARCEL 5:

EXCLUSIVE EASEMENTS APPURTENANT TO PARCELS NO. 1 AND NO. 2 DESCRIBED ABOVE FOR DECK PURPOSES AS SHOWN AND ASSIGNED IN THE CONDOMINIUM PLAN AND AS DESCRIBED AS AN EXCLUSIVE USE COMMON AREA IN THE DECLARATION

APN: 931-68-231

## EXHIBIT 10

EXHIBIT 11

Electronically Filed by Superior Court of California, County of Orange, 08/28/2023 10:53:29 AM.
30-2023-01345894-CU-OR-CJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By K. Climer, Deputy Clerk.

Christopher K. Jafari, Esq., Bar No. 21991
Kiarash Kay Jafari, Esq., Bar No. 299610
C&K LAW GROUP
3525 Hyland Ave., Suite 270
Costa Mesa, CA 92626
Telephone: (949) 852-4454
Facsimile: (949) 508-1759
e-mail: chrisjafari@gmail.com
 kayjafari@gmail.com
Attorneys for Plaintiffs Ramin Monfared and Negin Almassi

### SUPERIOR COURT OF CALIFORNIA

### COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

|  |  |
|---|---|
| RAMIN MONFARED, an individual; NEGIN ALMASSI, an individual<br><br>    Plaintiffs,<br><br>v.<br><br>ANDY ANDALIBIAN a/k/a ANDREW ANDALIBIAN or AMIR  ANDALIBIAN, an individual;  GREG M. TONKINSON, individually and as Successor Trustee of the Coast Highway Ramfared trust, dated November 28, 2022; ZARA REZAI a/k/a ZAHRA REZAI f/k/a ZAHRA GHARIANI, an individual; ALLIANCE CONSTRUCTION CO., a California Corporation; NEW DAWN JENKINS LLC, a Nevada Limited Liability Company; HDDS ALLIANCE CO, A California Business Entity of Unknown Form; ALL PERSONS UNKNOWN CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' TITLE OR ANY CLOUD ON PLAINTIFFS' TITLE HEREIN and DOES 1-10, inclusive.<br><br>        Defendant(s). | **Assigned for All Purposes**<br>**Case No.** Judge Martha K. Gooding<br>30-2023-01345894-CU-OR-CJC<br><br>*Unlimited Jurisdiction*<br><br>**VERIFIED COMPLAINT FOR DECLARATORY RELIEF, EQUITABLE RELIEF, AND DAMAGES**<br><br>1. BREACH OF ORAL AGREEMENT CONFIRMED IN WRITING<br>2. FRAUD (FALSE PROMISE/INDUCEMENT)<br>3. CONVERSION<br>4. VIOLATION OF PENAL CODE § 496(a);<br>5. COMMON COUNT: MONEY HAD & RECEIVED<br>6. FRAUD (INTENTIONAL MISREPRESENTATION)<br>7. CONVERSION<br>8. VIOLATION OF PENAL CODE § 496(a);<br>9. COMMON COUNT: MONEY HAD & RECEIVED<br>10. DECLARATORY RELIEF<br>11. QUIET TITLE<br>12. CANCELLATION OF INSTRUMENT<br>13. RESULTING TRUST<br>14. CONSTRUCTIVE TRUST<br>15. ACCOUNTING<br>16. DECLARATORY RELIEF<br>17. QUEIT TITLE |

**VERIFIED COMPLAINT**

**EXHIBIT 11**

## GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### THE PARTIES

1. Plaintiff Ramin Monfared (hereinafter "Monfared") is an individual residing in the State of California, County of Orange.

2. Plaintiff Negin Almassi (hereinafter "Almassi") is an individual residing in the State of California, County of Orange.

3. At all relevant times, Plaintiffs Monfared and Almassi (hereinafter jointly referred to as "Plaintiffs") are engaged to be married.

4. Plaintiffs are informed and believe and thereon allege that at all times mentioned herein, Defendant Andy Andalibian a/k/a Andrew Andalibian or Amir Andalibian (hereinafter "Andalibian") is an individual residing and doing business in the County of Orange, State of California.

5. Plaintiffs are informed and believe and thereon allege that at all times mentioned herein, Defendant, Greg M. Tonkinson (hereinafter "Tonkinson") is an individual residing and doing business in the County of Orange, State of California. Tonkinson is also the alleged Successor Trustee of the Ramfared Trust (hereinafter the "Ramfared Trust") and is being sued in both his individual capacity, and as trustee of the Trust. Upon information and belief, the Trust, which appears to be named after Plaintiff Ramin Monfared, was fraudulently-created without the consent or knowledge of Monfared, who was also listed as trustee of the Trust.

6. Plaintiffs are informed and believe and thereon allege that at all times mentioned herein, Defendant Zara Rezai a/k/a Zahra Rezai f/k/a Zahra Ghariani (hereinafter "Rezai") is an individual residing and doing business in the County of Orange, State of California. Rezai is

VERIFIED COMPLAINT

EXHIBIT 11

the ex-wife of Andalibian. However, upon information and belief, Rezai and Andalibian

entered into an uncontested divorce for the sole purpose of avoiding collections by

Andalibian's creditors including numerous judgment creditors, as the two remain very

involved in each other's business dealings and remain in contact with each other.

7.  Plaintiffs are informed and believe and thereon allege that at all times mentioned herein,

Defendant, ALLIANCE CONSTRUCTION Co. (hereinafter "Alliance") is a California

Corporation authorized to do business in the County of Orange, State of California.

8.  Plaintiffs are informed and believe and thereon allege that at all times mentioned herein,

Defendant, New Dawn Jenkins LLC, (hereinafter "Jenkins" is a Neveda Limited Liability

Company that does business in the County of Orange, State of California.

9.  Plaintiffs are informed and believe and thereon allege that at all times mentioned herein,

Defendant HDDS Alliance (hereinafter "HDDS") is a business entity of unknown form that

does business within the County of Orange, State of California. Upon information and

belief, at all relevant times alleged herein, HDDS is and has been operated by Andalibian,

Tonkinson, and Rezai.

10. Plaintiffs are informed, believe, and thereon allege that at all times herein mentioned,

Defendants "All Persons Unknown Having or Claiming Any Legal or Equitable Right,

Title, Estate, Lien, or Interest in the Property Described in the Complaint Adverse to

Plaintiff's Title, or Any Cloud Upon Plaintiff's Title Thereto Interest in the Property" were

and are those people or entities that claim some interest in the Property, whose interest will

or could be affected by this Lawsuit. Plaintiff is presently unaware of any such people or

entities other than the named Defendants. However, Plaintiff will amend this Complaint as it

**VERIFIED COMPLAINT**

**EXHIBIT 11**

may become necessary should she discover anyone who falls into this "All Persons

Unknown" category.

11. Plaintiffs are ignorant to the true names and identities of the Defendants DOES 1 through

10, inclusive, and therefore sue them by fictitious names.  Plaintiffs will seek leave of Court

to amend this Complaint to insert the correct names and capacities of said DOE Defendants

when the same have been ascertained by Plaintiffs.

12. Plaintiffs allege that DOES 1 through 5 claim some right, title, estate, lien or interest in the

Property that is adverse to their claim of title.  Each of these claims constitutes a cloud on

Plaintiffs' title to the at-issue real property from which Plaintiffs seek relief.

13. Plaintiffs allege that DOES 6 through 10, are contractually, strictly, negligently,

intentionally or vicariously liable and/or otherwise legally responsible in some

manner for each other act, omission, obligation, event or happening set forth in this

complaint, and that DOES 6 through 10 are indebted to Plaintiffs as hereinafter alleged.

14. Plaintiffs further allege on information and belief that there exists, and at all times

mentioned herein there existed, a unity of interest and ownership between Defendants

Alliance Construction Co.; New Dawn Jenkins LLC; and HDDS Alliance Co (hereinafter

"Entity Defendants") on the one hand, and Defendant Greg M. Tonkinson and DOES 6-10

on the other hand, such that any individuality and separateness between these defendants

have ceased to exist, and that Entiy Defendants are the alter-ego of Defendant Tonkinson

and DOES 6-10, who exercised complete dominion and control over the aforementioned

corporate entities and who used the corporate entities as mere shells, instrumentality or

conduits to conduct their business as individuals and as a shield against personal liability.

By way of example, but not limitation, these individuals failed to adhere to any corporate

VERIFIED COMPLAINT

EXHIBIT 11

formalities to otherwise operate these businesses, were undercapitalized, and have also

commingled the personal affairs of Tonkinson with these entities' purported business

affairs.

15. Adherence to the fiction of the separate existence of the Entity Defendants as distinct from

Tonkinson and DOES 6-10 would permit abuse of corporate privilege and would produce

an inequitable result in that it would allow these defendants to avoid personal liability for

their conduct in participating in an organized plan, scheme and design to defraud Plaintiffs,

all to the pecuniary benefit of these defendants. In light of this, as used herein, "Tonkinson

Defendants" shall jointly refer to Defendants Tonkinson and the Entity Defendants.

### THE SUBJECT PROPERTIES

16. This action concerns four residential properties, the first two of which concern the parties'

respective rights and ownership thereto, while the last two properties concern certain

financial transactions attribute to them.

17. The first property is located at 31423 Coast Highway # 22, Laguna Beach CA with its legal

description as follows:

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

UNIT NO. 22, CONSISTING OF CERTAIN AIRSPACE AND SURFACE
ELEMENTS, AS SHOWN AND DESCRIBED IN THE CONDOMINIUM
Pl.AN ("PLAN") FOR LAGUNA ROYALE, WHICH PLAN WAS RECORDED
OF ORANGE COUNTY,. CALIFORNIA ("OFFICIAL RECORDS")

PARCEL 2:

AN UNDIVIDED ONE SEVENTY-EIGHT (1/78TH) FEE SIMPLE INTEREST
AS TENANT IN COMMON IN AND TO ALL OF THE REAL PROPERTY,
INCLUDING, WITHOUT LIMITATIONS, THE COMMON AREA DEFINED

**VERIFIED COMPLAINT**

## EXHIBIT 11

IN THE DECLARATION REFEREC TO BELOW, IN THE REAL PROPERTY
("PROJECT") LOCATED IN THE CITY OF LAGUNA BEACH, ORANGE
COUNTY, WHICH IS SPECIFICALLY DESCRIBED AS FOLLOWS:
LOTS D, E, F, G AND H OF TRACT 831 IN THE COUNTY OF ORANGE,
STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 25, PAGE 15
OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY, TOGETHER WITH THAT CERTAIN
WALKWAY 10 FEET IN WIDTH ADJOINING SAID LOTS E AND F AS
SHOWN ON THE MAP OF SAID TRACT 831, SAID WALKWAY HAVING
BEING VACATED EXCEPT AS TO THE NORTHEASTERLY 14 FEET
THEREOF, BY A RESOLUTION OF THE BOARD OF SUPERVISORS OF
ORANGE COUNTY, ENTER FEBRUARY 14, 1956, A CERTIFIED COPY OF
SAME BEING RECORDED MARCH 2, 1956 IN BOOK 3423, PAGE 477,
OFFICIAL RECORDS.

EXCEPT ANY PORTION OF SAID LAND WHICH LIES BELOW THE LINE
OF THE MEAN HIGH TIDE LINES OF THE PACIFIC OCEAN.

PARCEL 3:

NONEXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, USE,
ENJOYMENT, DRAINAGE, ENCROACHMENT, SUPPORT,
MAINTENANCE, REPAIRS, AND FOR OTHER PURPOSES, ALL AS MAY
BE SHOWN IN THE PLAN, AND AS ARE DESCRIBED IN THE
DECLARATION.

PARCEL 4:

EXCLUSIVE EASEMENTS APPURTENANT TO PARCELS NO. 1 AND NO.
2 DESCRIBED ABOVE FOR PARKING PUIRPOSES OVER THE AREA
DESIGNATED NO. 54 ON EXHIBIT "G" TO THE DECLARATION AND
DESCRIBED AS AN EXCLUSIVE COMMON AREA IN THE
DECLARATION.

PARCEL 5:

EXCLUSIVE EASEMENTS APPURTENANT TO PARCELS NO. 1 AND NO.
2 DESCRIBED ABOVE FOR DECK PURPOSES AS SHOWN AND
ASSIGNED IN THE CONDOMINIUM PLAN AND AS DESCRIBED AS AN
EXCLUSIVE USE COMMON AREA IN THE DECLARATION.

VERIFIED COMPLAINT

EXHIBIT 11

APN: 931-68-231

(Hereinafter referred to as "Coast Highway Property")

18. The second property is located at 30967 Steeplechase Drive, San Juan Capistrano, CA

92675 with its legal description as follows:

PARCEL 1:

LOT l OF TRACT NO. 6305, IN THE CITY OF SAN JUAN CAPISTRANO,
COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP
RECORDED IN BOOK 457 PAGE(S) l THROUGH 15, INCLUSIVE OF
MCSCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER
OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER
HYDROCARBON SUBSTANCES, LYING BELOW A DEPTH OF 500 FEET,
WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED IN
INSTRUMENTS OF RECORD.

PARCEL 2:

EASEMENTS FOR THE BENEFIT OF PARCEL 1 ABOVE, AS SUCH
EASEMENTS ARE PARTICULARLY DESCRIBED IN THE SECTIONS
ENTITLED "CERTAIN EASEMENTS FOR OWNERS" AND "SUPPORT,
SETTLEMENT AND ENCROACHMENT" OF THE ARTICLE ENTITLED
"EASEMENTS" OF THE DECLARATION OF COVENANTS, CONDITIONS
AND RESTRICTIONS RECORDED AUGUST 22, 1980 IN BOOK 13713
PAGE 383 ET SEQ., OFFICIAL RECORDS OF ORANGE COUNTY,
CALIFORNIA.

APN: 650-311-13

(Hereinafter referred to as "Steeplechase Property")

19. The third property is located at 27773 Hidden Trail Road, Laguna Hills, CA 92653

(hereinafter "Hidden Trail Property").

VERIFIED COMPLAINT

EXHIBIT 11

20. The fourth property is located at 22862 Via Cordova, Dana Point, CA 92629-3415

(hereinafter "Via Cordova Property").

**FACTS GIVING RISE TO ALMASSI'S CLAIMS AGAINST ANDALIBIAN ET AL.**

21. In or about July of 2020, Andalibian verbally presented himself to Plaintiff Almassi as a

highly-knowledgeable and responsible real estate professional who had a wealth of

knowledge and experience in successfully assisting people with real estate transactions,

including getting approved for home loans and building their credit.

22. In truth and in fact, at the time Andalibian made these representations, he knew that they

were false in that (1) he was a serial con-artist, who has an extensive history of being

charged by others of committing civil fraud, whether insurance fraud or fraud through real

estate transactions, (2) because he had numerous claims against him for his prior illicit

financial transactions, he repeatedly filed for bankruptcy (See, e.g., most recent bankruptcy:

*In Re: Andy Andalibian*, California Central District Bankruptcy Case No. 8:11-bk-16780),

and (3) he has a history of falsely claiming an interest or tenancy in property that he had no

such right to.

23. By way of example, but not limitation:

(a) In 2011, the insurance company Blue Cross and other plaintiffs sued Andalibian and other

co-conspirators for "Violations of The Racketeer Influenced Corrupt Organizations Act,

Fraud, Unjust Enrichment, Misrepresentation," and other claims in relation to an elaborate

insurance fraud scheme that Andalibian and others engaged in (*Blue Cross and Blue Shield*

*of Alabama et al v. Andalibian et al* (California Central District Case No. SACV 05-230-

**VERIFIED COMPLAINT**

**EXHIBIT 11**

TJH(VBKx), also Bankruptcy Adversary Proceeding Case No. 8:11-ap-01350-ES with the

US Bankruptcy Court for the Central District of California);[1]

(b) In 2008, Andalibian and others were sued for fraud, unjust enrichment, and other claims. (*David M. Bass & Associates v. Andalibian et al.,* Orange County Superior Court ("OCSC") Case No. 30-2008-00116729)

(c) In 2009, Andalibian was sued for falsely presenting a bad check to a business that Andalibian knew did not have sufficient funds. This resulted in a judgment against him (*Crosscheck, Inc. v. Andalibian et al.* OCSC Case No. 30-2009-00278222)

(d) In 2010, Andalibian was sued for unlawful detainer/eviction based on claims that he was in possession of property that he had no right to possess (*HSBC Bank USA et al. v. Andalibian,* OCSC Case No. 30-2010-00345296).

(e) In 2010, Andalibian was sued by a property owner based on claims that he failed to pay a mortgage that caused a default and threat of trustee's sale (*Cong Vu et al. v. Andalibian,* OCSC Case No. 30-2010-00365891)

(f) In 2010, Andalibian was sued for fraud and negligent infliction of emotional distress based on claims that he engaged in a fraudulent real estate transaction he facilitated (*Tri Vo and Vivian Tran v. Andalibian et al.,* OCSC Case No. 30-2010-00370205)

(g) In 2011, Andalibian was sued by an automobile dealer based on claims that he failed to make installment payments on a Mercedes Benz vehicle (*DCFS Trust v. Andalibian,* OCSC Case No. 30-2011-00459774.

---

[1] The adversary proceeding case was dismissed because, according to the plaintiff, Andalibian had disappeared and was nowhere to be found at the time.

**VERIFIED COMPLAINT**

**EXHIBIT 11**

(h) In 2011, Andalibian was sued in bankruptcy court through an adversary proceeding based on claims that he had, among other things, hidden assets worth approximately $3.9 million (*Jimmy Dao and Heather Nguyen v. Andalibian et. Al.,* California Central District Bankruptcy Case no. 8:11-ap-013555-ES).

(i) In 2012, Andalibian was sued by a lender to foreclose on a $1.4 million deed of trust he failed to pay back (*Triway Enterprises, LLC v. Andalibian et al.*, OCSC Case No. 30-2012-00619310).

24. Andalibian concealed the existence of his history of fraudulent conduct in order to induce Almassi (and, as alleged more fully below, Monfared as well) to reasonably believe that he was a real estate professional who could be trusted.

25. Along with the foregoing verbal representations, Andalibian verbally informed Almassi to invest the proceeds from a home she recently sold in Canada after Andalibian learned from a real estate agent he referred to her in Canada that there were significant proceeds from this sale.

26. Specifically, Andalibian verbally informed Almassi that he had a great investment opportunity for her to invest money into with massive return in profits, but that this investment required a total of $1,000,000.00 in funding that Andalibian and Almassi can co-invest into.

27. When Almassi informed Andalibian that she did not have the full $500,000.00 for her one-half of this purported investment, Andalibian verbally told Almassi that she could invest however much she wished, and that Andalibian, as a successful and financially-savvy real estate professional, would have no issues with investing the rest of the funds needed.

**VERIFIED COMPLAINT**

EXHIBIT 11

28. Moreover, Andalibian verbally represented to Almassi that he would guarantee her initial investment and return millions of dollars in return profit to her within three years of her investment and that all of her original investment funds could be easily returned back to her within 60 days of advance notice.

29. In justifiable reliance on the foregoing verbal representation by Andalibian, Almassi was induced into relying upon them and had in fact been induced into following Andalibian's instructions to transfer the following funds to Defendants New Dwan Jenkins LLC, Defendant Alliance Construction Company, and to a TD Ameritrade account:

(a) $317,000.00 from Almassi's sale proceeds of her Canada Property;

(b) $25,000.00 from Almassi's retirement holdings in Canada, Which resulted in Almassi suffering severe tax consequences and penalties of as much as 60% for this earl cash-out; and

(c) $100,000.00 from Almassi's sale proceeds from a property she sold in Orange, CA;

30. Between June 12, 2020 and April 2, 2021 Almassi transferred a total of $441,875.60 to Andalibian and the foregoing defendants.

31. There are multiple text messages from Andalibian to Almassi confirming the foregoing transfers.

32. Below is a summary of all the transfers to the accounts and list of said Defendant business entities that Andalibian instructed Plaintiff Almassi to transfer the funds to:

|    | Date | Amount | Recipient |
|----|------|--------|-----------|
| 1. | 6/12/2020 | $19,408 | Alliance Construction |
| 2. | 7/7/2020 | $6000 | Alliance Construction |
| 3. | 7/10/2020 | $7,500 | New Dawn Jenkins LLC |

**VERIFIED COMPLAINT**

**EXHIBIT 11**

| | | | |
|---|---|---|---|
| 4. | 8/03/2020 | $22,500 | New Dawn Jenkins LLC |
| 5. | 8/04/2020 | $3,000 | TD Ameritrade |
| 6. | 8/10/2020 | $170,000 | TD Ameritrade |
| 7. | 8/12/2020 | $25,000 | Knightsbridge Foreign Exchange Inc |
| 8. | 8/19/2020 | $16,250 | Alliance Construction |
| 9. | 8/26/2020 | $7,850 | Alliance Construction |
| 10. | 9/04/2020 | $50,000 | TD Ameritrade |
| 11. | 9/14/2020 | $25,000 | TD Ameritrade |
| 12. | 10/02/2020 | $8,614 | Alliance Construction |
| 13. | 1/25/2021 | $14,269.58 | Alliance Construction |
| 14. | 4/02/2021 | $39,484 | Alliance Construction |

**Total: $441,875.60**

33. With respect to the TD Ameritrade account, Andalibian verbally told Almassi that she should open a TD Ameritrade Roth account for "your retirement" and asked her to transfer $6,000.00 into it. In order to open that account, Andalibian instructed Almassi over the phone to provide him with her personal information in order for him to open this purported account for her, while assuring Almassi that he is not writing down her personal information, nor was he keeping any of the information that he was using solely to open up this so-called "retirement" account.  When Andalibian would subsequently verbally instruct Almassi to make the foregoing transfers into what she reasonably believed to be a TD Ameritrade retirement account, he informed her that these funds would then go to the foregoing entities for this investment opportunity.

**VERIFIED COMPLAINT**

**EXHIBIT 11**

34. Almassi reasonably believed that Andalibian was instructing her to make transfers into her own account that she had sole control of at the time. In truth and in fact, Andalibian had secretly utilized Almassi's personal information to create another TD Ameritrade account under her name which Andalibian had sole control over.

35. With respect to the foregoing transfers to the entities, Andalibian verbally represented to her that these were trusted companies that Andalibian had prior successful real estate investments in, and could also provide similar successful results in relation to this investment.

36. In February of 2023, Almassi asked Andalibian that she would like to have her money back within 60 days based on Andalibian's prior representations that he could do that. In response, Andalibian falsely stated that he would pay her back latest by the beginning of August of 2023.

37. As of this date, Andalibian and the foregoing defendants have refused to and continue to refuse to return any of Almassi's money that they acquired through the foregoing fraudulent scheme.

**FACTS GIVING RISE TO MONFARED'S CLAIMS AGAINST ANDALIBIAN ET AL.**

38. In or about the beginning of 2022 in Orange County, Defendant Andalibian facilitated and assisted Monfared to refinance the Coast Highway Property that Monfared was the sole owner of as the trustee of his trust known as the Ramin Monfared Trust, dated December 9, 2021 ("Ramin Monfared Trust").

39. During this time, Andalibian verbally presented himself to Monfared as a highly-knowledgeable and responsible real estate professional who had a wealth of knowledge and experience in successfully assisting people with getting approved for home loans and

**VERIFIED COMPLAINT**

**EXHIBIT 11**

building their credit. At this time, Monfared had also known that Andalibian was, at least in appearance, successful with his fiancée Plaintiff Almassi's financial transactions.

40. In truth and in fact, at the time Andalibian made these representations, he knew that they were false in that (1) he was a serial con-artist, who has an extensive history of being charged by others of committing civil fraud, whether fraud through insurance transactions or fraud through real estate transactions, (2) because he had numerous claims against him for his prior illicit financial transactions, he filed for bankruptcy, (3) he has a history of falsely claiming an interest or tenancy in property that he had no such right to.

41. As part of obtaining the foregoing refinance for Monfared, Andalibian verbally informed Monfared needed to transfer title to the Coast Highway Property out of the Monfared Trust and to his name individually in order to complete the refinance, with assurances that Monfared will be able to simply transfer title of the Coast Highway Property back to the Monfared Trust once the refinance was complete. In justifiable reliance of these representations, Monfared subsequently complied with Andalibian's instructions and transferred title to the Coast Highway Property to "Ramin Monfared, a Single Man."

42. Attached and incorporated herein as **Exhibit 1** is a true and correct copy of the grant deed in which Monfared followed Andalibian's instructions to transfer the Coast Highway Property from "Ramin Monfared, as Trustee of the Ramin Monfared Trust, Dated December 9, 2021" to "Ramin Monfared, a Single Man" on February 16, 2022.

43. In order to further develop Monfared's trust in him, Andalibian subsequently assisted Monfared with obtaining a conventional bank loan in order purchase the Hidden Trails Property in or about March of 2002.

**VERIFIED COMPLAINT**

**EXHIBIT 11**

44. In or about April of 2018, Andalibian transferred title to the Steeplechase Property that he owned at the time to his ex-wife, Rezai. Upon information and belief, Andalibian and Rezai conspired to engage in this transaction in order to avoid Andalibian's creditors.

45. Attached and incorporated herein as **Exhibit 2** is a true and correct copy of an Interspousal Transfer Grant Deed in which Andalibian transferred the Steeplechase Property to his ex-wife "Zehra Rezai, a married woman as her sole and separate property."

46. In or about February of 2022, Andalibian verbally urged Monfared to purchase the Steeplechase Property from Rezai for $2,688,000.00, without mentioning the foregoing 2018 transfer and continued interest that Andalibian had in this property. At the time Andalibian made these representations, he knew that he had transferred his interest in the Steepelchase Property to his ex-wife for the sole purpose of avoiding his creditors, and further made these representations so that Rezai no longer needed to worry about Andalibian's creditors coming after him.

47. Monfared was completely ignorant of the 2018 transfer between Rezai and Andalibian, and reasonably believed that he was simply purchasing real property from Andalibian's ex-wife for a good price that, according to Andalibian, would be a huge benefit for Monfared's net worth.

48. In justifiable reliance of the foregoing representations, Monfared was induced into purchasing the Steeplechase Property $2,688,000.00 in which Monfared, through Andalibian's assistance, obtained a conventional bank loan for $2,150,000.00 in order to acquire this property.

49. Attached and incorporated herein as **Exhibit 3** is a true and correct copy of the Grant Deed for the Steeplechase Property in which following this purchase, Rezai transferred title to the

VERIFIED COMPLAINT

**EXHIBIT 11**

property from "Zara Rezai, an unmarried woman who acquired title as a married woman as her sole and separate property" to "Ramin Monfared, a single man."

50. In or about March of 2022, Andalibian verbally urged Monfared to purchase the Cordova Property through Andalibian's guidance so that, according to Andalibian, Monfared could expand his wealth and credit.

51. In justifiable reliance of these representations, Monfared was induced into purchasing the Cordova property for $3,070,000.00.

52. In order to acquire the Cordova Property, Andalibian assisted Monfared with obtaining a loan under Monfared's name and credit in the amount of $2,456,000.00.

53. Attached and incorporated herein as **Exhibit 4** is a true and correct copy of Grant Deed signed by the sellers on March 21, 2022 and subsequently recorded on May 10, 2022 concerning the purchase and subsequent transfer of the Cordova Property to "Ramin Monfared, a Single Man."

54. Approximately one month later, in or about June of 2022, Andalibian instructed Monfared to sell the Cordova Property to third party buyers for $3,5000,000.00.

55. During this transaction, Andalibian presented escrow documents to sign, in which Andalibian verbally represented to Monfared that Monfared would receive approximately $500,000.00 from the sale proceeds.

56. Upon Monfared's receipt of the foregoing sale's proceeds, Andalibian instructed Monfared to transfer them over to Defendants New Dawn LLC; HDDS Alliance Co, and New Jenkins LLC to hold in trust for Monfared for future investments, all while Monfared was solely incurring significant short term capital gains tax and property tax implications for the purchase and subsequent sale of the Cordova Property.

**VERIFIED COMPLAINT**

**EXHIBIT 11**

57. At the time Andalibian made these representations, he knew that they were false and intended to work in conspiracy with the foregoing defendants in order to deprive Monfared of the foregoing proceeds of not less than $500,000.00 while Andalibian and these defendants would be unjustly enriched with their receipt of the funds. Moreover, Andalibian knew that once he succeeded in inducing Monfared to transfer these funds to these entities, Monfared would never see these funds again.

58. Monfared, who trusted Andalibian based on the prior successful loan transactions, had no reason to believe that Andalibian's representations were false. Instead, Monfared justifiably relied on the foregoing representations to someone whom he trusted a responsible and trustworthy professional who was simply helping Monfared expand his wealth and credit.

59. As a direct and proximate result of Andalibian's representations, Monfared was subsequently induced into transferring the foregoing funds to the foregoing entities.

60. Between November and December of 2022, Andalibian presented to Monfared a series of documents for Monfared to sign. When Monfared inquired what these documents were for, Andalibian informed Monfared these were in relation to the Coast Highway Property refinance, in which Monfared could now sign these documents in order to transfer title of this Property from Monfared individually and back to the Monfared Trust. During this time, Andalibian had also presented to Monfared three sheets of blank 8 ½ x 11 pieces of paper for him to sign. When Monfared asked what the purpose of this was, Andalibian verbally informed him that in order to not bother Monfared with any inconvenience while he was traveling or busy with his clients and meetings during times when it would be difficult to reach him, Andalibian would hold onto these signatures until Monfared provided him with authorization to affix them to future legal documents.

**VERIFIED COMPLAINT**

**EXHIBIT 11**

61. In truth and in fact, and completely unbeknown to Monfared, Andalibian had conspired with Defendant Greg Tonkinson to have Monfared believe that he was signing documents to transfer the Coast Highway Property back to the *Monfared* Trust or otherwise have signatures for future transactions when in actually Monfared was being induced by Andalibian to sign documents that (1) created the *Ramfared* Trust as of November 28, 2022, (2) the very next day on November 29, 2022 called for Monfared to step down as the trustee of this trust and instead name Defendant Greg M. Tonkinsen as the new trustee, and (3) transfer title of the Coast Highway Property from Monfared to "Ramin Monfared, Trustee of the Coast Highway *Ramfared* Trust dated November 28th, 2022."

62. Attached and incorporated herein as **Exhibit 5** is a true and correct copy of the Trust Transfer Deed purportedly signed by Monfared on December 13, 2022 before being subsequently recorded on December 21, 2022 (hereinafter "Instrument 1").

63. When Monfared discovered the foregoing fraud that had transpired in August of 2023 when he attempted to list the Coast Highway Property for sale, Andalibian refused to provide the documents that purportedly established the creation of the *Ramfared* Trust besides limited photographs of a "Trustee Acknowledgment" dated November 29, 2022, a "Schedule A Trust Property," and the notary page for the purported Trustee Acknowledgment.

64. Attached and incorporated herein as **Exhibit 6** are true and correct copies of the foregoing documents (hereinafter "Instrument 2"). Once they acquire a copy of the complete trust documents through discovery, Plaintiffs will seek leave of Court to amend this Complaint to replace Exhibit 6 with the complete set of these documents that Monfared seeks to cancel, void, and/or rescind.

**VERIFIED COMPLAINT**

**EXHIBIT 11**

65. In relation to the foregoing transactions, Andalibian and the corporate defendants would deposit certain funds into bank accounts that Monfared controlled, which included checks that were deposited into Monfared's account from an unknown individual named James Wallace Ramsey. Following these transfers, Andalibian instructed Monfared to transfer those funds back to the corporate defendants' accounts based on Andalibian's representation that these companies would invest into future real estate transactions.

66. However, as of this date, Andalibian and these corporate defendants have withheld in excess of $200,000.00 of Monfared's funds.

67. Despite repeated requests to engage in an accounting for these funds, Andalibian and these corporate defendants have refused to and continue to refuse to account for these funds.

68. At all relevant times, Monfared has been paying $13,936.00 per month in mortgage on the Steeplechase Property since his purchase of it and has always been paying for the full mortgage on the Coast Highway Property since acquiring it. In August of 2023, Monfared discovered that defendants have been attempting to pay the mortgage for these properties in an effort to present the false guise that they somehow have an interest in them when in fact they do not.

69. However, prior to Monfared's purchase of this property, Defendant Rezai had a loan obligation of over one million dollars ($1,000,000.00) on it, for which she was struggling to make payments.

70. As a result of the purchase of this property by Monfared, the loan owed by Rezai was paid off in escrow by the new loan taken by Monfared in the amount of $2,150,400.

71. Since Defendant Rezaie did not have a place to live at, Monfared agreed to have her continue living there as a tenant.

**VERIFIED COMPLAINT**

**EXHIBIT 11**

72. Since then, Rezai has been paying rent to Monfared in the amount of $13,950.00 per month until June of 2023, when she stopped paying rent and has refused to vacate the Steeplechase Property.

73. Monfared continues paying the mortgage payments, which is creating a severe financial distress on him.

74. There is currently a pending unlawful detainer action in which Monfared is attempting to evict Rezai from this Property for her failure to pay rent.

75. Monfared is attempting to sell the Steeplechase Property. However, Rezai has now asserted a false claim of owning this Property.

76. Similarly, Monfared has been making the monthly mortgage payments on the Coast Highway Property and has not missed a single payment.

77. Despite this, as a result of the sham instruments that Andalibian had Monfared purportedly sign, Andalibian and Defendant Tonkinson claim that they own the property, whether directly or through the sham "Ramfared" trust.

78. On August 8, 2023, upon learning that Monfared discovered the foregoing scheme, Defendants Andalibian and Tonkinson had Tonkinson sign an "Affidavit of Change of Trustee and recorded it with the Orange County Recorder's office for the sole purpose of frustrating Monfared's ownership and title to the Coast Highway property.

79. Attached and incorporated herein as **Exhibit 7** is a true and correct copy of the August 8, 2023 Affidavit of Change of Trustee that was recorded in relation to the Coast Highway Property (hereinafter "Instrument 3")

80. Since then, Defendant Andalibian  has been falsely representing to the Coast Highway's homeowners association along with law enforcement that he resides in this property as a

**VERIFIED COMPLAINT**

**EXHIBIT 11**

tenant before procuring a false and fraudulent lease agreement, claiming that he only needs to pay $1,800.00 per month in lease payments on the Coast Higwhay Home that is worth well in excess of $4,000,000.00.

81. Monfared was never aware of the existence of this sham lease agreement, nor has he ever seen a copy of it.

## FIRST CAUSE OF ACTION
## BREACH OF ORAL AGREEMENT CONFIRMED IN WRITING
### By Plaintiff Almassi Against Defendant Andalibian

82. Plaintiffs incorporate by reference the allegations of paragraphs 1-81 by reference as if set forth in full.

83. In or about June of 2020, Almassi entered into an oral agreement in which, in exchange for Almassi's payment of $441,875.60 to various entities and accounts that Andalibian instructed her to send funds over to, Almassi would be guaranteed the return of said funds plus significant profits.

84. The foregoing agreement was also confirmed in writing through several text messages exchanged between Almassi and Andalibian.

85. Almassi performed on all of her obligations that were called upon her in the foregoing agreement by transferring the foregoing funds to these accounts.

86. Andalibian breached the terms of the foregoing agreement by refusing to and continuing to refuse to return the foregoing funds, let alone even provide the promised guaranteed return on investment.

87. As a result of said breach, Almassi has been damaged in the sum according to proof at trial, but not less than $441,875.60, plus interest at the legal rate of ten percent per annum.

VERIFIED COMPLAINT

EXHIBIT 11

## SECOND CAUSE OF ACTION

## FRAUD (FALSE PROMISE/INDUCEMENT)

### By Plaintiff Almassi Against Defendant Andalibian,

### The Tonkinson Defendants, and DOES 6-10

88. Plaintiffs incorporate by reference the allegations of paragraphs 1-87 by reference as if set forth in full.

89. In or about June of 2020, Defendants Andalibian, the Tonkinson Defendants, and DOES 6-10 hatched a conspiracy to defraud Almassi out of $441,875.60 of her hard-earned savings and proceeds from the sale of her real properties.

90. In relation to the foregoing conspiracy, these defendants had Andalibian verbally represent to Almassi that because Andalibian was a highly-knowledgeable and responsible real estate professional who had a wealth of knowledge and experience, if Almassi paid him sums of money that would total to $441,875.60 through multiple deposits that were paid to the Entity Defendants along with a TD Ameritrade account, she would be guaranteed to receive a significant return on her investment.

91. At the time these defendants had Andalibian make the foregoing representations, they knew that they were false and that they knew that (1) Andalibian is a con-artist who has a long history of defrauding others, (2) there was in actuality no investment opportunity, and (3) these Defendants had Andalibian make these representations so that they would all unjustly enrich themselves with $441,875.60 all to Almassi's detriment.

92. Almassi had no reason to believe that the foregoing representations were false, especially since she had no issues with the real estate agent that Andalibian referred her to in connection with the Canadian property transaction.

VERIFIED COMPLAINT

EXHIBIT 11

93. Almassi justifiably relied on the foregoing representations before being subsequently induced into following Andalibians' instructions that were made in conspiracy with the Tonkinson Defendants and DOES 6-10 and paying the foregoing funds between June 12, 2020 to April 2, 2021.

94. Had Almassi knew of the truth of the foregoing representations, she absolutely would never have given up her life's savings and proceeds from her real property sale.

95. As a direct and proximate result of the aforementioned false promise and inducement by Defendant Andalibian through the conspiracy of the foregoing defendants, Almassi has been damaged in an amount according to proof, but not less than $441,875.60 plus interest at the rate of ten percent per annum

96. The aforementioned conduct of these defendants was intentional fraud and deceit with the intention to deprive Almassi of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Almassi to cruel and unjust hardship in conscious disregard of Almassi's rights so as to justify and award of exemplary and punitive damages.

### THIRD CAUSE OF ACTION
### CONVERSION
**By Plaintiff Almassi Against Defendant Andalibian,**
**The Tonkinson Defendants, and DOES 6-10**

97. Plaintiffs incorporate by reference the allegations of paragraphs 1-96 by reference as if set forth in full.

98. Between June 12, 2020 to April 2, 2021, Defendant Andalibian, the Tonkinson Defendants, and DOES 6-10 have converted for their own personal gain and benefit the sum of $441,875.60 of money that belongs to Plaintiff Almassi ("Almassi Converted Property").

**VERIFIED COMPLAINT**

## EXHIBIT 11

99. These defendants took the Almassi Converted Property without Almassi's consent or authority for the sole purpose of unjustly enriching themselves.

100. The amount of profits or other gains that these defendants obtained through the use of the Almassi Converted Property is unknown at this time and will be ascertainable once an accounting is completed.

101. Upon information and belief, each of the foregoing defendants knowingly assisted, aided, and/or abetted each other with the conversion of the Almassi Converted Property from Almassi for purposes of mutually gaining from it.

102. In doing the acts alleged herein, these defendants acted with oppression, fraud, and malice, and said conduct is despicable, causing Almassi to be entitled to an award of punitive damages according to proof.

103. As a result of the wrongful conduct alleged herein, these defendants are actually holding the Almassi Converted Property in constructive trust for Almassi. This constructive trust also extends to proceeds generated by these defendants from the use of said Converted Property.

104. Pursuant to the facts and circumstances alleged herein, the Converted property wrongfully obtained by these defendants should also be deemed held in constructive trust for the benefit of Almassi.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF PENAL CODE § 496(a)**

**RECEIPT OF STOLEN PROPERTY**

**By Plaintiff Almassi Against Defendant Andalibian,**

**The Tonkinson Defendants, and DOES 6-10**

105. Plaintiffs incorporate by reference the allegations of paragraphs 1-104 by reference as if set forth in full.

**VERIFIED COMPLAINT**

**EXHIBIT 11**

106. Where one, through mistake or fraud receives money to which he or she is not entitled, he or she becomes the trustee of that money for the benefit of one justly entitled to it (Cal Civil Code § 2224). In the course of, and by virtue of the foregoing acts, Defendants Andalibian, the Tonkinson Defendants, and DOES 6-10 fraudulently acquired, converted and used Almassi's $441,875.60 for their own use and exclusive benefit with the intent to deprive Almassi of her use of these funds.

107. One who fraudulently appropriates money which has been entrusted to him is guilty of theft under Penal Code § 484.

108. As alleged herein, these defendants' actions constitute violations of Penal Code § 496 in that these defendants have knowingly received the Almassi Converted Property which they know to be stolen, and have instead kept and utilized the Almassi Converted Property for their own personal gain and benefit, and have instead withheld and concealed the whereabouts of said Almassi Converted Property. By definition, this conduct constitutes theft and receipt of stolen property under the Penal Code.

109. A criminal conviction is not a prerequisite; and all that is required for civil liability to attach under section 496(c) is that a violation of subdivision (a) or (b) of section 496 is found to have occurred, and such a violation is found where a person engaged in the conduct described in 496(a) or (b).

110. In doing the acts alleged herein, these defendants acted with oppression, fraud, and malice, and said conduct is despicable, causing Almassi to be entitled to an award of punitive damages according to proof.

111. Pursuant to Penal Code § 496(c), Almassi is also entitled to recover from these defendants three times the amount of actual damages sustained by her, plus reasonable attorney's fees.

VERIFIED COMPLAINT

EXHIBIT 11

**FIFTH CAUSE OF ACTION**

**COMMON COUNT: MONEY HAD & RECEIVED**

**By Plaintiff Almassi Against Defendant Andalibian,**

**The Tonkinson Defendants, and DOES 6-10**

112. Plaintiffs incorporate by reference the allegations of paragraphs 1-111 by reference as if set forth in full.

113. Defendants Andalibian, the Tonkinson Defendants, and DOES 6-10 have become indebted to Almassi through the withholding of the aforementioned Almassi Converted Property.

114. No part of that amount has been repaid, although payment has been demanded, leaving a balance due, owing and unpaid to Almassi in the amount according to proof at trial and subject to an accounting, but not less than $441,875.60.

115. Thus, an amount is due and unpaid despite Almassi's demand, plus prejudgment interest at the legal rate of 10% per annum.

**SIXTH CAUSE OF ACTION**

**FRAUD (INTENTIONAL MISREPRESENTATION)**

**By Plaintiff Monfared Against Defendant Andalibian,**

**The Tonkinson Defendants, and DOES 6-10**

116. Plaintiffs incorporate by reference the allegations of paragraphs 1-115 by reference as if set forth in full.

117. In or about the winter of 2022, Defendants Andalibian, the Tonkinson Defendants, and DOES 6-10 hatched a conspiracy to defraud Monfared out his interest in the Coast Highway Property.

118. In relation to the foregoing conspiracy, these defendants had Andalibian present to Monfared a series of documents for Monfared to sign. When Monfared inquired what these documents were for, Andalibian verbally represented to Monfared these were in relation to

**VERIFIED COMPLAINT**

**EXHIBIT 11**

the Coast Highway Property refinance, in which Monfared could now sign these documents in order to transfer title of this Property from Monfared individually and back to the Monfared Trust.

119. In truth and in fact, and completely unbeknown to Monfared, Andalibian had conspired with the Tonkinson Defendants and DOES 6-10 to have Monfared believe that he was signing documents to transfer the Coast Highway Property back to the *Monfared* Trust when in actually Monfared was being induced by Andalibian to sign documents that (1) created a brand new trust, the *Ramfared* Trust as of November 28, 2022, (2) the very next day on November 29, 2022 called for Monfared to step down as the trustee of this trust and instead name Defendant Greg M. Tonkinsen as the new trustee of this sham trust, and (3) transfer title of the Coast Highway Property from Monfared to "Ramin Monfared, Trustee of the Coast Highway *Ramfared* Trust dated November 28th, 2022." (**Exs. 5 and 6**)

120. At the time these defendants conspired to have Andalibian make the foregoing representations, they knew about the foregoing scheme and made Monfared believe that the contrary was true in order to deprive Monfared of his title to the Coast Highway Property.

121. Monfared had no idea at the time what he was signing because he justifiably relied and trusted on Andalibian's words, and had no reason to believe that they were false.

122. In justifiable reliance of these representations, Monfared was in fact induced into signing Instrument 1 and Instrument 2 (**Exs. 5 and 6**), thereby depriving him of his right to title of the Coast Highway Property.

123. Had Monfared knew of the truth of the foregoing representations, he absolutely would never have transferred his title to the Property to this sham trust that is now being held by

**VERIFIED COMPLAINT**

**EXHIBIT 11**

Defendant Tonkinson and for the benefit of the foregoing defendants through their conspiracy.

124. As a direct and proximate result of the aforementioned fraud through false misrepresentations by Defendant Andalibian through the conspiracy of the foregoing defendants, Monfared has been damaged in an amount according to proof, but not less than $4,000,000.00 plus interest at the rate of ten percent per annum

125. The aforementioned conduct of these defendants was intentional fraud and deceit with the intention to deprive Monfared of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Monfared to cruel and unjust hardship in conscious disregard of Monfared's rights so as to justify and award of exemplary and punitive damages.

## SEVENTH CAUSE OF ACTION
## CONVERSION
### By Plaintiff Monfared Against Defendant Andalibian,
### The Tonkinson Defendants, and DOES 6-10

126. Plaintiffs incorporate by reference the allegations of paragraphs 1-125 by reference as if set forth in full.

127. In or about the year 2022, Defendant Andalibian, the Tonkinson Defendants, and DOES 6-10 have converted for their own personal gain and benefit the sum of not less than $200,000.00 of money that belongs to Plaintiff Monfared ("Monfared Converted Property").

128. These defendants took the Monfared Converted Property without Monfared's consent or authority for the sole purpose of unjustly enriching themselves.

**VERIFIED COMPLAINT**

**EXHIBIT 11**

129. The amount of profits or other gains that these defendants obtained through the use of the Monfared Converted Property is unknown at this time and will be ascertainable once an accounting is completed.

130. Upon information and belief, each of the foregoing defendants knowingly assisted, aided, and/or abetted each other with the conversion of the Monfared Converted Property from Almassi for purposes of mutually gaining from it.

131. In doing the acts alleged herein, these defendants acted with oppression, fraud, and malice, and said conduct is despicable, causing Monfared to be entitled to an award of punitive damages according to proof.

132. As a result of the wrongful conduct alleged herein, these defendants are actually holding the Monfared Converted Property in constructive trust for Monfared. This constructive trust also extends to proceeds generated by these defendants from the use of said Converted Property.

133. Pursuant to the facts and circumstances alleged herein, the Converted property wrongfully obtained by these defendants should also be deemed held in constructive trust for the benefit of Monfared.

**EIGHTH CAUSE OF ACTION**

**VIOLATION OF PENAL CODE § 496(a)**

**RECEIPT OF STOLEN PROPERTY**

**By Plaintiff Monfared Against Defendant Andalibian,**

**The Tonkinson Defendants, and DOES 6-10**

134. Plaintiffs incorporate by reference the allegations of paragraphs 1-133 by reference as if set forth in full.

135. Where one, through mistake or fraud receives money to which he or she is not entitled, he or she becomes the trustee of that money for the benefit of one justly entitled to it (Cal Civil

**EXHIBIT 11**

Code § 2224). In the course of, and by virtue of the foregoing acts, Defendants Andalibian, the Tonkinson Defendants, and DOES 6-10 fraudulently acquired, converted and used Monfared's $200,000.00 or more of funds for their own use and exclusive benefit with the intent to deprive Monfared of his use of these funds.

136. One who fraudulently appropriates money which has been entrusted to him is guilty of theft under Penal Code § 484.

137. As alleged herein, these defendants' actions constitute violations of Penal Code § 496 in that these defendants have knowingly received the Monfared Converted Property which they know to be stolen, and have instead kept and utilized the Monfared Converted Property for their own personal gain and benefit, and have instead withheld and concealed the whereabouts of said Monfared Converted Property. By definition, this conduct constitutes theft and receipt of stolen property under the Penal Code.

138. A criminal conviction is not a prerequisite; and all that is required for civil liability to attach under section 496(c) is that a violation of subdivision (a) or (b) of section 496 is found to have occurred, and such a violation is found where a person engaged in the conduct described in 496(a) or (b).

139. In doing the acts alleged herein, these defendants acted with oppression, fraud, and malice, and said conduct is despicable, causing Monfared to be entitled to an award of punitive damages according to proof.

140. Pursuant to Penal Code § 496(c), Monfared is also entitled to recover from these defendants three times the amount of actual damages sustained by her, plus reasonable attorney's fees.

**VERIFIED COMPLAINT**

**EXHIBIT 11**

## NINTH CAUSE OF ACTION

## COMMON COUNT: MONEY HAD & RECEIVED

### By Plaintiff Monfared Against Defendant Andalibian,

### The Tonkinson Defendants, and DOES 6-10

141. Plaintiffs incorporate by reference the allegations of paragraphs 1-141 by reference as if set forth in full.

142. Defendants Andalibian, the Tonkinson Defendants, and DOES 6-10 have become indebted to Monfared through the withholding of the aforementioned Monfared Converted Property.

143. No part of that amount has been repaid, although payment has been demanded, leaving a balance due, owing and unpaid to Monfared in the amount according to proof at trial and subject to an accounting, but not less than $200,000.00.

144. Thus, an amount is due and unpaid despite Monfared's demand, plus prejudgment interest at the legal rate of 10% per annum.

## TENTH CAUSE OF ACTION

## DECLARATORY RELIEF

### By Plaintiff Monfared Against Defendant Andalibian,

### Tonkinson, and DOES 1-10

145. Plaintiffs incorporate by reference the allegations of paragraphs 1-145 by reference as if set forth in full.

146. A dispute has arisen and an actual controversy exists between Monfared and Defendants Andalibian and Tonkinson concerning the rights and obligations of the parties to the Coast Highway Property.

147. Monfared informed and believes, and on that basis alleges, that these defendants contend that Tonkinson as the trustee of the sham *Ramfared* Trust is the valid owner of the Coast Highway Property, while Monfared contends that he is the valid owner of the Coast

**VERIFIED COMPLAINT**

## EXHIBIT 11

Highway Property since the foregoing defendants obtained Monfared's signature on

Instrument 1 and Instrument 2 through fraud and undue influence. It should also be noted

that Monfared had always paid for the mortgage on this property since his acquisition of it.

148. As such, Monfared desires a judicial determination of the parties' respective rights and

duties to the Coast Highway Property. It is necessary that Monfared obtain a declaration of

his rights, as he has no adequate or speedy remedy at law.

**ELEVENTH CAUSE OF ACTION**

**QUIET TITLE**

**By Plaintiff Monfared Against Defendant Andalibian,**

**Tonkinson, and DOES 1-10**

149. Plaintiffs incorporate by reference the allegations of paragraphs 1-148 by reference as if set

forth in full.

150. Monfared informed and believes and thereon alleges that Andalibian and Tonkinson

contend that Instrument 1 and 2 are legitimate, and therefore Defendant Tonkinson as the

trustee of the sham *Ramfarid* Trust is the sole title holder of the Coast Highway Property.

These defendants' claims are adverse to Monfared's rights alleged herein. Monfared hereby

asserts that any claims of these defendants are without rights whatsoever, and that said

defendants do not possess the legal, equitable, or legitimate rights, claims, or interest to the

Coast Highway Property as purported in Instrument 1, Instrument 2, and Instrument 3.

151. Defendants' claim is without right as such title to the Coast Highway Property was

obtained through fraud, undue influence, and without consideration.

152. As noted in previous allegations, Monfared hereby seeks a declaration that the title to the

Coast Highway Property is vested in "Ramin Monfared, a single man" and that said

Page 32 of 39

**VERIFIED COMPLAINT**

# EXHIBIT 11

defendants, and each of them, be forever enjoined from asserting the sole estate, right, title, or interest in the Coast Highway Property which is adverse to Monfared.

## TWELFTH CAUSE OF ACTION
## CANCELLATION OF INSTRUMENT
### By Plaintiff Monfared Against Defendant Andalibian,
### Tonkinson, and DOES 1-10

153. Plaintiffs incorporate by reference the allegations of paragraphs 1-152 by reference as if set forth in full.

154. Monfared is informed and believes that Defendants Andalibian and Tonkinson acquired Monfared's signature for the illegal and fraudulent purpose of transferring title to the Coast Highway Property solely to Tonkinson's name without Monfared's knowledge or consent.

155. Based on the foregoing, Monfared is informed and believes and thereon alleges that Instrument 1, Instrument 2, and Instrument 3 are invalid, void, or are otherwise voidable instruments that will cause Monfared serious financial injury and loss of rights to unique real property.

156. Therefore, Monfared seeks an order cancelling Instrument 1, Instrument 2, and Instrument 3 through a judicial determination declaring such instruments as invalid and void or otherwise voidable.

## THIRTEENTH CAUSE OF ACTION
## RESULTING TRUST
### By Plaintiff Monfared Against Tonkinson, and DOES 1-10

157. Plaintiffs incorporate by reference the allegations of paragraphs 1-156 by reference as if set forth in full.

158. Tonkinson holds title to one hundred percent in the Coast Highway Property as a resulting trustee for Monfared's benefit.

**VERIFIED COMPLAINT**

## EXHIBIT 11

**FOURTEENTH CAUSE OF ACTION**

**CONSTRUCTIVE TRUST**

**By Plaintiff Monfared Against Tonkinson, and DOES 1-10**

159. Plaintiffs incorporate by reference the allegations of paragraphs 1-158 by reference as if set forth in full.

160. Defendant Tonkinson holds title to one hundred percent interest of the Coast Highway Property as a constructive trustee for Monfared's benefit.

**FIFTEENTH CAUSE OF ACTION**

**ACCOUNTING**

**By Plaintiffs Almassi and Monfared Against**

**Defendant Andalibian, Tonkinson, and DOES 6-10**

161. Plaintiffs incorporate by reference the allegations of paragraphs 1-160 by reference as if set forth in full.

162. Upon information and belief, the full and precise extent of the Almassi Converted Property and Monfared Converted Property taken by Defendants Andalibian, Tonkinson, and Does 6-10 in addition to the profits these defendants generated from the foregoing converted property are unknown and cannot be ascertained without an accounting of the receipts and disbursements of all transactions of the foregoing defendants.

163. The foregoing defendants have failed and refused, and continue to fail and refuse, to render such an accounting.

164. The foregoing actions entitle Plaintiffs to an accounting and imposition of a constructive trust against the foregoing defendants as constructive trustees to determine the transactions of misappropriating the foregoing converted property in addition to all profits derived therefrom.

**VERIFIED COMPLAINT**

**EXHIBIT 11**

## SIXTEENTH CAUSE OF ACTION

### DECLARATORY RELIEF

**By Plaintiff Monfared Against Defendant Andalibian, Rezai, and DOES 1-10**

165. Plaintiffs incorporate by reference the allegations of paragraphs 1-164 by reference as if set forth in full.

166. A dispute has arisen and an actual controversy exists between Monfared and Defendants Andalibian and Rezai concerning the rights and obligations of the parties to the Steeplechase Property.

167. Monfared informed and believes, and on that basis alleges, that these defendants contend that Rezai is the valid owner of the Steeplechase Property, while Monfared contends that he is the valid owner of the Steeplechase Property.

168. As such, Monfared desires a judicial determination of the parties' respective rights and duties to the Steeplechase Property. It is necessary that Monfared obtain a declaration of his rights, as he has no adequate or speedy remedy at law.

## SEVENTEENTH CAUSE OF ACTION

### QUIET TITLE

**By Plaintiff Monfared Against Defendant Andalibian,**
**Rezai, and DOES 1-10**

169. Plaintiffs incorporate by reference the allegations of paragraphs 1-168 by reference as if set forth in full.

170. Monfared informed and believes and thereon alleges that Andalibian and Rezai contend Rezai is the sole title holder of the Steeplechase Property. These defendants' claims are adverse to Monfared's rights alleged herein. Monfared hereby asserts that any claims of these defendants are without rights whatsoever, and that said defendants do not possess the legal, equitable, or legitimate rights, claims, or interest to the Steeplechase Property.

**VERIFIED COMPLAINT**

**EXHIBIT 11**

171. Defendants' claim are without right as such title to the Steeplechase Property are premised upon fraud, undue influence, and without consideration.

172. As noted in previous allegations, Monfared hereby seeks a declaration that the title to the Steeplechase Property is vested in "Ramin Monfared, a single man" and that said defendants, and each of them, be forever enjoined from asserting the sole estate, right, title, or interest in the Steeplechase Property which is adverse to Monfared.

WHEREFORE, Plaintiffs prays for judgment against defendants, and each of them, as follows:

1.  For judgment that Instrument 1, Instrument 2, and Instrument 3 are null, void, invalid, and otherwise unenforceable;

2.  For judgment that Instrument 1 and Instrument 2 are cancelled;

3.  For judgment that Monfared is the sole title holder of the Coast Highway Property;

4.  For judgment that Monfared is the sole title holder of the Steeplechase Property;

5.  For judgment of Quiet Title with respect to the Coast Highway Property;

6.  For judgment of Quiet Title with respect to the Steeplechase Property;

7.  For actual, general, special, and/or incidental damages according to proof but not less than the amounts set forth infra;

8.  For exemplary and punitive damages according to proof;

9.  For treble damages of three times the actual damages incurred pursuant to Penal Code § 496(c);

10. For attorney's fees pursuant to Penal Code § 496(c);

11. For cost of suit;

12. For interest including liquidated prejudgment interest at the legal rate of interest;

13. For an accounting;

**VERIFIED COMPLAINT**

**EXHIBIT 11**

14. For the imposition of a constructive trust;

15. For imposition of a resulting trust; and

16. For such other and further relief as the Court deems just and proper and according to equity.


Dated:  August 27, 2023                              C&K Law Group, APC

_____
Christopher K. Jafari, Esq.
Kiarash Kay Jafari, Esq.
Attorney for Plaintiffs Negin Almassi and
Ramin Monfared

Page 37 of 39

**VERIFIED COMPLAINT**

## EXHIBIT 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VERIFICATION

I, Negin Almassi, am a Plaintiff in the above-entitled action.  I have read the foregoing Verified Complaint and know the contents thereof.  The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and as to those matters, I believe them to be true. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: 03/27/2023

_____
Negin Almassi

**VERIFIED COMPLAINT**

# EXHIBIT 11

1

2

3

**VERIFICATION**

I, Ramin Monfared, am a Plaintiff in the above-entitled action. I have read the foregoing

Verified Complaint and know the contents thereof. The same is true of my own knowledge,

except as to those matters which are therein stated on information and belief, and as to those

matters, I believe them to be true. I declare under penalty of perjury under the laws of the State of

California that the foregoing is true and correct.

Dated: __8/27/23__

_____
Ramin Monfared

VERIFIED COMPLAINT

**EXHIBIT 11**

# EXHIBIT 1

EXHIBIT 11

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

6.00

RECORDING REQUESTED BY:
Pacific Coast Title

* $ R U U 1 5 5 4 4 5 4 5 $ *
**2022000067135 3:20 pm 02/17/22**

AND WHEN RECORDED MAIL TO:

227 RW9A G02   4

Mr. Ramin Monfared
31423 Coast Highway,#22
Laguna Beach, CA  92651

0.00 0.00 0.00 0.00 9.00 0.00 0.000.00 0.00 0.00

THIS SPACE FOR RECORDER'S USE ONLY:

| Title Order No.: 10254267 | Escrow No.: 03-032867-CL |
|---|---|

## GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S)

**DOCUMENTARY TRANSFER TAX is** $0.00
"This conveyance transfers the Grantor's interest out of his revocable living Trust, R&T 11911."
[X] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale.
[ ] Unincorporated area   [X] City of Laguna Beach **AND**

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Ramin Monfared, as Trustee of The Ramin Monfared Trust, Dated December 9, 2021**

hereby GRANT(s) to:·

**Ramin Monfared, a Single Man**

the real property in the City of Laguna Beach, County of Orange, State of California,
described as:
LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND MADE A PART
HEREOF

Also Known as:  31423 Coast Highway,#22, Laguna Beach, CA  92651
APN#: 931-68-231

Transfer of real property that is a
residential dwelling to an
owner-occupier - 27388.1(a)(2)

**DATED: February 15, 2022**

**Signature Page attached hereto
and made a part hereof**

MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE:

**EXHIBIT 11**

Title Order No.: 10254267
Escrow No.: 03-032867-CL

APN# 931-68-231

## Signature Page

Ramin Monfared, as Trustee of The Ramin Monfared
Trust, Dated December 9, 2021

_____
Ramin Monfared, as Trustee

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA

COUNTY OF _____ORANGE_____

On _February 16, 2022_ before me, _Bernadette Lazzara_ A Notary Public personally appeared _Ramin Monfared_____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature_____ (Seal)

MAIL TAX STATEMENTS TO PARTY SHOWN BELOW, IF NO PARTY SHOWN, MAIL AS SHOWN

BERNADETTE LAZZARA
Notary Public - California
Orange County
Commission # 2367092
My Comm. Expires Aug 17, 2025

**EXHIBIT 11**

## GOVERNMENT CODE 27361.7

I certify under penalty of perjury and the laws of the State of California that the illegible portion of this document to which this statement is attached reads as follows:

RAMIN    MONFARED

TRUST    DATED

PLACE OF
EXECUTION:_____Glendale_____    DATE: 2-17-2022

_____
(Signature)

**EXHIBIT 11**

# LEGAL DESCRIPTION

## EXHIBIT A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LAGUNA BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

UNIT NO. 22, CONSISTING OF CERTAIN AIRSPACE AND SURFACE ELEMENTS, AS SHOWN AND DESCRIBED IN THE CONDOMINIUM PLAN ("PLAN"), FOR LAGUNA ROYALE, WHICH PLAN WAS RECORDED OF ORANGE COUNTY, CALIFORNIA ("OFFICIAL RECORDS")

PARCEL 2:

AN UNDIVIDED ONE SEVENTY-EIGHTH (1/78TH) FEE SIMPLE INTEREST AS A TENANT IN COMMON IN AND TO ALL OF THE REAL PROPERTY, INCLUDING, WITHOUT LIMITATIONS, THE COMMON AREA DEFINED IN THE DECLARATION REFFEREC TO BELOW, IN THE REAL PROPERTY ("PROJECT") LOCATED IN THE CITY OF LAGUNA BEACH, ORANGE COUNTY, WHICH IS SPECIFICALLY DESCRIBED AS FOLLOWS:

LOTS D, E, F, G AND H OF TRACT 831 IN THE COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 25, PAGE 15 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, TOGETHER WITH THAT CERTAIN WALKWAY 10 FEET IN WIDTH ADJOINING SAID LOTS E AND F AS SHOWN ON THE MAP OF SAID TRACT 831, SAID WALKWAY HAVING BEING VACATED EXCEPT AS TO THE NORTHEASTERLY 14 FEET THEREOF, BY A RESOLUTION OF THE BOARD OF SUPERVISORS OF ORANGE COUNTY, ENTER FEBRUARY 14, 1956, A CERTIFIED COPY OF SAME BEING RECORDED MARCH 2, 1956 IN BOOK 3423, PAGE 477, OFFICIAL RECORDS.

EXCEPT ANY PORTION OF SAID LAND WHICH LIES BELOW THE LINE OF THE MEAN HIGH TIDE LINES OF THE PACIFIC OCEAN.

PARCEL 3:

NONEXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, USE, ENJOYMENT, DRAINAGE, ENCROACHMENT, SUPPORT, MAINTENANCE, REPAIRS, AND FOR OTHER PURPOSES, ALL AS MAY BE SHOWN IN THE PLAN, AND AS ARE DESCRIBED IN THE DECLARATION.

PARCEL 4:

EXCLUSIVE EASEMENTS APPURTENANT TO PARCELS NO. 1 AND NO. 2 DESCRIBED ABOVE FOR PARKING PURPOSES OVER THE AREA DESIGNATED NO. 54 ON EXHIBIT "G" TO THE DECLARATION AND DESCRIBED AS AN EXCLUSIVE USE COMMON AREA IN THE DECLARATION.

PARCEL 5:

EXCLUSIVE EASEMENTS APPURTENANT TO PARCELS NO. 1 AND NO. 2 DESCRIBED ABOVE FOR DECK PURPOSES AS SHOWN AND ASSIGNED IN THE CONDOMINIUM PLAN AND AS DESCRIBED AS AN EXCLUSIVE USE COMMON AREA IN THE DECLARATION

APN: 931-68-231

---

EXHIBIT 11

# EXHIBIT 2

EXHIBIT 11

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

12.00

RECORDING REQUESTED BY:
Orange Coast Title

AND WHEN RECORDED MAIL TO:

Zehra Rezai
14 Monarch Bay Plaza #137
Dana Point CA 92629

2018000118108 2:35 pm 04/03/18

47 NC-5 G02 F13   2

0.00 0.00 0.00 0.00 3.00 0.00 0.000.00 0.00

THIS SPACE FOR RECORDER'S USE ONLY:

Title Order No.: 1932861-11          Escrow No.: 016740-SV

## INTERSPOUSAL TRANSFER GRANT DEED
(Excluded from reappraisal under California Constitution Article 13 A Section 1 et seq.)

**DOCUMENTARY TRANSFER TAX is $0.00**

Exempt from the fee per GC 27388.1 (a) (2):
recording concurrently "in connection with"
a transfer subject to the imposition of
documentary transfer tax (DDT)

[X]   computed on full value of property conveyed, or
[ ]   computed on full value less value of liens or encumbrances remaining at time of sale.
[X]   is exempt from imposition of the Documentary Transfer Tax pursuant to Revenue and Taxation Code
      Section 11927(a), on transferring community, quasi- community, or quasi-marital property, assets between
      spouses pursuant to a judgment, and order, or a written agreement between spouses in contemplation of
      any such judgment or order.
[X]   A creation, transfer, or termination, solely between spouses, of any co-owner's interest.
"This conveyance establishes sole and separate property of a spouse, R & T 11911."
FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
**Andy Andalibian**

hereby GRANT(s) to:
**Zehra Rezai** *, a married woman as her sole and separate property*

the real property in the  County of Orange, State of California, described as:
LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND MADE A PART HEREOF
Also Known as:  30967 Steeplechase Drive, San Juan Capistrano, CA  92675
A.P. # 650-311-13
Dated March 7, 2018

Andy Andalibian

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _____ Orange _____
On _____ before me, _____ Sonia Viera _____          A   Notary   Public
personally appeared _____ Andy Andalibian _____ who proved to me on
the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.
WITNESS my hand and official seal.

Signature _____          (Seal)

SONIA VIERA
Commission # 2085384
Notary Public - California
Orange County
My Comm. Expires Nov 6, 2019

MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS SHOWN ABOVE:

**EXHIBIT 11**

Order No. 350-1932861-11

## Exhibit "A"

Parcel 1:

Lot 1 of Tract No. 6305, in the City of San Juan Capistrano, County of Orange, State of California, as per Map recorded in Book 457 Page(s) 1 to 15, Miscellaneous Maps , in the Office of the County Recorder of said County.

Except therefrom all oil, gas, minerals and other hydrocarbon substances, lying below a depth of 500 feet, without the right of surface entry, as reserved in instruments of record.

Parcel 2:

Easements for the benefit of Parcel 1 above, as such easements are particularly described in the Sections entitled "Certain Easements for Owners" and "Support, Settlement and Encroachment" of the Article entitled "Easements" of the Declaration of Covenants, Conditions and Restrictions recorded August 22, 1980 in Book 13713 Page 383 et seq., Official Records of Orange County, California.

**EXHIBIT 11**

# EXHIBIT 3

EXHIBIT 11

Recording Requested by
WFG National Title

Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

13.00

Recording Requested By
~~Pure Logic Escrow, Inc.~~

**Recording Requested by
WFG National Title**

When Recorded Mail to
And Mail Tax Statements To
Ramin Monfared
30967 Steeplechase Drive, San Juan Capistrano, CA
92675

* $ R U 0 1 3 5 3 1 0 8 1 $ *
**2022000070863 1:50 pm 02/22/22**
399 NC-5 G02    3 23
1478.40 1478.40 0.00 0.00 6.00 0.00 0.000.000.00 0.00

Escrow Number: 21TUS-1483-MY
Title Number: 22-331884 – JV

APN: 650-311-13
Property: 30967 Steeplechase Drive, San Juan Capistrano, CA 92675

*SPACE ABOVE IS RESERVED FOR RECORDER'S USE*

# GRANT DEED

The undersigned Grantor(s) Declare(s):
Documentary Transfer Tax  $2956.80 City Tax is N|A

___x___ Computed on the full value of the interest or property conveyed; or
_____ Computed on the full value less value of liens or encumbrances remaining at time of sale
_____ Unincorporated Area ___x___ City of _____ San Juan Capistrano

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, **Zara Rezai, an unmarried woman who acquired title as a married woman as her sole and separate property**

hereby **GRANT(S)** to **Ramin Monfared, a single man**

all the following described real property in the County of Orange, State of California:

*SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF*

Exempt from fee per GC 27388.1 (a) (2);
Recorded concurrently "in
connection with" a transfer
subject to the imposition
of Documentary Transfer Tax.

MAIL TAX STATEMENTS AS DIRECTED ABOVE

Grant Deed

Escrow No.: 21TUS-1483-MY

Page 1 of 3

**EXHIBIT 11**

DATED: February 14, 2022

*Zahra Rezai*

Zara Rezai

---

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of __California__
County of __Orange__

On __02-14-2022__ before me, __Tony Asmar Jr__, Notary Public, personally appeared
_____ __Zara Rezai__ _____, who proved to me on

the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and

acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by

his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,

executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____.    (Seal)

TONY ASMAR JR.
Notary Public - California
Orange County
Commission # 2241140
My Comm. Expires May 4, 2022

**EXHIBIT 11**

## EXHIBIT "A"
### PROPERTY DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF ORANGE, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 1 OF TRACT NO. 6305, IN THE CITY OF SAN JUAN CAPISTRANO, COUNTY OF ORANGE, STATE O CALIFORNIA, AS PER MAP RECORDED IN BOOK 457 PAGE(S) 1 THROUGH 15, INCLUSIVE OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES, LYING BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED IN INSTRUMENTS OF RECORD.

PARCEL 2:

EASEMENTS FOR THE BENEFIT OF PARCEL 1 ABOVE, AS SUCH EASEMENTS ARE PARTICULARLY DESCRIBED IN THE SECTIONS ENTITLED "CERTAIN EASEMENTS FOR OWNERS" AND "SUPPORT, SETTLEMENT AND ENCROACHMENT" OF THE ARTICLE ENTITLED "EASEMENTS" OF THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS RECORDED AUGUST 22, 1980 IN BOOK 13713 PAGE 383 ET SEQ., OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA.

APN: 650-311-13

## EXHIBIT 11

# EXHIBIT 4

EXHIBIT 11

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

**RECORDING REQUESTED BY:**
WFG National Title Company

**AND WHEN RECORDED MAIL TO:**

Ramin Monfared

34145 Pacific Coast Hwy #368
Dana Point, CA 92629

10.00

**2022000175778 1:43 pm 05/10/22**
320 507A G02   2 28
1688.50 1688.50 0.00 0.00 3.00 0.00 0.000.000.00 0.00

THIS SPACE FOR RECORDER'S USE ONLY:

| | |
|---|---|
| Title Order No.: 22-365902 | Escrow No.: 336830-SF |
| AP#: 670-191-44 | |

### GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
**DOCUMENTARY TRANSFER TAX is** $3,377.00
[X] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale.
[ ] Unincorporated area   [X] City of Dana Point **AND**

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Ribhi Ghosheh and Dina Ghosheh, Husband and Wife as Joint Tenants**

hereby GRANT(s) to:

**Ramin Monfared ,** a Single Man

the real property in the City of Dana Point, County of Orange, State of California, described as:

LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND MADE A PART HEREOF

**Also Known as:** 22862 Via Cordova, Dana Point, CA 92629

Dated March 21, 2022

Ribhi Ghosheh

Dina Ghosheh

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _OR@N G5_
On _03/23/2022_ before me, _VLAD C. ROMANIUC_ A Notary Public personally appeared _RIBHI GHOSHEH AND DINA GHOSHEH_ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ (Seal)

VLAD C. ROMANIUC
COMM. #2334982
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires 10/06/2024

MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS SHOWN ABOVE:

**EXHIBIT 11**

# EXHIBIT "A"
## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF ORANGE, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 18 OF TRACT 4516, IN THE CITY OF DANA POINT, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 376, PAGE(S) 30 TO 34 INCLUSIVE OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBONS, BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED AND/OR GRANTED IN THE DOCUMENT(S) RECORDED IN BOOK 11058, PAGE(S) 198, OFFICIAL RECORDS.

PARCEL 2:

NON-EXCLUSIVE EASEMENT FOR ACCESS, INGRESS, EGRESS, MAINTENANCE, REPAIR, DRAINAGE, ENCROACHMENT, SUPPORT AND FOR OTHER PURPOSES, ALL AS DESCRIBED IN THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND RESERVATION OF EASEMENTS FOR LAGUNA MEADOWS ("DECLARATION"), RECORDED IN BOOK 11744, PAGE(S) 726 TO 774 INCLUSIVE OF OFFICIAL RECORDS, AND THE RESTATED FIRST AMENDMENT TO THE DECLARATION ("RESTATED FIRST AMENDMENT") RECORDED IN BOOK 12403, PAGE(S) 870 TO 880 INCLUSIVE OF OFFICIAL RECORDS, AND THE SECOND AMENDMENT TO THE DECLARATION ("SECOND AMENDMENT") RECORDED IN BOOK 12574, PAGE(S) 1190 TO 1195 INCLUSIVE OF OFFICIAL RECORDS.

APN:   670-191-44

EXHIBIT 11

# EXHIBIT 5

EXHIBIT 11

RECORDING REQUESTED BY

Laguna Legal, Inc.

AND WHEN RECORDED MAIL THIS DEED AND,
UNLESS OTHERWISE SHOWN BELOW, MAIL TAX
STATEMENT TO:

Name: **Ramin Monfared, Trustee**
Address: **31423 Coast Highway #22**
City, State Zip: **Laguna Beach, CA 92651**
Title Order No. _____ Escrow No. _____

**Recorded in Official Records, Orange County**
**Hugh Nguyen, Clerk-Recorder**

10.00

*$R0014121976$*

**2022000414807 1:36 pm 12/21/22**

376 419A D10   2

0.00 0.00 0.00 0.00 3.00 0.00 0.000.000.00 0.00

Exempt from fee per GC 27388.1: This document is a transfer of real property that is a residential dwelling to an owner/occupier.

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## TRUST TRANSFER DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s)    This conveyance is a gift and the grantor received nothing in return. R&T 11930

This conveyance transfers an interest into or out of a Living Trust. R&T 11930

DOCUMENTARY TRANSFER TAX IS $   **Zero**

☐ unincorporated area        ☒ City of   **Laguna Beach**
Parcel No.   **931-682-31**

☐ computed on full value of property conveyed, or
☐ computed on full value less value of liens or encumbrances remaining at time of sale, and
FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Ramin Monfared, a single man**

hereby REMISE, RELEASE AND FOREVER GRANTS to

**Ramin Monfared, Trustee of the Coast Highway Ramfared Trust dated November 28th, 2022**

the following described real property in the city of   **Laguna Beach**

county of   **Orange**        State of   **California**        Commonly known as:

**31423 Coast Highway #22, Laguna Beach, CA 92651;**   Legally described as:

**Complete Legal Description attached herein and made a part hereof as Exhibit A**

Dated:   _DEC 13th 2022_

_____
**Ramin Monfared**

### ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California        )
County of _Orange_         )

On the _13th_ day of _December_ 2022, before me, _PJ Kehoe_ , a Notary Public, personally appeared RAMIN MONFARED, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

PJ KEHOE
Notary Public - California
Orange County
Commission # 2410788
My Comm. Expires Aug 12, 2026

Signature _PJ Kehoe_

(This area for official notarial seal)

**MAIL TAX STATEMENTS TO PARTY SHOWN ON FOLLOWING LINE; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE**

Same as above

NAME _____ STREET ADDRESS _____ CITY & STATE _____

**TRUST TRANSFER DEED**

## EXHIBIT 11

## LEGAL DESCRIPTION

## EXHIBIT A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LAGUNA BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

UNIT NO. 22, CONSISTING OF CERTAIN AIRSPACE AND SURFACE ELEMENTS, AS SHOWN AND DESCRIBED IN THE CONDOMINIUM PLAN ("PLAN"), FOR LAGUNA ROYALE, WHICH PLAN WAS RECORDED OF ORANGE COUNTY, CALIFORNIA ("OFFICIAL RECORDS")

PARCEL 2:

AN UNDIVIDED ONE SEVENTY-EIGHTH (1/78TH) FEE SIMPLE INTEREST AS A TENANT IN COMMON IN AND TO ALL OF THE REAL PROPERTY, INCLUDING, WITHOUT LIMITATIONS, THE COMMON AREA DEFINED IN THE DECLARATION REFFEREC TO BELOW, IN THE REAL PROPERTY ("PROJECT") LOCATED IN THE CITY OF LAGUNA BEACH, ORANGE COUNTY, WHICH IS SPECIFICALLY DESCRIBED AS FOLLOWS:

LOTS D, E, F, G AND H OF TRACT 831 IN THE COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 25, PAGE 15 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, TOGETHER WITH THAT CERTAIN WALKWAY 10 FEET IN WIDTH ADJOINING SAID LOTS E AND F AS SHOWN ON THE MAP OF SAID TRACT 831, SAID WALKWAY HAVING BEING VACATED EXCEPT AS TO THE NORTHEASTERLY 14 FEET THEREOF, BY A RESOLUTION OF THE BOARD OF SUPERVISORS OF ORANGE COUNTY, ENTER FEBRUARY 14, 1956, A CERTIFIED COPY OF SAME BEING RECORDED MARCH 2, 1956 IN BOOK 3423, PAGE 477, OFFICIAL RECORDS.

EXCEPT ANY PORTION OF SAID LAND WHICH LIES BELOW THE LINE OF THE MEAN HIGH TIDE LINES OF THE PACIFIC OCEAN.

PARCEL 3:

NONEXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, USE, ENJOYMENT, DRAINAGE, ENCROACHMENT, SUPPORT, MAINTENANCE, REPAIRS, AND FOR OTHER PURPOSES, ALL AS MAY BE SHOWN IN THE PLAN, AND AS ARE DESCRIBED IN THE DECLARATION.

PARCEL 4:

EXCLUSIVE EASEMENTS APPURTENANT TO PARCELS NO. 1 AND NO. 2 DESCRIBED ABOVE FOR PARKING PURPOSES OVER THE AREA DESIGNATED NO. 54 ON EXHIBIT "G" TO THE DECLARATION AND DESCRIBED AS AN EXCLUSIVE USE COMMON AREA IN THE DECLARATION.

PARCEL 5:

EXCLUSIVE EASEMENTS APPURTENANT TO PARCELS NO. 1 AND NO. 2 DESCRIBED ABOVE FOR DECK PURPOSES AS SHOWN AND ASSIGNED IN THE CONDOMINIUM PLAN AND AS DESCRIBED AS AN EXCLUSIVE USE COMMON AREA IN THE DECLARATION

APN: 931-68-231

EXHIBIT 11

# EXHIBIT 6

EXHIBIT 11

## Trustee Acknowledgement

Trustee, by its signature below accepts the foregoing assignment by Ramin Monfared to Greg M. Tonkinson effective on the date written thereon.

Dated this 29th day of November, 2022

_____

Ramin Monfared, Trustee

## Notary Certificate Attached



# Schedule A
## Trust Property

Physical Address of Property

31423 Coast Highway #22, Laguna Beach, CA 92651

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL COI E § 1189

---

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of _ORANGE_ )

On _Nov 29, 2022_ before me, _PJ KEHOE, NOTARY PUBLIC_,
    Date                           Here Insert Name and Title of the Officer

personally appeared _Ramin Monfared_
                                  Name(s) of Signer(s)

---

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

                    I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

                    WITNESS my hand and official seal.

**PJ KEHOE**
Notary Public · California
Orange County
Commission # 2410788
My Comm. Expires Aug 12, 2026

                    Signature _PJ Kehoe_
                              Signature of Notary Public

      _Place Notary Seal Above_

---
——————— **OPTIONAL** ———————

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: ___Trustee Acknowledgement___
Document Date: _____ Number of Pages: _____
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual    ☐ Attorney in Fact
☐ Trustee    ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual    ☐ Attorney in Fact
☐ Trustee    ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

---

©2016 National Notary Association · www.NationalNotary.org · 1-800-US NOTARY (1-800-876-6827)    Item #5907

# EXHIBIT 7

EXHIBIT 11

about:blank

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

*SR00144956523*       94.00
2023000191208 2:27 pm 08/08/23
434 Sec4A A08   4
0.00 0.00 0.00 0.00 9.00 0.00 0.00 0.000.0075.00 3.00

**RECORDING REQUESTED BY:**
Greg M. Tonkinson, Trustee

**WHEN RECORDED MAIL TO**

Name      Greg M. Tonkinson, Trustee

Address   260 Newport Center Dr. Suite 100

City      Newport Beach, CA  92660

State, Zip

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN: 931-682-31

## AFFIDAVIT OF CHANGE OF TRUSTEE
### California Probate Code Section 18105

STATE OF CALIFORNIA,                           )

County of Orange                               ) S.S.
                                               )

Greg M. Tonkinson, Trustee , of legal age, being first duly sworn, deposes and says:

1.   The Trust known as   Coast Highway Ramfared Trust
     executed on  November 28, 2022                        , is a valid and existing trust.

2.   The name(s) of the settlor(s) of the Trust is (are):  Ramin Monfared

3.   The name(s) of the previous trustee(s) of the Trust is (are):   Ramin Monfared

4.   I (we) am (are) all of the currently acting successor trustees.

5.   The Trust has not been revoked, modified or amended in any manner which would cause the representations contained
     herein to be incorrect.

6.   The legal description of real property in the Trust is attached hereto as Exhibit "A".

7.   I (we) became the successor trustee(s) by reason of [X] resignation, [ ] incompetency, [ ] guardianship,
     [ ] death of the prior trustee(s). If death is checked, attach a certified copy of the Death Certificate.

8.   Attached as Exhibit "B" are copies of excerpts from the original Trust documents, amendments, and other
     documents pertaining to the succession of the undersigned as successor trustee(s).

Dated: 08/08/2023

                                               Greg M. Tonkinson, Trustee

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to
which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                            )
COUNTY OF  ORANGE                              )
Subscribed and sworn to (or affirmed) before me on
this 8th       day of August 2023
by  Greg M. Tonkinson
proved to me on the basis of satisfactory evidence
to be the person(s) who appeared before me.

                                               ELLIE E. ORTIZ
                                               COMM. # 2308788
                                               NOTARY PUBLIC-CALIFORNIA
                                               ORANGE COUNTY
                                               My Comm. Exp. Oct. 14, 2023

SIGNATURE                                      (SEAL)

NONJC-063 Rev. 07/01/2016

CEB | Essential
      Forms

## AFFIDAVIT OF CHANGE OF TRUSTEE
### California Probate Code Section 18105

## LEGAL DESCRIPTION

### EXHIBIT A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LAGUNA BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

UNIT NO. 22, CONSISTING OF CERTAIN AIRSPACE AND SURFACE ELEMENTS, AS SHOWN AND DESCRIBED IN THE CONDOMINIUM PLAN ("PLAN"), FOR LAGUNA ROYALE, WHICH PLAN WAS RECORDED OF ORANGE COUNTY, CALIFORNIA ("OFFICIAL RECORDS")

PARCEL 2:

AN UNDIVIDED ONE SEVENTY-EIGHTH (1/78TH) FEE SIMPLE INTEREST AS A TENANT IN COMMON IN AND TO ALL OF THE REAL PROPERTY, INCLUDING, WITHOUT LIMITATIONS, THE COMMON AREA DEFINED IN THE DECLARATION REFFEREC TO BELOW, IN THE REAL PROPERTY ("PROJECT") LOCATED IN THE CITY OF LAGUNA BEACH, ORANGE COUNTY, WHICH IS SPECIFICALLY DESCRIBED AS FOLLOWS:

LOTS D, E, F, G AND H OF TRACT 831 IN THE COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 25, PAGE 15 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, TOGETHER WITH THAT CERTAIN WALKWAY 10 FEET IN WIDTH ADJOINING SAID LOTS E AND F AS SHOWN ON THE MAP OF SAID TRACT 831, SAID WALKWAY HAVING BEING VACATED EXCEPT AS TO THE NORTHEASTERLY 14 FEET THEREOF, BY A RESOLUTION OF THE BOARD OF SUPERVISORS OF ORANGE COUNTY, ENTER FEBRUARY 14, 1956, A CERTIFIED COPY OF SAME BEING RECORDED MARCH 2, 1956 IN BOOK 3423, PAGE 477, OFFICIAL RECORDS.

EXCEPT ANY PORTION OF SAID LAND WHICH LIES BELOW THE LINE OF THE MEAN HIGH TIDE LINES OF THE PACIFIC OCEAN.

PARCEL 3:

NONEXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, USE, ENJOYMENT, DRAINAGE, ENCROACHMENT, SUPPORT, MAINTENANCE, REPAIRS, AND FOR OTHER PURPOSES, ALL AS MAY BE SHOWN IN THE PLAN, AND AS ARE DESCRIBED IN THE DECLARATION.

PARCEL 4:

EXCLUSIVE EASEMENTS APPURTENANT TO PARCELS NO. 1 AND NO. 2 DESCRIBED ABOVE FOR PARKING PURPOSES OVER THE AREA DESIGNATED NO. 54 ON EXHIBIT "G" TO THE DECLARATION AND DESCRIBED AS AN EXCLUSIVE USE COMMON AREA IN THE DECLARATION.

PARCEL 5:

EXCLUSIVE EASEMENTS APPURTENANT TO PARCELS NO. 1 AND NO. 2 DESCRIBED ABOVE FOR DECK PURPOSES AS SHOWN AND ASSIGNED IN THE CONDOMINIUM PLAN AND AS DESCRIBED AS AN EXCLUSIVE USE COMMON AREA IN THE DECLARATION

APN: 931-68-231

## Exhibit "A"

EXHIBIT 12

Case Summary:

| Case Id: | 30-2023-01345894-CU-OR-NJC |
|---|---|
| Case Title: | RAMIN MONFARED VS. ANDY ANDALIBIAN |
| Case Type: | OTHER REAL PROPERTY |
| Filing Date: | 08/28/2023 |
| Category: | CIVIL - UNLIMITED |

Register Of Actions:

| ROA | Docket | Filing Date | Filing Party | Document | Select |
|---|---|---|---|---|---|
| 1 | E-FILING TRANSACTION 31356508 RECEIVED ON 08/28/2023 10:53:29 AM. | 09/01/2023 | | *NV* | |
| 2 | COMPLAINT FILED BY MONFARED, RAMIN; ALMASSI, NEGIN ON 08/28/2023 | 08/28/2023 | | 64 pages | |
| 3 | CIVIL CASE COVER SHEET FILED BY MONFARED, RAMIN; ALMASSI, NEGIN ON 08/28/2023 | 08/28/2023 | | 1 pages | |
| 4 | SUMMONS ISSUED AND FILED FILED BY MONFARED, RAMIN; ALMASSI, NEGIN ON 08/28/2023 | 08/28/2023 | | 1 pages | |
| 5 | PAYMENT RECEIVED BY ONELEGAL FOR 194 - COMPLAINT OR OTHER 1ST PAPER IN THE AMOUNT OF 435.00, TRANSACTION NUMBER 13279542 AND RECEIPT NUMBER 13107691. | 09/01/2023 | | 1 pages | |
| 6 | CASE ASSIGNED TO JUDICIAL OFFICER GOODING, MARTHA ON 08/28/2023. | 08/28/2023 | | *NV* | |
| 7 | CASE MANAGEMENT CONFERENCE SCHEDULED FOR 03/04/2024 AT 09:00:00 AM IN C31 AT CENTRAL JUSTICE CENTER. | 09/01/2023 | | 2 pages | |
| 8 | E-FILING TRANSACTION 21364810 RECEIVED ON 09/11/2023 03:27:23 PM. | 09/12/2023 | | *NV* | |
| 9 | NOTICE OF PENDENCY OF ACTION (CCP 405 ET SEQ 31423 COAST HWY #22 LAGUNA BEACH CA) FILED BY ALMASSI, NEGIN; MONFARED, RAMIN ON 09/11/2023 | 09/11/2023 | | 8 pages | |
| 10 | NOTICE OF PENDENCY OF ACTION (CCP 405 ET SEQ 30967 STEEPLECHASE DR SJC, CA) FILED BY ALMASSI, NEGIN; MONFARED, RAMIN ON 09/11/2023 | 09/11/2023 | | 7 pages | |
| 11 | E-FILING TRANSACTION 11195602 RECEIVED ON 09/13/2023 03:28:12 PM. | 09/13/2023 | | *NV* | |
| 12 | PROOF OF SERVICE FILED BY MONFARED, RAMIN ON 09/13/2023 | 09/13/2023 | | 3 pages | |
| 13 | E-FILING TRANSACTION 21367749 RECEIVED ON 09/18/2023 12:48:24 PM. | 09/18/2023 | | *NV* | |
| 14 | PROOF OF SERVICE OF SUMMONS FILED BY MONFARED, RAMIN ON 09/18/2023 | 09/18/2023 | | 2 pages | |
| 15 | E-FILING TRANSACTION 11200357 RECEIVED ON 09/25/2023 02:23:55 PM. | 09/25/2023 | | *NV* | |
| 16 | PROOF OF SERVICE OF SUMMONS FILED BY ALMASSI, NEGIN; MONFARED, RAMIN ON 09/25/2023 | 09/25/2023 | | 3 pages | |
| 17 | E-FILING TRANSACTION 21373148 RECEIVED ON 09/29/2023 12:05:06 PM. | 09/29/2023 | | *NV* | |
| 18 | PROOF OF SERVICE FILED BY MONFARED, RAMIN; ALMASSI, NEGIN 09/29/2023 | 09/29/2023 | | 3 pages | |

**EXHIBIT 12**

| ROA | Docket | Filing Date | Filing Party | Document | Select |
|---|---|---|---|---|---|
| 19 | E-FILING TRANSACTION 31371223 RECEIVED ON 09/29/2023 12:51:09 PM. | 09/29/2023 | | *NV* | |
| 20 | PROOF OF SERVICE OF SUMMONS FILED BY MONFARED, RAMIN; ALMASSI, NEGIN ON 09/29/2023 | 09/29/2023 | | 3 pages | |
| 21 | E-FILING TRANSACTION 31369687 RECEIVED ON 09/26/2023 06:42:23 PM. | 10/02/2023 | | *NV* | |
| 22 | DECLARATION - OTHER (DECLARATION IN RESPONSE) FILED BY MONFARED, RAMIN ON 09/26/2023 | 09/26/2023 | | 5 pages | |
| 23 | E-FILING TRANSACTION 11205714 RECEIVED ON 10/05/2023 11:37:17 AM. | 10/05/2023 | | *NV* | |
| 24 | PROOF OF SUBSTITUTE SERVICE FILED BY MONFARED, RAMIN; ALMASSI, NEGIN ON 10/05/2023 | 10/05/2023 | | 3 pages | |
| 25 | E-FILING TRANSACTION 41553189 RECEIVED ON 10/09/2023 04:00:11 PM. | 10/09/2023 | | *NV* | |
| 26 | PROOF OF SERVICE OF SUMMONS FILED BY MONFARED, RAMIN; ALMASSI, NEGIN ON 10/09/2023 | 10/09/2023 | | 4 pages | |
| 27 | E-FILING TRANSACTION NUMBER 41560212 REJECTED. | 10/31/2023 | | 1 pages | |
| 28 | E-FILING TRANSACTION NUMBER 31382483 REJECTED. | 10/31/2023 | | 1 pages | |
| 29 | E-FILING TRANSACTION 21383504 RECEIVED ON 10/23/2023 04:54:23 PM. | 11/14/2023 | | *NV* | |
| 30 | ANSWER TO COMPLAINT FILED BY REZAI, ZARA ON 10/23/2023 | 10/23/2023 | | 18 pages | |
| 31 | PAYMENT RECEIVED BY ONELEGAL FOR 195 - ANSWER OR OTHER 1ST PAPER IN THE AMOUNT OF 435.00, TRANSACTION NUMBER 13318263 AND RECEIPT NUMBER 13146399. | 11/14/2023 | | 1 pages | |
| 32 | E-FILING TRANSACTION 31384708 RECEIVED ON 10/28/2023 01:01:49 PM. | 11/14/2023 | | *NV* | |
| 33 | ANSWER TO COMPLAINT FILED BY ANDALIBIAN, ANDY ON 10/30/2023 | 10/30/2023 | | 10 pages | |
| 34 | PAYMENT RECEIVED BY ONELEGAL FOR 195 - ANSWER OR OTHER 1ST PAPER IN THE AMOUNT OF 435.00, TRANSACTION NUMBER 13318712 AND RECEIPT NUMBER 13146848. | 11/14/2023 | | 1 pages | |
| 35 | E-FILING TRANSACTION 31386889 RECEIVED ON 11/02/2023 03:07:59 PM. | 11/14/2023 | | *NV* | |
| 36 | ANSWER TO COMPLAINT FILED BY TONKINSON, GREG M. ON 11/02/2023 | 11/02/2023 | | 7 pages | |
| 37 | PAYMENT RECEIVED BY AMERICANLEGALNET FOR 195 - ANSWER OR OTHER 1ST PAPER IN THE AMOUNT OF 435.00, TRANSACTION NUMBER 13318717 AND RECEIPT NUMBER 13146853. | 11/14/2023 | | 1 pages | |
| 38 | E-FILING TRANSACTION 31386899 RECEIVED ON 11/02/2023 03:13:48 PM. | 11/22/2023 | | *NV* | |
| 39 | ANSWER TO COMPLAINT FILED BY ALLIANCE CONSTRUCTION CO. ON 11/02/2023 | 11/02/2023 | | 7 pages | |
| 40 | PAYMENT RECEIVED BY AMERICANLEGALNET FOR 195 - ANSWER OR OTHER 1ST PAPER IN THE AMOUNT OF 435.00, | 11/22/2023 | | 1 pages | |

**EXHIBIT 12**

| ROA | Docket | Filing Date | Filing Party | Document | Select |
|---|---|---|---|---|---|
| | TRANSACTION NUMBER 13323055 AND RECEIPT NUMBER 13151192. | | | | |
| 41 | E-FILING TRANSACTION 21388479 RECEIVED ON 11/02/2023 03:21:04 PM. | 11/22/2023 | | *NV* | |
| 42 | ANSWER TO COMPLAINT FILED BY NEW DAWN JENKINS LLC ON 11/02/2023 | 11/02/2023 | | 7 pages | |
| 43 | PAYMENT RECEIVED BY AMERICANLEGALNET FOR 195 - ANSWER OR OTHER 1ST PAPER IN THE AMOUNT OF 435.00, TRANSACTION NUMBER 13323056 AND RECEIPT NUMBER 13151193. | 11/22/2023 | | 1 pages | |
| 44 | PAYMENT FOR 195 - ANSWER OR OTHER 1ST PAPER, TRANSACTION NUMBER 13323056 IN THE AMOUNT OF 435.00 VOIDED DUE TO OTHER. EF# 21388479 VENDOR DID NOT PAY. VOID AND NFD | 11/29/2023 | | 1 pages | |
| 45 | NOTICE OF FEES DUE ELECTRONIC FILING | 11/29/2023 | | 1 pages | |
| 46 | PAYMENT RECEIVED BY NEW DAWN JENKINS LLC FOR 195 - ANSWER OR OTHER 1ST PAPER IN THE AMOUNT OF 435.00, TRANSACTION NUMBER 13326808 AND RECEIPT NUMBER 13154939. | 11/30/2023 | | 1 pages | |
| 47 | CASE REASSIGNED TO FISH, JONATHAN EFFECTIVE 01/08/2024. | 12/20/2023 | | 2 pages | |
| 48 | E-FILING TRANSACTION 41609200 RECEIVED ON 02/14/2024 01:33:06 PM. | 02/14/2024 | | *NV* | |
| 49 | CASE MANAGEMENT STATEMENT FILED BY ANDALIBIAN, ANDY ON 02/14/2024 | 02/14/2024 | | 7 pages | |
| 50 | E-FILING TRANSACTION 21432721 RECEIVED ON 02/14/2024 03:19:01 PM. | 02/14/2024 | | *NV* | |
| 51 | CASE MANAGEMENT STATEMENT FILED BY ALMASSI, NEGIN; MONFARED, RAMIN ON 02/14/2024 | 02/14/2024 | | 7 pages | |
| 52 | E-FILING TRANSACTION NUMBER 21432754 REJECTED. | 02/15/2024 | | 1 pages | |
| 53 | E-FILING TRANSACTION 31432872 RECEIVED ON 02/15/2024 09:05:53 AM. | 02/16/2024 | | *NV* | |
| 54 | NOTICE OF POSTING JURY FEES FILED BY ALMASSI, NEGIN; MONFARED, RAMIN ON 02/15/2024 | 02/15/2024 | | 4 pages | |
| 55 | PAYMENT RECEIVED BY ONELEGAL FOR 209 - ADVANCED JURY FEE (NON-REFUNDABLE) IN THE AMOUNT OF 150.00, TRANSACTION NUMBER 13368233 AND RECEIPT NUMBER 13196385. | 02/16/2024 | | 1 pages | |
| 56 | E-FILING TRANSACTION 11268465 RECEIVED ON 02/22/2024 04:10:47 PM. | 02/22/2024 | | *NV* | |
| 57 | STATUS CONFERENCE STATEMENT FILED BY REZAI, ZARA ON 02/22/2024 | 02/22/2024 | | 8 pages | |
| 58 | E-FILING TRANSACTION 11268466 RECEIVED ON 02/22/2024 04:10:59 PM. | 02/22/2024 | | *NV* | |
| 59 | NOTICE - OTHER FILED BY REZAI, ZARA ON 02/22/2024 | 02/22/2024 | | 4 pages | |
| 60 | E-FILING TRANSACTION 31437250 RECEIVED ON 02/23/2024 09:39:52 PM. | 02/23/2024 | | *NV* | |

**EXHIBIT 12**

| ROA | Docket | Filing Date | Filing Party | Document | Select |
|---|---|---|---|---|---|
| 61 | SEPARATE STATEMENT FILED BY ALMASSI, NEGIN; MONFARED, RAMIN ON 02/23/2024 | 02/23/2024 | | 57 pages | |
| 62 | E-FILING TRANSACTION 31437251 RECEIVED ON 02/23/2024 09:40:07 PM. | 02/26/2024 | | *NV* | |
| 63 | MOTION TO COMPEL PRODUCTION/INSPECTION OF DOCUMENTS OR THINGS FILED BY MONFARED, RAMIN ON 02/23/2024 | 02/23/2024 | | 157 pages | |
| 64 | MOTION TO COMPEL ANSWERS TO INTERROGATORIES (FORM INTERROGATORIES SET ONE) FILED BY ALMASSI, NEGIN ON 02/23/2024 | 02/23/2024 | | 51 pages | |
| 65 | MOTION TO COMPEL ANSWERS TO INTERROGATORIES (FORM INTERROGATORIES SET ONE) FILED BY ALMASSI, NEGIN ON 02/23/2024 | 02/23/2024 | | 51 pages | |
| 66 | MOTION TO COMPEL ANSWERS TO INTERROGATORIES (FORM INTERROGATORIES SET ONE) FILED BY ALMASSI, NEGIN ON 02/23/2024 | 02/23/2024 | | 51 pages | |
| 67 | MOTION TO COMPEL ANSWERS TO INTERROGATORIES (FORM INTERROGATORIES SET ONE) FILED BY MONFARED, RAMIN ON 02/23/2024 | 02/23/2024 | | 51 pages | |
| 68 | MOTION TO COMPEL PRODUCTION/INSPECTION OF DOCUMENTS OR THINGS FILED BY ALMASSI, NEGIN ON 02/23/2024 | 02/23/2024 | | 14 pages | |
| 69 | MOTION TO COMPEL PRODUCTION/INSPECTION OF DOCUMENTS OR THINGS FILED BY ALMASSI, NEGIN ON 02/23/2024 | 02/23/2024 | | 14 pages | |
| 70 | MOTION TO COMPEL PRODUCTION/INSPECTION OF DOCUMENTS OR THINGS FILED BY ALMASSI, NEGIN ON 02/23/2024 | 02/23/2024 | | 14 pages | |
| 71 | MOTION TO COMPEL PRODUCTION/INSPECTION OF DOCUMENTS OR THINGS FILED BY ALMASSI, NEGIN ON 02/23/2024 | 02/23/2024 | | 14 pages | |
| 72 | DECLARATION IN SUPPORT (CHRISTOPHER JAFARI) FILED BY ALMASSI, NEGIN; MONFARED, RAMIN ON 02/23/2024 | 02/23/2024 | | 78 pages | |
| 73 | PAYMENT RECEIVED BY ONELEGAL FOR 36 - MOTION OR OTHER (NOT 1ST) PAPER REQUIRING A HEARING, 36 - MOTION OR OTHER (NOT 1ST) PAPER REQUIRING A HEARING, 36 - MOTION OR OTHER (NOT 1ST) PAPER REQUIRING A HEARING, 36 - MOTION OR OTHER (NOT IN THE AMOUNT OF 540.00, TRANSACTION NUMBER 13372159 AND RECEIPT NUMBER 13200314. | 02/26/2024 | | 2 pages | |
| 74 | MOTION TO COMPEL PRODUCTION SCHEDULED FOR 07/08/2024 AT 01:30:00 PM IN C13 AT CENTRAL JUSTICE CENTER. | 02/26/2024 | | *NV* | |
| 75 | MOTION TO COMPEL ANSWERS TO FORM INTERROGATORIES SCHEDULED FOR 07/01/2024 AT 01:30:00 PM IN C13 AT CENTRAL JUSTICE CENTER. | 02/26/2024 | | *NV* | |
| 76 | MOTION TO COMPEL ANSWERS TO FORM INTERROGATORIES SCHEDULED FOR 07/01/2024 AT 01:30:00 PM IN C13 AT CENTRAL JUSTICE CENTER. | 02/26/2024 | | *NV* | |

**EXHIBIT 12**

| ROA | Docket | Filing Date | Filing Party | Document | Select |
|---|---|---|---|---|---|
| 77 | MOTION TO COMPEL ANSWERS TO FORM INTERROGATORIES SCHEDULED FOR 07/01/2024 AT 01:30:00 PM IN C13 AT CENTRAL JUSTICE CENTER. | 02/26/2024 | | *NV* | |
| 78 | MOTION TO COMPEL ANSWERS TO FORM INTERROGATORIES SCHEDULED FOR 07/01/2024 AT 01:30:00 PM IN C13 AT CENTRAL JUSTICE CENTER. | 02/26/2024 | | *NV* | |
| 79 | MOTION TO COMPEL PRODUCTION SCHEDULED FOR 07/08/2024 AT 01:30:00 PM IN C13 AT CENTRAL JUSTICE CENTER. | 02/26/2024 | | *NV* | |
| 80 | MOTION TO COMPEL PRODUCTION SCHEDULED FOR 07/01/2024 AT 01:30:00 PM IN C13 AT CENTRAL JUSTICE CENTER. | 02/27/2024 | | *NV* | |
| 81 | MOTION TO COMPEL PRODUCTION SCHEDULED FOR 07/01/2024 AT 01:30:00 PM IN C13 AT CENTRAL JUSTICE CENTER. | 02/28/2024 | | *NV* | |
| 82 | E-FILING TRANSACTION 41617719 RECEIVED ON 03/01/2024 05:28:08 PM. | 03/01/2024 | | *NV* | |
| 83 | SEPARATE STATEMENT FILED BY ALMASSI, NEGIN; MONFARED, RAMIN ON 03/01/2024 | 03/01/2024 | | 118 pages | |
| 84 | E-FILING TRANSACTION 21440885 RECEIVED ON 03/01/2024 05:28:09 PM. | 03/01/2024 | | *NV* | |
| 85 | SEPARATE STATEMENT FILED BY ALMASSI, NEGIN; MONFARED, RAMIN ON 03/01/2024 | 03/01/2024 | | 14 pages | |
| 86 | E-FILING TRANSACTION 21440886 RECEIVED ON 03/01/2024 05:28:10 PM. | 03/01/2024 | | *NV* | |
| 87 | SEPARATE STATEMENT FILED BY ALMASSI, NEGIN; MONFARED, RAMIN ON 03/01/2024 | 03/01/2024 | | 90 pages | |
| 88 | E-FILING TRANSACTION 21440887 RECEIVED ON 03/01/2024 05:28:12 PM. | 03/04/2024 | | *NV* | |
| 89 | MOTION TO COMPEL ANSWERS TO INTERROGATORIES (FURTHER RESPONSES FORM INTERROGATORIES SET ONE) FILED BY MONFARED, RAMIN ON 03/01/2024 | 03/01/2024 | | 110 pages | |
| 90 | MOTION TO COMPEL PRODUCTION/INSPECTION OF DOCUMENTS OR THINGS FILED BY MONFARED, RAMIN ON 03/01/2024 | 03/01/2024 | | 110 pages | |
| 91 | MOTION TO COMPEL PRODUCTION/INSPECTION OF DOCUMENTS OR THINGS FILED BY ALMASSI, NEGIN ON 03/01/2024 | 03/01/2024 | | 125 pages | |
| 92 | PAYMENT RECEIVED BY ONELEGAL FOR 36 - MOTION OR OTHER (NOT 1ST) PAPER REQUIRING A HEARING, 36 - MOTION OR OTHER (NOT 1ST) PAPER REQUIRING A HEARING, 36 - MOTION OR OTHER (NOT 1ST) PAPER REQUIRING A HEARING IN THE AMOUNT OF 180.00, TRANSACTION NUMBER 13375891 AND RECEIPT NUMBER 13204046. | 03/04/2024 | | 1 pages | |
| 93 | MOTION TO COMPEL FURTHER RESPONSES TO FORM INTERROGATORIES SCHEDULED FOR 07/22/2024 AT 01:30:00 PM IN C13 AT CENTRAL JUSTICE CENTER. | 03/04/2024 | | *NV* | |

**EXHIBIT 12**

| ROA | Docket | Filing Date | Filing Party | Document | Select |
|---|---|---|---|---|---|
| 94 | MOTION TO COMPEL PRODUCTION SCHEDULED FOR 07/29/2024 AT 01:30:00 PM IN C13 AT CENTRAL JUSTICE CENTER. | 03/04/2024 | | *NV* | |
| 95 | MOTION TO COMPEL PRODUCTION SCHEDULED FOR 07/22/2024 AT 01:30:00 PM IN C13 AT CENTRAL JUSTICE CENTER. | 03/04/2024 | | *NV* | |
| 96 | E-FILING TRANSACTION 31440674 RECEIVED ON 03/01/2024 03:15:57 PM. | 03/04/2024 | | *NV* | |
| 97 | CASE MANAGEMENT STATEMENT FILED BY TONKINSON, GREG M.; ALLIANCE CONSTRUCTION CO.; NEW DAWN JENKINS LLC; HDDS ALLIANCE CO. ON 03/01/2024 | 03/01/2024 | | 7 pages | |
| 98 | THE COURT ORDERS HDDS ALLIANCE CO. BE DISMISSED WITHOUT PREJUDICE ON COMPLAINT. | 03/04/2024 | | *NV* | |
| 99 | CASE MANAGEMENT CONFERENCE CONTINUED TO 08/05/2024 AT 09:00 AM IN THIS DEPARTMENT PURSUANT TO PARTY'S MOTION. | 03/04/2024 | | *NV* | |
| 100 | MINUTES FINALIZED FOR CASE MANAGEMENT CONFERENCE 03/04/2024 09:00:00 AM. | 03/06/2024 | | 1 pages | |
| 101 | E-FILING TRANSACTION 21442708 RECEIVED ON 03/06/2024 01:22:30 PM. | 03/06/2024 | | *NV* | |
| 102 | SEPARATE STATEMENT FILED BY MONFARED, RAMIN ON 03/06/2024 | 03/06/2024 | | 62 pages | |
| 103 | E-FILING TRANSACTION 21442710 RECEIVED ON 03/06/2024 01:22:46 PM. | 03/07/2024 | | *NV* | |
| 104 | MOTION TO COMPEL PRODUCTION/INSPECTION OF DOCUMENTS OR THINGS FILED BY MONFARED, RAMIN ON 03/06/2024 | 03/06/2024 | | 220 pages | |
| 105 | PAYMENT RECEIVED BY ONELEGAL FOR 36 - MOTION OR OTHER (NOT 1ST) PAPER REQUIRING A HEARING IN THE AMOUNT OF 60.00, TRANSACTION NUMBER 13378140 AND RECEIPT NUMBER 13206314. | 03/07/2024 | | 1 pages | |
| 106 | MOTION TO COMPEL PRODUCTION SCHEDULED FOR 07/15/2024 AT 01:30:00 PM IN C13 AT CENTRAL JUSTICE CENTER. | 03/07/2024 | | *NV* | |
| 107 | E-FILING TRANSACTION 41620205 RECEIVED ON 03/07/2024 10:31:41 AM. | 03/07/2024 | | *NV* | |
| 108 | NOTICE OF RELATED CASE (2023-1341707) FILED ON 03/07/2024 | 03/07/2024 | | 6 pages | |
| 109 | E-FILING TRANSACTION 41620620 RECEIVED ON 03/07/2024 05:56:57 PM. | 03/07/2024 | | *NV* | |
| 110 | NOTICE - OTHER FILED BY MONFARED, RAMIN ON 03/07/2024 | 03/07/2024 | | 5 pages | |
| 111 | E-FILING TRANSACTION 11277229 RECEIVED ON 03/12/2024 02:05:03 PM. | 03/12/2024 | | *NV* | |
| 112 | OBJECTION FILED BY REZAI, ZARA ON 03/12/2024 | 03/12/2024 | | 9 pages | |
| 113 | E-FILING TRANSACTION 41622480 RECEIVED ON 03/12/2024 03:28:45 PM. | 03/12/2024 | | *NV* | |
| 114 | RESPONSE FILED BY MONFARED, RAMIN ON 03/12/2024 | 03/12/2024 | | 6 pages | |

**EXHIBIT 12**

| ROA | Docket | Filing Date | Filing Party | Document | Select |
|---|---|---|---|---|---|
| 115 | RELATED CASES INCLUDE: 30-2023-01341707 REZAI V. MONFARED. | 03/29/2024 | | *NV* | |
| 116 | THIS CASE IS REASSIGNED TO THE HONORABLE CRAIG GRIFFIN FOR ALL PURPOSES. | 03/29/2024 | | *NV* | |
| 117 | MINUTES FINALIZED FOR CHAMBERS WORK 03/29/2024 10:00:00 AM. | 04/03/2024 | | 1 pages | |
| 118 | CLERK'S CERTIFICATE OF MAILING/ELECTRONIC SERVICE | 04/03/2024 | | 2 pages | |
| 119 | MOTION TO COMPEL PRODUCTION REASSIGNED TO N17 AT NORTH JUSTICE CENTER ON 07/22/2024 AT 01:30:00 PM. | 04/04/2024 | | *NV* | |
| 120 | MOTION TO COMPEL FURTHER RESPONSES TO FORM INTERROGATORIES REASSIGNED TO N17 AT NORTH JUSTICE CENTER ON 07/22/2024 AT 01:30:00 PM. | 04/04/2024 | | *NV* | |
| 121 | MOTION TO COMPEL PRODUCTION REASSIGNED TO N17 AT NORTH JUSTICE CENTER ON 07/15/2024 AT 01:30:00 PM. | 04/04/2024 | | *NV* | |
| 122 | MOTION TO COMPEL ANSWERS TO FORM INTERROGATORIES REASSIGNED TO N17 AT NORTH JUSTICE CENTER ON 07/01/2024 AT 01:30:00 PM. | 04/04/2024 | | *NV* | |
| 123 | MOTION TO COMPEL PRODUCTION REASSIGNED TO N17 AT NORTH JUSTICE CENTER ON 07/01/2024 AT 01:30:00 PM. | 04/04/2024 | | *NV* | |
| 124 | MOTION TO COMPEL PRODUCTION REASSIGNED TO N17 AT NORTH JUSTICE CENTER ON 07/29/2024 AT 01:30:00 PM. | 04/04/2024 | | *NV* | |
| 125 | MOTION TO COMPEL ANSWERS TO FORM INTERROGATORIES REASSIGNED TO N17 AT NORTH JUSTICE CENTER ON 07/01/2024 AT 01:30:00 PM. | 04/04/2024 | | *NV* | |
| 126 | MOTION TO COMPEL ANSWERS TO FORM INTERROGATORIES REASSIGNED TO N17 AT NORTH JUSTICE CENTER ON 07/01/2024 AT 01:30:00 PM. | 04/04/2024 | | *NV* | |
| 127 | MOTION TO COMPEL ANSWERS TO FORM INTERROGATORIES REASSIGNED TO N17 AT NORTH JUSTICE CENTER ON 07/01/2024 AT 01:30:00 PM. | 04/04/2024 | | *NV* | |
| 128 | MOTION TO COMPEL PRODUCTION REASSIGNED TO N17 AT NORTH JUSTICE CENTER ON 07/01/2024 AT 01:30:00 PM. | 04/04/2024 | | *NV* | |
| 129 | MOTION TO COMPEL PRODUCTION REASSIGNED TO N17 AT NORTH JUSTICE CENTER ON 07/08/2024 AT 01:30:00 PM. | 04/04/2024 | | *NV* | |
| 130 | MOTION TO COMPEL PRODUCTION REASSIGNED TO N17 AT NORTH JUSTICE CENTER ON 07/08/2024 AT 01:30:00 PM. | 04/04/2024 | | *NV* | |
| 131 | MOTION TO COMPEL PRODUCTION SCHEDULED FOR 07/08/2024 AT 01:30:00 PM IN N17 AT NORTH JUSTICE CENTER. | 04/10/2024 | | 2 pages | |
| 132 | E-FILING TRANSACTION 11295516 RECEIVED ON 04/17/2024 12:46:19 PM. | 04/17/2024 | | *NV* | |
| 133 | DECLARATION IN SUPPORT OF MOTION TO BE RELIEVED AS COUNSEL FILED BY ANDALIBIAN, ANDY ON 04/17/2024 | 04/17/2024 | | 2 pages | |
| 134 | E-FILING TRANSACTION 31463196 RECEIVED ON 04/17/2024 12:46:20 PM. | 04/17/2024 | | *NV* | |
| 135 | PROOF OF SERVICE BY MAIL FILED BY ANDALIBIAN, ANDY ON 04/17/2024 | 04/17/2024 | | 2 pages | |
| 136 | MOTION TO COMPEL ANSWERS TO FORM INTERROGATORIES CONTINUED TO 09/23/2024 AT 02:00 PM IN | 04/16/2024 | | *NV* | |

**EXHIBIT 12**

| ROA | Docket | Filing Date | Filing Party | Document | Select |
|---|---|---|---|---|---|
| | THIS DEPARTMENT PURSUANT TO COURT'S MOTION. | | | | |
| 137 | MOTION TO COMPEL PRODUCTION CONTINUED TO 09/23/2024 AT 02:00 PM IN THIS DEPARTMENT PURSUANT TO COURT'S MOTION. | 04/16/2024 | | *NV* | |
| 138 | MOTION TO COMPEL ANSWERS TO FORM INTERROGATORIES CONTINUED TO 09/23/2024 AT 02:00 PM IN THIS DEPARTMENT PURSUANT TO COURT'S MOTION. | 04/16/2024 | | *NV* | |
| 139 | MOTION TO COMPEL ANSWERS TO FORM INTERROGATORIES CONTINUED TO 09/23/2024 AT 02:00 PM IN THIS DEPARTMENT PURSUANT TO COURT'S MOTION. | 04/16/2024 | | *NV* | |
| 140 | MOTION TO COMPEL ANSWERS TO FORM INTERROGATORIES CONTINUED TO 09/23/2024 AT 02:00 PM IN THIS DEPARTMENT PURSUANT TO COURT'S MOTION. | 04/16/2024 | | *NV* | |
| 141 | MOTION TO COMPEL PRODUCTION CONTINUED TO 09/23/2024 AT 02:00 PM IN THIS DEPARTMENT PURSUANT TO COURT'S MOTION. | 04/16/2024 | | *NV* | |
| 142 | MOTION TO COMPEL PRODUCTION CONTINUED TO 09/23/2024 AT 02:00 PM IN THIS DEPARTMENT PURSUANT TO COURT'S MOTION. | 04/16/2024 | | *NV* | |
| 143 | MOTION TO COMPEL PRODUCTION CONTINUED TO 09/23/2024 AT 02:00 PM IN THIS DEPARTMENT PURSUANT TO COURT'S MOTION. | 04/16/2024 | | *NV* | |
| 144 | MOTION TO COMPEL PRODUCTION CONTINUED TO 09/23/2024 AT 02:00 PM IN THIS DEPARTMENT PURSUANT TO COURT'S MOTION. | 04/16/2024 | | *NV* | |
| 145 | MOTION TO COMPEL PRODUCTION CONTINUED TO 09/23/2024 AT 02:00 PM IN THIS DEPARTMENT PURSUANT TO COURT'S MOTION. | 04/16/2024 | | *NV* | |
| 146 | MOTION TO COMPEL PRODUCTION CONTINUED TO 09/23/2024 AT 02:00 PM IN THIS DEPARTMENT PURSUANT TO COURT'S MOTION. | 04/16/2024 | | *NV* | |
| 147 | MOTION TO COMPEL FURTHER RESPONSES TO FORM INTERROGATORIES CONTINUED TO 09/23/2024 AT 02:00 PM IN THIS DEPARTMENT PURSUANT TO COURT'S MOTION. | 04/16/2024 | | *NV* | |
| 148 | MOTION TO COMPEL PRODUCTION CONTINUED TO 09/23/2024 AT 02:00 PM IN THIS DEPARTMENT PURSUANT TO COURT'S MOTION. | 04/16/2024 | | *NV* | |
| 149 | CASE MANAGEMENT CONFERENCE CONTINUED TO 08/09/2024 AT 09:30 AM IN THIS DEPARTMENT PURSUANT TO COURT'S MOTION. | 04/16/2024 | | *NV* | |
| 150 | MINUTES FINALIZED FOR 04/16/2024 02:35:00 PM. | 04/17/2024 | | 2 pages | |
| 151 | CLERK'S CERTIFICATE OF MAILING/ELECTRONIC SERVICE | 04/17/2024 | | 3 pages | |
| 152 | E-FILING TRANSACTION 31463429 RECEIVED ON 04/17/2024 04:21:04 PM. | 04/17/2024 | | *NV* | |
| 153 | NOTICE - OTHER FILED BY ALMASSI, NEGIN; MONFARED, RAMIN ON 04/17/2024 | 04/17/2024 | | 11 pages | |
| 154 | E-FILING TRANSACTION 11295517 RECEIVED ON 04/17/2024 12:46:20 PM. | 04/25/2024 | | *NV* | |

**EXHIBIT 12**

| ROA | Docket | Filing Date | Filing Party | Document | Select |
|---|---|---|---|---|---|
| 155 | MOTION TO BE RELIEVED AS COUNSEL OF RECORD FILED BY ANDALIBIAN, ANDY ON 04/17/2024 | 04/17/2024 | | 2 pages | |
| 156 | ORDER GRANTING ATTORNEYS MOTION TO BE RELIEVED AS COUNSEL RECEIVED ON 04/17/2024. | 04/17/2024 | | 2 pages | |
| 157 | PAYMENT RECEIVED BY ONELEGAL FOR 36 - MOTION OR OTHER (NOT 1ST) PAPER REQUIRING A HEARING IN THE AMOUNT OF 60.00, TRANSACTION NUMBER 13405434 AND RECEIPT NUMBER 13233597. | 04/25/2024 | | 1 pages | |
| 158 | MOTION TO BE RELIEVED AS COUNSEL OF RECORD SCHEDULED FOR 06/17/2024 AT 02:00:00 PM IN N17 AT NORTH JUSTICE CENTER. | 04/25/2024 | | NV | |
| 159 | MINUTES FINALIZED FOR MOTION TO BE RELIEVED AS COUNSEL OF RECORD 06/17/2024 02:00:00 PM. | 06/24/2024 | | 1 pages | |
| 160 | E-FILING TRANSACTION 31494525 RECEIVED ON 06/24/2024 11:47:29 AM. | 06/25/2024 | | NV | |
| 161 | ORDER GRANTING ATTORNEYS MOTION TO BE RELIEVED AS COUNSEL RECEIVED ON 06/24/2024. | 06/24/2024 | | 3 pages | |
| 162 | E-FILING TRANSACTION 31495999 RECEIVED ON 06/26/2024 11:00:00 AM. | 06/26/2024 | | NV | |
| 163 | PROOF OF SERVICE BY MAIL FILED BY ANDALIBIAN, ANDY ON 06/26/2024 | 06/26/2024 | | 2 pages | |
| 164 | E-FILING TRANSACTION 21498823 RECEIVED ON 07/01/2024 01:28:48 PM. | 07/01/2024 | | NV | |
| 165 | DECLARATION IN SUPPORT FILED BY REZAI, ZARA ON 07/01/2024 | 07/01/2024 | | 4 pages | |
| 166 | E-FILING TRANSACTION 41676114 RECEIVED ON 07/01/2024 01:28:48 PM. | 07/01/2024 | | NV | |
| 167 | REQUEST FOR JUDICIAL NOTICE FILED BY REZAI, ZARA ON 07/01/2024 | 07/01/2024 | | 14 pages | |
| 168 | E-FILING TRANSACTION 21498824 RECEIVED ON 07/01/2024 01:28:50 PM. | 07/01/2024 | | NV | |
| 169 | OPPOSITION FILED BY REZAI, ZARA ON 07/01/2024 | 07/01/2024 | | 16 pages | |
| 170 | E-FILING TRANSACTION 21498825 RECEIVED ON 07/01/2024 01:28:57 PM. | 07/01/2024 | | NV | |
| 171 | SEPARATE STATEMENT FILED BY REZAI, ZARA ON 07/01/2024 | 07/01/2024 | | 68 pages | |
| 172 | E-FILING TRANSACTION 11323263 RECEIVED ON 06/16/2024 01:55:53 PM. | 07/05/2024 | | NV | |
| 173 | ORDER - OTHER FILED BY THE SUPERIOR COURT OF ORANGE ON 06/26/2024 | 06/26/2024 | | 3 pages | |
| 174 | E-FILING TRANSACTION 11347817 RECEIVED ON 08/07/2024 07:38:49 PM. | 08/08/2024 | | NV | |
| 175 | CASE MANAGEMENT STATEMENT FILED BY TONKINSON, GREG M.; ALLIANCE CONSTRUCTION CO.; NEW DAWN JENKINS LLC ON 08/07/2024 | 08/07/2024 | | 6 pages | |
| 176 Participants: | CASE MANAGEMENT CONFERENCE CONTINUED TO 08/12/2024 AT 02:00 PM IN THIS DEPARTMENT PURSUANT TO PARTY'S MOTION. | 08/09/2024 | | NV | |

**EXHIBIT 12**

| ROA | Name Docket | Type | Filing Date | Filing Party | Status Date | Document | End Date | Select |
|---|---|---|---|---|---|---|---|---|
| LEE J. PETROS PETROHILOS | | ATTORNEY | | | 11/14/2023 | | | |
| NEW DAWN JENKINS FINALIZED FOR CASE MANAGEMENT CONFERENCE 08/09/2024 09:30:00 AM. | | DEFENDANT | 08/09/2024 | | 09/01/2023 | 1 pages | | |
| GREG M. TONKINSON | | DEFENDANT | | | 09/01/2023 | | | |
| ALLIANCE CONSTRUCTION CO E-FILING TRANSACTION 11348589 RECEIVED ON 08/09/2024 10:24:07 AM. | | DEFENDANT | 08/09/2024 | | 09/01/2023 | | NV | |
| RAMIN MONFARED NOTICE OF CONTINUANCE FILED BY ALMASSI, NEGIN; MONFARED, RAMIN ON 08/09/2024 | | PLAINTIFF | | | 09/01/2023 | | | |
| LAW OFFICES OF MOKRI & ASSOCIATES; | | ATTORNEY | 08/09/2024 | | 11/14/2023 | 4 pages | | |
| ZARA REZAI PAYMENT RECEIVED BY ONELEGAL | | DEFENDANT | | | 09/01/2023 | | | |
| NEGIN ALMASSI NOTICE TO CONTINUE HEARING OR CANCEL THE | | PLAINTIFF | | | 09/01/2023 | | | |
| C&K LAW GROUP AMOUNT OF 20.00, TRANSACTION NUMBER ... ATTORNEY AND | | ATTORNEY | 08/09/2024 | | 09/01/2023 | 1 pages | | |
| ANDY ANDALIBIAN | | DEFENDANT | | | 09/01/2023 | | | |
| HDS CASE CONSOLIDATED ON 08/13/2024. 30-2024-01347907-CU- ... | | DEFENDANT | 08/13/2024 | | 09/01/2023 | | NV | |
| KAVEH ARDALAN OR-NJC IS DESIGNATED THE LEAD CASE. | | ATTORNEY | | | 11/14/2023 | | | |
| LEE J. PETROS PETROHILOS TRANSACTION NUMBER 2153665 RECEIVED. | | ATTORNEY | 09/23/2024 | | 10/30/2023 | 1 08/26/2024 | | |
| Hearings: E-FILING TRANSACTION 31566568 RECEIVED ON 11/21/2024 | | | | | 12/05/2024 | | NV | |

| | Description | Date | Time | Department | | | Judge | |
|---|---|---|---|---|---|---|---|---|
| | | 06:47:14 PM. | | | | | | |
| 199 | PAYMENT RECEIVED BY ONELEGAL FOR 36 - MOTION OR OTHER (NOT 1ST) PAPER REQUIRING A HEARING IN THE AMOUNT OF 60.00, TRANSACTION NUMBER 13524738 AND RECEIPT NUMBER 13352898. | 12/05/2024 | | | | | 1 pages | |
| 200 | MOTION TO STRIKE (RESPONSE) SUBMITTED BY ALMASSI, NEGIN; MONFARED, RAMIN REJECTED ON 12/06/2024. | 12/06/2024 | | | | | 1 pages | |
| 201 | CLERK'S CERTIFICATE OF MAILING/ELECTRONIC SERVICE | 12/06/2024 | | | | | 2 pages | |

**EXHIBIT 12**

**EXHIBIT 13**

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF ORANGE**
**CENTRAL JUSTICE CENTER**

**MINUTE ORDER**

DATE: 12/31/2024          TIME: 01:30:00 PM      DEPT:  C13

JUDICIAL OFFICER PRESIDING: Jonathan Fish
CLERK: D. Nunez
REPORTER/ERM: None
BAILIFF/COURT ATTENDANT: B. Diaz

CASE NO: **30-2023-01341707-CU-OR-NJC**   CASE INIT.DATE: 08/08/2023
CASE TITLE: **Rezai vs. Monfared**
CASE CATEGORY: Civil - Unlimited      CASE TYPE: Other Real Property

---

EVENT ID/DOCUMENT ID: 74455969
**EVENT TYPE:** Ex Parte
MOVING PARTY: Greg M. Tonkinson
CAUSAL DOCUMENT/DATE FILED: Ex Parte Application - Other, 12/27/2024

---

**APPEARANCES**

---

There are no appearances by any party.

Ex-Parte Application for an order shortening time on hearing of motion for preliminary injunction is requested by Defendant Greg M. Tonkinson.

The court exercises its discretion to decide the matter without oral argument. (See Code Civ. Proc., §166 (a)(1).)

The Court having fully considered the arguments of all parties, as well as the evidence presented, now rules as follows:

Defendant Greg M. Tonkinson's Ex Parte Application for an order shortening time to hear his motion for preliminary injunction is DENIED.

Court orders clerk to give notice.

---

DATE: 12/31/2024                    MINUTE ORDER                         Page 1
DEPT:  C13                                                              Calendar No.

**EXHIBIT 13**

**EXHIBIT 14**

**Fill in this information to identify the case:**

United States Bankruptcy Court  for the:

_____ District of _____
                              (State)

Case number (if known) _____  Chapter **7**

FILED

JAN 03 2025

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:          A          Deputy Clerk

☐ Check if this is an
amended filing

Official Form 205

# Involuntary Petition Against a Non-Individual

12/15

Use this form to begin a bankruptcy case against a non-individual you allege to be a debtor subject to an involuntary case. If you want to begin a case against an individual, use the *Involuntary Petition Against an Individual* (Official Form 105). Be as complete and accurate as possible. If more space is needed, attach any additional sheets to this form. On the top of any additional pages, write debtor's name and case number (if known).

| Part 1: | Identify the Chapter of the Bankruptcy Code Under Which Petition Is Filed |
|---|---|

1. **Chapter of the Bankruptcy Code**

   *Check one.*

   ☒ Chapter 7

   ☐ Chapter 11

| Part 2: | Identify the Debtor |
|---|---|

2. **Debtor's name**

   *Coast Highway Ranfared Trust*

3. **Other names you know the debtor has used in the last 8 years**

   *Ramin Monfared*

   Include any assumed names, trade names, or *doing business as* names.

4. **Debtor's federal Employer Identification Number (EIN)**

   ☐ Unknown

   *35 - 7 0 9 1 5 5 2*
   EIN

5. **Debtor's address**

   **Principal place of business**

   *31423 Coast Hwy*
   Number   Street

   *#22*

   *Laguna Beach  Ca  92651*
   City            State  ZIP Code

   *Orange*
   County

   **Mailing address, if different**

   _____
   Number        Street

   _____
   P O  Box

   _____
   City          State   ZIP Code

   **Location of principal assets, if different from principal place of business**

   _____
   Number      Street

   _____

   _____
   City          State   ZIP Code

Official Form 205                Involuntary Petition Against a Non-Individual                page 1

**EXHIBIT 14**

Debtor  _Coast Highway Rayfared Trust_
Name

Case number (if known)_____

**6. Debtor's website (URL)** _____

**7. Type of debtor**

☐ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☒ Other type of debtor. Specify: _Trust_

**8. Type of debtor's business**

Check one

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☒ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☐ None of the types of business listed.

☐ Unknown type of business.

**9. To the best of your knowledge, are any bankruptcy cases pending by or against any partner or affiliate of this debtor?**

☒ No

☐ Yes  Debtor _____  Relationship _____

District _____  Date filed _____  Case number, if known _____
MM / DD / YYYY

Debtor _____  Relationship _____

District _____  Date filed _____  Case number, if known _____
MM / DD / YYYY

---

**Part 3:  Report About the Case**

**10. Venue**

Check one

☒ Over the last 180 days before the filing of this bankruptcy, the debtor had a domicile, principal place of business, or principal assets in this district longer than in any other district.

☐ A bankruptcy case concerning debtor's affiliates, general partner, or partnership is pending in this district.

**11. Allegations**

Each petitioner is eligible to file this petition under 11 U.S.C. § 303(b).

The debtor may be the subject of an involuntary case under 11 U.S.C. § 303(a).

At least one box must be checked:

☒ The debtor is generally not paying its debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount.

☐ Within 120 days before the filing of this petition, a custodian, other than a trustee, receiver, or an agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

**12. Has there been a transfer of any claim against the debtor by or to any petitioner?**

☒ No

☐ Yes. Attach all documents that evidence the transfer and any statements required under Bankruptcy Rule 1003(a)

**EXHIBIT 14**

Debtor  _Coast Highway Ramfared Trust_
Name

Case number (if known) _____

**13. Each petitioner's claim**

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| Greg Tonkinson | Money Owed | $ 400,000 |
| | | $ |
| | | $ |
| | Total of petitioners' claims | $ 400,000 |

If more space is needed to list petitioners, attach additional sheets. Write the alleged debtor's name and the case number, if known, at the top of each sheet. Following the format of this form, set out the information required in Parts 3 and 4 of the form for each additional petitioning creditor, the petitioner's claim, the petitioner's representative, and the petitioner's attorney. Include the statement under penalty of perjury set out in Part 4 of the form, followed by each additional petitioner's (or representative's) signature, along with the signature of the petitioner's attorney.

**Part 4:    Request for Relief**

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

Petitioners request that an order for relief be entered against the debtor under the chapter of 11 U.S.C. specified in this petition. If a petitioning creditor is a corporation, attach the corporate ownership statement required by Bankruptcy Rule 1010(b). If any petitioner is a foreign representative appointed in a foreign proceeding, attach a certified copy of the order of the court granting recognition.

I have examined the information in this document and have a reasonable belief that the information is true and correct.

**Petitioners or Petitioners' Representative**                    **Attorneys**

**Name and mailing address of petitioner**

Greg Tonkinson
Name

31423 Coast Hwy #22
Number    Street

Laguna Beach        Ca        92651
City            State        ZIP Code

Printed name _____

Firm name if any _____

Number    Street _____

City _____    State _____    ZIP Code _____

**Name and mailing address of petitioner's representative, if any**

Name _____

Number   Street _____

City _____    State _____    ZIP Code _____

Contact phone _____    Email _____

Bar number _____

State _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____
MM / DD / YYYY

X _____
Signature of petitioner or representative, including representative's title

X _____
Signature of attorney

Date signed _____
MM / DD / YYYY

Official Form 205            Involuntary Petition Against a Non-Individual            page 3

**EXHIBIT 14**

Greg Tonkinson

31423 Coast Hwy #22

Laguna Beach, CA 92651

**EXHIBIT 14**

**EXHIBIT 15**

FILED & ENTERED

JAN 03 2025

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY jle         DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>Coast Highway Ranfared Trust,<br><br><br><br><br>Debtor(s). | Case No.: 8:25-bk-10013-SC<br><br>CHAPTER 7<br><br>**ORDER DIRECTING PETITIONING CREDITOR TO APPEAR AND SHOW CAUSE WHY THE CASE SHOULD NOT BE DISMISSED**<br><br>Date:      January 16, 2025<br>Time:      1:30 p.m.<br>Courtroom: 5C |

An involuntary petition was filed against Coast highway Ranfared Trust (the "Alleged Debtor") on January 3, 2025. The involuntary petition indicates that the Alleged Debtor is a "trust." Generally, a non-business trust is not eligible to be a debtor in bankruptcy. *See, e.g., Hunt v. TRC Props., Inc., (In re Hunt)*, 160 B.R. 131, 135 (9th Cir. BAP 1993).

Accordingly, the Court finds good cause to require the petitioning creditor, Greg Tonkinson ("Petitioning Creditor"), to appear on January 16, 2025, at 1:30 p.m. and show cause why the involuntary petition should not be dismissed as the Alleged Debtor

-1-

**EXHIBIT 15**

1   does not appear to be eligible to be a debtor. A response to this order demonstrating

2   why the Alleged Debtor is eligible to be a debtor in a chapter 7 proceeding and

3   supported by admissible evidence must be filed by no later than January 13, 2025.

4       **If a response is not timely filed, or a response is filed, but the Petitioning**

5   **Creditor does not appear at the hearing, the involuntary petition will be dismissed**

6   **without further notice or hearing.**

7       **IT IS SO ORDERED.**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Date: January 3, 2025

Scott C. Clarkson
United States Bankruptcy Judge

26

27

28

**EXHIBIT 15**

1
2
3          ### NOTICE OF ENTERED ORDER AND SERVICE LIST
4      Notice is given by the court that a judgment or order entitled (*specify*) **ORDER**
5  **DIRECTING PETITIONING CREDITION TO APPEAR AND SHOW CAUSE WHY THE**
6  **CASE SHOULD NOT BE DISMISSED** was entered on the date indicated as "Entered"
7  on the first page of this judgment or order and will be served in the manner indicated
8  below:
9  **SERVED BY THE COURT**
10 A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail to
11 the following person(s) and/or entity(ies) at the address(es) indicated below:
12
13 *Petitioning Creditor*
   Greg Tonkinson
14 31423 Coast Hwy #22
   Laguna Beach, CA 92651
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-3-

# EXHIBIT 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT 15**

**EXHIBIT 16**

1
2
3
4
5
6
7
8
9
10
11
12

FILED & ENTERED

JAN 14 2025

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte      DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| 13  In re:<br><br>14  Coast Highway Ramfared Trust,<br>15<br>16<br>17<br>18                                           Debtor(s). | Case No.: 8:25-bk-10013-SC<br><br>CHAPTER 7<br><br>**ORDER DISMISSING INVOLUNTARY<br>PETITION**<br><br>Vacated hearing:<br>Date:        January 16, 2025<br>Time:        1:30 PM<br>Courtroom: 5C |

19

20        On January 3, 2025, [Dk. 3], this Court issued an order directing the petitioning

21  creditor, Greg Tonkinson ("Petitioning Creditor"), to appear on January 16, 2025, at 1:30

22  p.m. and show cause why the involuntary petition filed on January 3, 2025, should not

23  be dismissed as the Alleged Debtor, which the involuntary petition indicates is a "trust,"

24  does not appear to be eligible to be a debtor ("OSC"). Generally, a non-business trust is

25  not eligible to be a debtor in bankruptcy. *See, e.g., Hunt v. TRC Props., Inc., (In re

26  Hunt),* 160 B.R. 131, 135 (9th Cir. BAP 1993).  The OSC required a response by

27  January 13, 2025, and cautioned that if a response was not filed, the involuntary petition

28

-1-
**EXHIBIT 16**

1  would be dismissed without further notice or hearing. No response was timely filed.

2  Accordingly, the Court finds good cause to dismiss the involuntary petition.

3      **IT IS SO ORDERED.**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Date: January 14, 2025

Scott C. Clarkson
United States Bankruptcy Judge

26

27

28

**EXHIBIT 16**

1

### NOTICE OF ENTERED ORDER AND SERVICE LIST

2

Notice is given by the court that a judgment or order entitled (specify) **ORDER
DISMISSING INVOLUNTARY PETITION** was entered on the date indicated as
"Entered" on the first page of this judgment or order and will be served in the manner
indicated below:

3

4

5

SERVED BY THE COURT A copy of this notice and a true copy of this judgment or
order was sent by U.S. Mail to the following person(s) and/or entity(ies) at the
address(es) indicated below:

6

7

Petitioning Creditor
Greg Tonkinson
31423 Coast Hwy #22
Laguna Beach, CA 92651

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## EXHIBIT 16

**EXHIBIT 17**

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER**

**MINUTE ORDER**

DATE: 01/27/2025          TIME: 02:30:00 PM      DEPT:  C12

JUDICIAL OFFICER PRESIDING: Andre Manssourian
CLERK: C. Cepeda
REPORTER/ERM:
BAILIFF/COURT ATTENDANT:

CASE NO: **30-2025-01454216-CU-OR-CJC**   CASE INIT.DATE: 01/16/2025
CASE TITLE: **Tonkinson vs. Barrett Daffin Frappier Treder & Weiss, LLP, Trustee**
CASE CATEGORY: Civil - Unlimited     CASE TYPE: Other Real Property

---

EVENT ID/DOCUMENT ID: 74477070

**EVENT TYPE:** Under Submission Ruling

---

**APPEARANCES**

---

There are no appearances by any party.

The Court, having taken the above-entitled matter under submission on 01/27/2025 and having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, now rules as follows:

The Ex Parte Application for temporary restraining order is denied.

The Order to Show Cause re: Preliminary Injunction is scheduled for 03/14/2025 at 10:00 AM in Department C12.

The Ex Parte Application filed 01/24/2025 is deemed the moving paperwork. Opposition and Reply are due pursuant to code. The formal order is signed and filed this date.

Court orders Plaintiff to give notice.

---

**EXHIBIT 17**

**EXHIBIT 18**

**Fill in this information to identify the case:**

United States Bankruptcy Court  for the:

_CENTRAL_ District of _CA_
State

Case number *(if known)* _____  Chapter _7_

```
┌─────────────────────────────┐
│         FILED               │
│  ┌───────────────────────┐  │
│  │     JAN 31 2025        │  │
│  └───────────────────────┘  │
│   CLERK U.S. BANKRUPTCY COURT│
│  CENTRAL DISTRICT OF CALIFORNIA│
│  BY:  _____  Deputy Clerk│
└─────────────────────────────┘
```

☐ Check if this is an amended filing

Official Form 205

# Involuntary Petition Against a Non-Individual                    12/15

Use this form to begin a bankruptcy case against a non-individual you allege to be a debtor subject to an involuntary case. If you want to begin a case against an individual, use the *Involuntary Petition Against an Individual* (Official Form 105). Be as complete and accurate as possible. If more space is needed, attach any additional sheets to this form. On the top of any additional pages, write debtor's name and case number (if known).

---

**Part 1:    Identify the Chapter of the Bankruptcy Code Under Which Petition Is Filed**

1. **Chapter of the Bankruptcy Code**

*Check one:*

☒ Chapter 7
☐ Chapter 11

---

**Part 2:    Identify the Debtor**

2. **Debtor's name**            _Coast Highway Ranfared trust_

3. **Other names you know the debtor has used in the last 8 years**

   Include any assumed names, trade names, or *doing business as* names.

   _Ramin Monfared_

4. **Debtor's federal Employer Identification Number (EIN)**

   ☐ Unknown

   _35 - 7091552_
   EIN

5. **Debtor's address**

   Principal place of business

   _31423 Coast Hwy_
   Number    Street

   _#22_

   _Laguna Beach    Ca    92651_
   City          State    ZIP Code

   _Orange_
   County

   Mailing address, if different

   _____  _____
   Number    Street

   _____
   P O Box

   _____  _____  _____
   City      State   ZIP Code

   Location of principal assets, if different from principal place of business

   _____  _____
   Number    Street

   _____  _____  _____
   City      State   ZIP Code

---

Official Form 205          Involuntary Petition Against a Non-Individual          page 1

**EXHIBIT 18**

| | |
|---|---|
| Debtor | _Coast Highway Ranfared Trust_ |
| | Name |
| Case number *(if known)* _____ | |

6. **Debtor's website (URL)** _____

7. **Type of debtor**
   - ☐ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
   - ☐ Partnership (excluding LLP)
   - ☒ Other type of debtor. Specify. ___Trust___

8. **Type of debtor's business**

   *Check one:*
   - ☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
   - ☒ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
   - ☐ Railroad (as defined in 11 U.S.C. § 101(44))
   - ☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
   - ☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
   - ☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
   - ☐ None of the types of business listed.
   - ☐ Unknown type of business.

9. **To the best of your knowledge, are any bankruptcy cases pending by or against any partner or affiliate of this debtor?**
   - ☒ No
   - ☐ Yes. Debtor _____   Relationship _____
     District _____ Date filed _____   Case number, if known _____
     MM / DD / YYYY

     Debtor _____   Relationship _____
     District _____ Date filed _____   Case number, if known _____
     MM / DD / YYYY

---

**Part 3:    Report About the Case**

10. **Venue**

    *Check one:*
    - ☒ Over the last 180 days before the filing of this bankruptcy, the debtor had a domicile, principal place of business, or principal assets in this district longer than in any other district.
    - ☐ A bankruptcy case concerning debtor's affiliates, general partner, or partnership is pending in this district.

11. **Allegations**

    Each petitioner is eligible to file this petition under 11 U.S.C. § 303(b).

    The debtor may be the subject of an involuntary case under 11 U.S.C. § 303(a).

    *At least one box must be checked:*
    - ☒ The debtor is generally not paying its debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount.
    - ☐ Within 120 days before the filing of this petition, a custodian, other than a trustee, receiver, or an agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

12. **Has there been a transfer of any claim against the debtor by or to any petitioner?**
    - ☒ No
    - ☐ Yes. Attach all documents that evidence the transfer and any statements required under Bankruptcy Rule 1003(a).

---

**EXHIBIT 18**

Debtor _Coast Highway Ranfared Trust_
Name

Case number *(if known)* _____

**13. Each petitioner's claim**   Name of petitioner   Nature of petitioner's claim   Amount of the claim above the value of any lien

_Andy Andalibian_   _Money Owed_   $_250,000.⁰⁰_

_____   _____   $_____

_____   _____   $_____

Total of petitioners' claims   $_250,000.⁰⁰_

If more space is needed to list petitioners, attach additional sheets. Write the alleged debtor's name and the case number, if known, at the top of each sheet. Following the format of this form, set out the information required in Parts 3 and 4 of the form for each additional petitioning creditor, the petitioner's claim, the petitioner's representative, and the petitioner's attorney. Include the statement under penalty of perjury set out in Part 4 of the form, followed by each additional petitioner's (or representative's) signature, along with the signature of the petitioner's attorney.

**Part 4:   Request for Relief**

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

Petitioners request that an order for relief be entered against the debtor under the chapter of 11 U.S.C. specified in this petition. If a petitioning creditor is a corporation, attach the corporate ownership statement required by Bankruptcy Rule 1010(b). If any petitioner is a foreign representative appointed in a foreign proceeding, attach a certified copy of the order of the court granting recognition.

I have examined the information in this document and have a reasonable belief that the information is true and correct.

**Petitioners or Petitioners' Representative**              **Attorneys**

**Name and mailing address of petitioner**

_Andy Andalibian_
Name

_P.O. Box 9933_
Number   Street

_New Port Beach   Ca   92660_
City   State   ZIP Code

_714-883-7999_

**Name and mailing address of petitioner's representative, if any**

_____   Printed name _____
Name

_____   Firm name, if any _____
Number   Street

_____   Number   Street _____
City   State   ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _01/31/2025_
MM / DD / YYYY

**X** ~~signature~~

Signature of petitioner or representative, including representative's title

Printed name _____

Firm name, if any _____

Number   Street _____

City   State   ZIP Code

Contact phone _____   Email _____

Bar number _____

State _____

**X** _____

Signature of attorney

Date signed _____
MM / DD / YYYY

Official Form 205              Involuntary Petition Against a Non-Individual              page 3

**EXHIBIT 18**

ANDY ANDALIBIAN
PO BOX 9933
NEWPORT BEACH CA 92660

**EXHIBIT 18**

**EXHIBIT 19**

FILED & ENTERED

FEB 03 2025

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte        DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

|  |  |
|---|---|
| In re:<br><br>Coast Highway Ramfared Trust,<br><br><br><br><br><br><br>Debtor(s). | Case No.: 8:25-bk-10282-SC<br><br>CHAPTER 7<br><br>**ORDER DIRECTING PETITIONING CREDITIOR TO APPEAR AND SHOW CAUSE WHY THE CASE SHOULD NOT BE DISMISSED**<br><br>Date:       February 13, 2025<br>Time:       11:00 a.m.<br>Courtroom: 5C |

An involuntary petition was filed against Coast highway Ranfared Trust (the "Alleged Debtor") on January 31, 2025. The involuntary petition indicates that the Alleged Debtor is a "trust." Generally, a non-business trust is not eligible to be a debtor in bankruptcy. *See, e.g., Hunt v. TRC Props., Inc., (In re Hunt),* 160 B.R. 131, 135 (9th Cir. BAP 1993). This is the second involuntary petition filed against the Alleged Debtor The first was filed on January 3, 2025, as Case No. 8:23-bk-10013-SC, and dismissed by an order entered January 14, 2025, as Docket 8 in Case No. 8:23-bk-10013-SC.

**EXHIBIT 19**

1    Accordingly, the Court finds good cause to require the petitioning creditor, Andy

2   Andalibian ("Petitioning Creditor"), to appear on February 13, 2025, at 11:00 a.m. and

3   show cause why the involuntary petition should not be dismissed as the Alleged Debtor

4   does not appear to be eligible to be a debtor. A response to this order demonstrating

5   why the Alleged Debtor is eligible to be a debtor in a chapter 7 proceeding and

6   supported by admissible evidence must be filed by no later than 1:00 p.m. on February

7   10, 2025.

8    **If a response is not timely filed, or a response is filed, but the Petitioning**

9   **Creditor does not appear at the hearing, the involuntary petition will be dismissed**

10  **without further notice or hearing.**

11    **IT IS SO ORDERED.**

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Date: February 3, 2025

                                    Scott C. Clarkson
                                    United States Bankruptcy Judge

26

27

28

**EXHIBIT 19**

1
2
                **NOTICE OF ENTERED ORDER AND SERVICE LIST**
3
       Notice is given by the court that a judgment or order entitled (specify) ORDER
4
DIRECTING PETITIONING CREDITIOR TO APPEAR AND SHOW CAUSE WHY THE
CASE SHOULD NOT BE DISMISSED was entered on the date indicated as "Entered"
5
on the first page of this judgment or order and will be served in the manner indicated
below:
6
7
SERVED BY THE COURT A copy of this notice and a true copy of this judgment or
order was sent by U.S. Mail to the following person(s) and/or entity(ies) at the
8
address(es) indicated below:
9
     Petitioning Creditor
     Andy Andalibian
10
     PO Box 9933
     Newport Beach, CA 92660
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-3-
**EXHIBIT 19**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
3990 E. CONCOURS STREET, SUITE 350, ONTARIO, CA  91764

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION  FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY); AND REQUEST FOR JUDICIAL NOTICE IN SUPORT OF MOTION FOR RELIEF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 2/10/2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

U.S. Trustee (Santa Ana) ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)      2/10/2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Judge Hon. Scott C. Clarkson, U.S. Bankruptcy Court, 411 West Fourth Street, Suite 5130, Santa Ana, CA 92701-4593
Debtor: Coast Highway Ramfared Trust, 31423 Coast Hwy #22, Laguna Beach, CA 92651
Mortgagor: Ramin Monfared, 31423 Coast Highway #22, Laguna Beach, CA 92651
Petitioning Creditor: Andy Andalibian, PO Box 9933, Newport Beach, CA 92660
Interested Party:  Ramin Monfared, Trustee of the Coast Highway Ramfared Trust dated November 28, 2022, 31423 Coast Hwy #22, Laguna Beach, CA 92651
Interested Party:  Ramin Monfared, as Trustee of the Ramin Monfared Trust dated December 9, 2021, 31423 Coast Hwy #22, Laguna Beach, CA 92651
Interested Party, Greg Tonkinson, Trustee of the Coast Highway Ramfared Trust, 31423 Coast Hwy #22, Laguna Beach, CA 92651

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 2/10/2025 | Darlene C. Vigil | /s/  *Darlene C. Vigil* |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.
Page 12

June 2017                                                                                                    **F 4001-1.RFS.RP.MOTION**